**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) | Bankruptcy Case No. 14-11277-JAD |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) | Document No. _____ |
| | ) | |
| | ) | Hearing Date & Time: |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Responses Due: |
| NO RESPONDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**EXPEDITED MOTION FOR INTERIM ORDER AUTHORIZING**
**DEBTOR-IN-POSSESSION FINANCING AND GRANTING OF LIEN AND PRIORITY**
**ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 364(c) & (d)**

Trustees of Conneaut Lake Park, Inc., the above-captioned debtor and debtor-in-possession (the "***Debtor***"), by and through its undersigned counsel, hereby files this *Expedited Motion for Interim Order Authorizing Debtor-in-Possession Financing and Granting of Lien and Priority Administrative Expense Pursuant to 11 U.S.C. § 364(c) & (d)* (the "***Motion***"), and in support thereof, states as follows:

**JURISDICTION & VENUE**

1. On December 4, 2014 (the "***Petition Date***"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "***Bankruptcy Code***").

2. The Debtor is functioning as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.  Jurisdiction over this Motion is proper under 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).  11 U.S.C. §§ 105 and 364 and Fed.R.Bankr.P. 4001 provide the statutory and procedural bases for the relief requested in the Motion.

**RELIEF REQUESTED**

4.  By this Motion, the Debtor seeks entry of an interim order ("*Interim Order*") substantially in the form attached hereto as Exhibit A authorizing the Debtor to borrow $300,000 (the "*DIP Loan*") to pay costs associated with the general administration of the chapter 11 bankruptcy case, to fund ongoing operating expenses, and to make certain capital improvements to its property.  The DIP Loan is needed on an expedited basis to fund and complete the necessary capital improvements prior to the Memorial Day weekend and to avoid immediate, irreparable harm to the Debtor's estate.

**BACKGROUND**

5.  The Debtor is a Pennsylvania non-profit corporation organized in 1997 and having the corporate purpose, among other things, to preserve and maintain Conneaut Lake Park, a vintage amusement park (the "*Park*"), for historical, cultural, social and recreational, and civic purposes for the benefit of the community and the general public.  The Debtor presently holds in trust for the use of the general public 208.213 acres of land and the improvements thereon (the "*Real Property*") located in Crawford County, Pennsylvania.

6.  The Park is open for operation from approximately May through October of each year.  At the time the Debtor filed its Bankruptcy Case in December of 2014, the Park had been closed for the calendar year and has yet to reopen.  Consequently, the Debtor, *in the ordinary course of its business*, has not generated significant revenue during the pendency of its Bankruptcy Case.

2

7. The Debtor is in the process of hiring seasonal employees and positioning itself for the opening of the 2015 season. In addition to increased operating expenses associated with the open Park, the Debtor intends to make some much needed capital improvements to the Park.

8. The Debtor's current cash position, however, only enables the Debtor to fund its bare operational needs. The Debtor requires the cash infusion sought in this Motion on or before May 12, 2015 to commence certain capital improvements so they are completed prior to opening the Park for the Memorial Day weekend.

9. The Debtor spent several months negotiating potential debtor-in-possession financing with a local lender, which lender ultimately presented the Debtor with unacceptable terms and conditions. Since that time, the Debtor has expeditiously engaged in negotiations with other potential sources for postpetition financing resulting in the DIP Loan that is the subject of this Motion.

## THE DIP LOAN

10. The DIP Loan is being funded 50/50 by two debtor-in-possession lenders (collectively, the "***DIP Lenders***"), each funding $150,000 on a term loan basis. These DIP Lenders are: (a) the Economic Progress Alliance of Crawford County ("***EPACC***"); and (b) Northwest Pennsylvania Regional Planning and Development Commission (the "***Commission***").

11. The portion of the DIP Loan financed by EPACC is referred to as the EPACC DIP Loan. The material terms of the EPACC DIP Loan are as follows:

| | |
|---|---|
| **Principal** | $150,000.00 |
| **Interest Rate** | 4.00% per annum, fixed |
| **Term** | Forty-Eight (48) Months |
| **Repayment** | (i) No payments in Months 1 through 12;<br>(ii) Interest only payments for Months 13 through 24, aggregating no more than $7,500, payable on or before Month 24; and<br>(iii) Principal & Interest amortized over |

3

| | |
|---|---|
| | twenty-four (24) months and payable in equal monthly installments commencing on Month 25 with all amounts outstanding due and owing in full in Month 48. |
| **Collateral** | A lien on all of the real and personal property of the Debtor that is junior to existing lienholders and *para passu* with the Commission |
| **Closing Costs** | (i) Application Fee ($250.00);<br>(ii) Commitment Fee of One (1%) percent of the Loan amount, ($1,500.00);<br>(iii) One quarter of one percent (1/4 of 1%) of the Loan amount due on each anniversary of the Loan closing ($375.00);<br>*(iv)* Attorneys Fee ($500.00); and<br>(v) Any applicable recording fees |

12.  EPACC is an insider of the Debtor. The EPACC DIP Loan is, however, on substantially below market terms. Additionally, EPACC has not requested or required any extraordinary relief in exchange for the EPACC DIP Loan such as the allowance of its prepetition claims, enhanced priority of any of its prepetition claims, or waiver of any Chapter 5 claims the Debtor's estate may have against EPACC.

13.  The portion of the DIP Loan financed by the Commission is referred to as the Commission DIP Loan. The material terms of the Commission DIP Loan are as follows:

| | |
|---|---|
| **Principal** | $150,000.00 |
| **Interest Rate** | 5.00% per annum, fixed |
| **Term** | Forty-Eight (48) Months |
| **Repayment** | (i) No payments in Months 1 through 12;<br>(ii) Interest only payments for Months 13 through 24, payable on or before Month 24; and<br>(iii) Principal & Interest amortized over twenty-four (24) months and payable in equal monthly installments commencing on Month 25 with all amounts outstanding due and owing in full in Month 48. |
| **Collateral** | A lien on all of the real and personal property of the Debtor that is junior to existing lienholders and *para passu* with EPACC |
| **Other Terms &** | A guaranty from EPACC for the full and |

4

| **Conditions:** | prompt payment of the Commission DIP Loan |
|---|---|

14. In addition to the foregoing terms and conditions of the Commission DIP Loan, and as evidenced by the signed Commitment Letter (the "*Commitment Letter*") attached hereto and incorporated herein as **Exhibit B**, the funding of the Commission DIP Loan is contingent upon satisfaction of certain events (the "*Funding Contingencies*") within ninety (90) days, unless otherwise waived by the Commission in writing. These Funding Contingencies include:

   a. Execution of loan documents in a form and substance acceptable to the Commission and consistent with the terms and conditions provided in this Motion and the Interim Order;

   b. Final order of court approving both tranches of the DIP Loan;

   c. Final order of court authorizing the right to market and sell what is commonly known as the "Flynn Property" free and clear of the charitable use restriction presently imposed upon the Flynn Property;

   d. Opening of the Park by the Debtor on or before May 23, 2015;

   e. Appropriate corporate resolutions authorizing the actions taken by the Debtor and EPACC with respect to the Commission DIP Loan;

   f. Applicable Subsistence Certificates for the Debtor and EPACC; and

   g. Naming of the Commission as a Mortgagee and Loss Payee on Debtor's property and casualty insurance.

15. The obligations of the Debtor under the DIP Loans (collectively, the "*DIP Obligations*") shall: (i) pursuant to Section 364(c)(1) of the Bankruptcy code, at all times constitute allowed administrative expense claims in the case having priority over all other administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; (ii) at all times be senior to any rights arising under Section 546(c) of the Bankruptcy Code; (iii) pursuant to Section 364(c)(2) of the Bankruptcy Code, at all times be secured by a perfected priority lien and security interest on all of the Debtor's property not otherwise subject

to a lien (other than avoidance claims arising under Chapter 5 of the Bankruptcy Code); and (iv) pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code, be secured by a perfected lien and security interest upon all of the tangible and intangible property of the Debtor, subordinate only to the valid liens and perfected security interests, in their relative priority, existing as of the Petition Date.

16. Any credit extended and loans made by the DIP Lenders under the DIP Loan shall be deemed to have been extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

17. The administrative priority of the DIP Loan shall be subordinated only to: (i) the payment of quarterly fees to the Office of the United States Trustee; and (ii) the fees and expenses of the Debtor's professionals.

18. The Interim Order attached as Exhibit A shall constitute the Security Agreement and Mortgage between the Debtor and DIP Lender and no party shall be required to take any further actions to perfect said security interests.

## BASIS FOR RELIEF REQUESTED

**A. Basis for the DIP Loan**

19. Section 364(c) and (d) of the Bankruptcy Code provide:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
> (1) With priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:
> (2) Secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) Secured by a junior lien on property of the estate that is subject to a lien.

      (d)(1)  The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
         (A)  the trustee is unable to obtain such credit otherwise; and
         (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

20.    The Debtor is unable to obtain credit from any source other than EPACC and the Commission, and the DIP Lenders are unwilling to lend funds on an unsecured basis as provided for under 11 U.S.C. § 503(b)(1).

21.    The DIP Loan is in an amount sufficient to fund the Debtor's reorganization efforts through a confirmed Chapter 11 Plan of Reorganization; <u>provided that</u>, the Debtor's exclusivity period is extended through at least June 30, 2015 and a competing plan of reorganization does not divert the Debtor's attention and resources. A copy of the Debtor's twelve-month cash flow projection is attached hereto and labeled **Exhibit C** and shows the Debtor's intended use of the DIP Loan proceeds to fund its reorganization.

22.    The continued operation of the Debtor's business is in the best interest of the Debtor, the creditors and the estate because it will maximize the value of the estate. The Debtor's proposed plan of reorganization will be funded in part from its operations and in part from the proceeds from the sale of certain real estate that is not core to the Debtor's operations. The Debtor's proposed plan will maintain the charitable use restriction for the vast majority of the Debtor's Real Property, including the Park. A forced liquidation of the entirety of the Real Property without regard to its charitable use restrictions (as suggested by certain real estate taxing authorities) is unfounded, untested, and unnecessary.

**B.**  <u>**Basis for the Interim Order**</u>

23.    Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure states that the court "may commence a final hearing on a motion for authority to obtain credit no earlier than 14

days after service of the motion." Fed. R. Bankr. P. 4001(c)(2). At the request of a moving party, the court may conduct an interim hearing to avoid irreparable harm to the estate. Id.

24. If the Debtor is unable to receive interim authorization to enter into the DIP Loan on or before May 12, 2015, the Debtor cannot fund the opening of the Park with the needed capital improvements completed before the Memorial Day weekend and the Debtor's reorganization efforts will be immediately and irreparably harmed.

25. As permitted by Rule 4001(c)(2), the Debtor requests a hearing before the 14-day notice period expires in order to avoid immediate and irreparable harm to the estate pending a final hearing to be set by the Court.

**WHEREFORE**, the Debtor, respectfully requests that this Court enter an Interim Order substantially in the form attached hereto authorizing the DIP Loan as set forth therein, as well as any further relief that this Court deems to be just and proper.

Respectfully submitted,

**STONECIPHER LAW FIRM**

Dated: May 4, 2015

*/s/ Jeanne Lofgren*
George T. Snyder, Esq.
P.A. I.D. 53525
Jeanne S. Lofgren, Esq.
PA I.D. 89078
125 First Avenue
Pittsburgh, PA 15222
(412) 391-8510 phone

*Attorneys for Debtor-in-Possession*