**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) ) | Bankruptcy Case No. 14-11277-JAD |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) ) | Document No. _____ |
| | ) | |
| Movant, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BERKHEIMER ASSOCIATES, CONNEAUT LAKE JOINT MUNICIPAL AUTHORITY, CONNEAUT SCHOOL DISTRICT, CRAWFORD COUNTY TAX CLAIM BUREAU, DONALD G. KALTENBAUGH, FIRST CAPITAL FINANCE, INC., JOSPEH J. PRISCHAK AND ISABEL J. PRISCHAK, MERCER COUNTY STATE BANK, QUINN, BUSECK, LEMHUIS, TOOHEY & KROTO, SADSBURY TOWNSHIP, SUMMIT TOWNSHIP, U.S. FOODSERVICE, ECONOMIC PROGRESS ALLIANCE OF CRAWFORD COUNTY, NORTHWEST PENNSYLVANIA REGIONAL PLANNING AND DEVELOPMENT COMMISSION, THE COMMONWEALTH OF PENNSYLVANIA, AND ALL UNNAMED HOLDERS OF LIENS, CLAIMS, OR ENCUMBRANCES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Hearing Date & Time: April 19, 2016 @ 10:00 a.m.  Responses Due: April 8, 2016 |
| | ) | |
| Respondents. | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF REAL PROPERTY DESIGNATED AS LOT NO. 5 IN LAKEFRONT SUBDIVISION NO. 1 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, INCLUDING ALL CHARITABLE USE RESTRICTIONS**

Trustees of Conneaut Lake Park, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this *Motion* (the "Sale Motion") *for Entry of an Order* (the "Sale Order") *Approving the Sale* (the "Sale") *of Real Property Designated as Lot No. 5 in Lakefront Subdivision No. 1 Free and Clear of All Liens, Claims, Encumbrances, and Interests, including All Charitable Use Restrictions*, and in support thereof states as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory basis for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, and Rules 6004-1 and 9013-3(c) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania.

## BACKGROUND

3.  On December 4, 2014 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtor is functioning as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor is a Pennsylvania non-profit corporation organized in 1997 and having the corporate purpose, among other things, to preserve and maintain Conneaut Lake Park, a vintage amusement park (the "Park"), for historical, cultural, social and recreational, and civic purposes for the benefit of the community and the general public. The Debtor presently holds in trust for the use of the general public 208.213 acres of land and the improvements thereon (the "Real Property") located in Crawford County, Pennsylvania. Certain parcels of the Real Property are unnecessary for the operation of the Park or for the Debtor to realize the charitable purposes for which the Real Property was put into trust (each such parcel is referred to as a "Noncore Parcel" and collectively, the "Noncore Parcels").

6. On October 16, 2015, the Debtor filed its Second Amended Disclosure Statement (the "Disclosure Statement") and Second Amended Chapter 11 Plan of Reorganization Dated October 16, 2015 (the "Plan"). *See* Doc. Nos. 258 and 264. The Disclosure Statement has not been approved, yet and the Plan has not been sent to creditors. The Plan contemplates the sale of Noncore Parcels to fund partially the Debtor's reorganization.

7. Consistent with the Plan, the Debtor preliminarily subdivided the lots comprising the Flynn Property into five lakefront lots and a large backlot (collectively, the "Lakefront Subdivision No. 1"). The subject of this Sale Motion is Lot No. 5 of the Lakefront Subdivision No. 1 (the "Subject Property").

8. The Debtor makes reference to its Schedule D, as amended, at Document No. 93 for the names, addresses, and account numbers, and amounts outstanding as of the Petition Date for each of the respondents holding a lien, claim, or encumbrance (collectively, the "Interests") against the Subject Property. Schedule D is attached hereto, incorporated herein and labeled Exhibit A.

## THE TERMS OF SALE

**a. The Subject Property, Subject Property Owners, and Prospective Purchaser**

9.  Consistent with the Disclosure Statement, the estimated value of the Subject Property according to the Debtor's Real Estate Agent is $299,000 with a summary appraisal of the Subject Property completed in September 2015 that supports the estimate.

10. The Subject Property is a lot within a proposed subdivision that constitutes a small portion of the Debtor's Real Property listed in its Schedule A. *See* Completed Petition, Schedule A at Doc. No. 61. The Subject Property is located on Lake Street, Conneaut Lake, Pennsylvania 16316, comprises a portion of Parcel ID No. 5513-0086, and is more particularly identified as "Lot 5" on the proposed plan (the "Proposed Flynn Property Subdivision") for subdividing the Flynn Property attached hereto and incorporated herein as Exhibit B.

11. The Subject Property is owned by the Debtor.

12. The Prospective Purchaser is Robert F. Naples and Donna L. Naples, husband and wife, or their affiliated family trust or entity (the "Purchaser") as identified on the Agreement for Sale and Purchase of Real Estate, as amended (the "Sale Agreement") attached hereto, incorporated herein, and labeled Exhibit C. The Purchaser has no relationship to the Debtor.

13. As evidenced by the Sale Agreement, the purchase price for the Subject Property is $281,000 and the closing on the sale of the Subject Property is conditioned upon, among other things: (a) confirmation that the Subject Property has been subdivided, and hooked up to a water supply and the municipal sewer system; (b) the parties have executed transaction documents; (c) the Sale has been approved by this Court; and (d) a HUD-Statement in form reasonably acceptable to Purchaser and Debtor. *See* Sale Agreement, § 3.

14. The Sale Agreement was executed in October 2015 utilizing a Proposed Flynn Property Subdivision that provided each lakefront lot with 75 linear square feet on the lake. It was determined later, however, that the Debtor could not provide each of the five lots with 75 lakefront linear square feet without encroaching on the area designated as a core parcel. The Debtor revised the Proposed Flynn Property Subdivision to minimize the impact on the core parcel. These revisions required (a) an adjustment to the number of linear lakefront square feet comprising the Subject Property, (b) an addendum to the Sale Agreement to reflect the changes, and (c) the parties' agreement to the addendum.

15. The Crawford County Planning Commission and the Summit Township Planning Commission have reviewed and approved the Proposed Flynn Property Subdivision, as amended. The Proposed Flynn Property Subdivision will be submitted for approval at the next monthly meeting of the Summit Township Supervisors, which is scheduled for April 5, 2016.

**b. Costs of Sale**

16. The following disbursements, costs, and expenses of sale are projected at the time of the closing on the sale of the Subject Property:

    a. Real Estate Commission: $0.00

    b. Credit for reduction in lakefront linear sq. ft. $5,000.00

    c. Other Expenses of Sale: $30,000.00

17. On July 31, 2015, the Debtor was authorized to retain Passport Realty, LLC as its Real Estate Broker. *See* Doc. No. 174. Under the terms of the Brokerage Agreement entered into by the Debtor and Passport Realty, LLC, the Real Estate Broker is entitled to a commission equal to 6%-7% of the sales price, depending on whether a co-broker is involved. In this case, however, Passport Realty has agreed to waive its right to a commission on the sale of the Subject Property

because of an error in the initial listing price for the Subject Property at the time the Purchaser made his offer. Accordingly, while the Real Estate Commission for the sale of this Subject Property is $0.00, it is anticipated to be 6%-7% of the sale price for future sales of Noncore Parcels.

18. The $5,000 credit to the purchase price set forth in the signed addendum to the Sale Agreement compensates the Purchasers for the loss of three lakefront linear square feet that resulted when the Debtor revised the Proposed Flynn Property Subdivision.

19. Other expenses of Sale include $30,000.00 for certain professional fees and costs incurred by the Debtor during this Chapter 11 case that may be surcharged against the Subject Property pursuant to 11 U.S.C. § 506(c). The professional fees and costs represent a fraction of the total amount due and owing to the estate's professionals, with the balance of the administrative obligations to be paid from future sales of Noncore Parcels and the Debtor's operations. The $30,000 Other Expenses of Sale is allocated among the retained professionals as follows:

| Name of Professional | Nature of Fees & Expenses | Amount |
|---|---|---|
| Porter Consulting Engineers | Land Use Planning, Surveys, and Project Drawings | $4,000.00 |
| Shafer Law Firm | Title Work, Subdivisions, and Zoning | $1,000.00 |
| Stonecipher Law Firm | Professional services rendered to the estate | $25,000.00 |
| TOTAL: | | $30,000.00 |

c. **All Liens, Claims, and Encumbrances Against the Subject Property**

20. In addition to the secured claims listed on Debtor's Amended Schedule D attached hereto as Exhibit A, the Subject Property is subject to the charitable use restriction (the "Charitable Use Restriction") placed upon all of the Debtor's Real Property through the deeds (collectively, the

6

"Deeds") conveying the Real Property to the Debtor. True and correct copies of the Deeds are attached hereto, incorporated herein, and labeled Exhibit D.

21. The initial deed (the "Initial Deed") is dated August 31, 1997, from Property on the Lake, Inc. to the Debtor and contains the following trust language:

> IN TRUST, NEVERTHELESS, for use of the general public forever, subject, however, to such rules and regulations for the use of said land to be known as 'Conneaut Lake Park' as may be made from time to time by the Trustees of Conneaut Lake Park, Inc. and their successors.

22. On September 15, 1997, the Debtor executed a deed conveying the Real Property back to itself in trust for the use of the general public forever. This deed was recorded in the Record Book 357, page 768. It contained the following additional language:

> AND FURTHER specifically, in part for use as a public amusement park and the like, and in part for use as a public park with open parkland and the like, and in part for use for public buildings and the like, forever; AND FURTHER in addition specifically, in part for public access to and use of Conneaut Lake and the lake shore, for swimming and boating and the like, forever; AND FURTHER, for other like and similar and related public purposes; all forever.

## RELIEF REQUESTED

23. The Debtor seeks entry of an Order approving and authorizing the Sale of the Subject Property free and clear of all Interests and the Charitable Use Restriction.

## BASIS FOR RELIEF

**A. Sale of Assets Outside the Ordinary Course of Business**

24. Bankruptcy Code Section 363(b) provides that a "trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

25.  Courts have authorized debtors to sell their assets prior to plan confirmation where a "sound business purpose" exists for the sale. *See e.g. In re Montgomery Ward Holdings Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale, or lease, other than in the ordinary course of business, of property of the estate."); *In re Frezzo*, 217 B.R. 985, 989 (Bankr. E.D. Pa 1998) ("In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test.").

26.  Once a debtor articulates a valid business justification for a sale outside of the ordinary course of business, the business rules dictate that the Court should not second-guess the debtor's business judgment. The business judgment rule "is a presumption that in making a business decision the directors … acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the corporation." *Brehm v. Eisner*, 746 A.2d 244, 264, n. 66 (Del. 2000) (quoting *Aronson v. Lewis*, 473 A.2d 805, 821 (Del. 1984); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005); *Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp.2d 538, 555 n.111 (D. Del. 2008); *Continuing Creditors' Comm. Of Star Telecomms., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 462 (D. Del. 2004); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

27.  Here, there is sound business justification for selling the Subject Property prior to plan confirmation. First, the Debtor is not proposing a sale of substantially all of its Assets. On

8

the contrary, the Subject Property represents less than .2% of the Debtor's Real Property. Second, by selling the Subject Property, the Debtor will be able to pay down a substantial portion of the Secured Tax Claims encumbering the Debtor's Real Property and diminishing the value of the Debtor's Estate at a rate of 9.0% per annum. Third, the sale of the Subject Property is consistent with the terms proposed in the Debtor's Plan and advances the Debtor's reorganization efforts in a substantive and meaningful way.

28. The Sale of the Subject Property will be subject to better and higher offers at the Sale Hearing. Consequently, the purchase price for the Subject Property will constitute fair and reasonable consideration received by the Debtor's estate as established by the market and auction process. Finally, notice of the Sale will have been provided consistent with the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

### B. Sale of the Subject Property Free and Clear of All Interests

29. Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as held in the asset). Specifically, section 363(f) states:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30. Section 363(f) is stated in the disjunctive. Accordingly, it is only necessary to satisfy one of the five basis to sell property of the estate free and clear of all interests under Section 363(f). *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

31. Here the Debtor relies upon Sections 363(f)(1), (4), and (5) as the bases upon which the Debtor may sell the Subject Property free and clear of all Interests and the Charitable Use Restriction.

### i. Sale of the Subject Property Free and Clear of the Charitable Use Restriction Pursuant to Section 363(f)(1).

32. The Debtor can sell the Subject Property free and clear of the Charitable Use Restriction pursuant to 11 U.S.C. § 363(f)(1) because, for the reasons set forth below, it is permissible under applicable nonbankruptcy law. Section 363(f)(1) states:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

33. Additionally, the Debtor is not required to go to a separate forum in order to obtain relief from the Charitable Use Restriction. In 2005, the Bankruptcy Code was substantially amended pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Through BAPCPA, Congress inserted certain provisions in the Bankruptcy Code to confirm the Bankruptcy Court's authority to dispose of the debtor's property in compliance with applicable nonbankruptcy law and without the need for an ancillary or collateral proceeding in another forum. *See e.g.* 11 U.S.C. §§ 363(d)(1), 541(f) and 1129(a)(16).

34. Section 363(d)(1) of the Bankruptcy Code authorizes the Trustee to sell or lease property in a case of a debtor that is a nonprofit corporation or trust, only in accordance with applicable nonbankruptcy law. 11 U.S.C. § 363(d)(1). Similarly, Section 1129(a)(16) authorizes transfers of property pursuant to a chapter 11 plan for nonprofits only to the extent the transfer complies with applicable state law. 11 U.S.C. § 1129(a)(16). Finally, Section 363(f)(1) permits a debtor to sell the assets subject to charitable trust free and clear of the charitable restriction only if "applicable nonbankruptcy law permits sale of such property free and clear of such interest." 11 U.S.C. § 363(f)(1).

35. The commentary to BAPCPA underscores that these three provisions are intended to ensure the Attorney General retains her ability to supervise the operations of a nonprofit, to provide certainty and finality to the orders of court entered in bankruptcy, and to allow parties in interest to proceed in the bankruptcy forum. *See* Pub. L. No. 109-8, § 1221(d) & (e) (2005). Specifically, the commentary to BAPCPA regarding disposition of property belonging to a nonprofit charitable debtor corporation provides:

> Nothing in this section shall be construed to require the court in which a case under chapter 11 of title 11, United States Code, is pending to remand or refer any proceeding, issue, or controversy to another court or to require the approval of any other court for the transfer of property.

See Pub. L. No. 109-8, § 1221(e) (2005).[1]

---

[1] Section 1221, in its entirety reads:
TRANSFERS MADE BY NONPROFIT CHARITABLE CORPORATIONS.
    (a) Sale of Property of Estate.-- Section 363(d) of title 11, United States Code, is amended by striking "only" and all that follows through the end of the subsection and inserting "only--
        "(1) in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust; and
        "(2) to the extent not inconsistent with any relief granted under subsection (c), (d), (e), or (f) of section 362.".
    (b) Confirmation of Plan of Reorganization.-- Section 1129(a) of title 11, United States Code, as amended by sections 213 and 321, is amended by adding at the end the following:

11

36. Taking these provisions and comments together, the Court can approve the Sale of the Subject Property free and clear of the Charitable Use Restriction <u>provided</u> <u>that</u> the Sale complies with Pennsylvania law.

37. Here, the Sale free and clear of the Charitable Use Restriction complies with Pennsylvania Law.

38. The Debtor was incorporated on August 28, 1997 as a nonprofit corporation with the stated purposes "[t]o preserve and maintain Conneaut Lake Park for historical and cultural and social and recreational and civic purposes, etc. for the benefit of the community and the general public and all related matters." *See* Debtor's Articles of Incorporation. Additionally, as evidenced by the Deeds discussed above and attached hereto as Exhibit D, the Real Property owned by the Debtor is held in a charitable trust (the "<u>Charitable Trust</u>"), subject to the Charitable Use Restriction.

---

"(16) All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.".
(c) Transfer of Property.-- Section 541 of title 11, United States Code, as amended by section 225, is amended by adding at the end the following:
"(f) Notwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title.".
(d) Applicability.--The amendments made by this section shall apply to a case pending under title 11, United States Code, on the date of enactment of this Act, or filed under that title on or after that date of enactment, except that the court shall not confirm a plan under chapter 11 of title 11, United States Code, without considering whether this section would substantially affect the rights of a party in interest who first acquired rights with respect to the debtor after the date of the filing of the petition. The parties who may appear and be heard in a proceeding under this section include the attorney general of the State in which the debtor is incorporated, was formed, or does business.
(e) Rule of Construction.-- Nothing in this section shall be construed to require the court in which a case under chapter 11 of title 11, United States Code, is pending to remand or refer any proceeding, issue, or controversy to any other court or to require the approval of any other court for the transfer of property.

BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005, 109 P.L. 8, 119 Stat. 23, 195-196.

39. Under Pennsylvania law, Pennsylvania nonprofit corporations are authorized to sell, lease or otherwise dispose of their real or personal property, or any portion of their real or personal property, without need for a court order unless the nonprofit is seeking to dispose of substantially all of its assets. *See* 15 Pa.C.S. § 5546. Section 5546 of the Pennsylvania Consolidated Statutes provides:

> Except as otherwise provided in this subpart and unless otherwise provided in the bylaws, no application to or confirmation of any court shall be required for the purchase by or the sale, lease or other disposition of the real or personal property, or any part of the real or personal property of a nonprofit corporation, and, unless otherwise restricted in section 5930 (relating to voluntary transfer of corporate assets) or in the bylaws, no vote or consent of the members shall be required to make effective such action by the board or other body. *If the property is subject to a trust, the conveyance away shall be free of trust, and the trust shall be impinged upon the proceeds of the conveyance.*

15 Pa.C.S. § 5546 (emphasis added).

40. The exception to Section 5546 and the Debtor's ability to sell the Subject Property without a court order is found in 15 Pa.C.S. § 5930. Section 5930 relates to sales of all or substantially all of a nonprofit's assets, which is not applicable here. Moreover, the Debtor's bylaws do not prohibit voluntary transfers of property. Finally, the proceeds of the Sale are being used to cover the costs of sale, then distributed in accordance with priority of the nonprofit's creditors with insufficient funds remaining to satisfy all of the Debtor's creditors. Accordingly, there is no excess Sale proceeds to be "impinged" in favor of the Charitable Trust.

41. The sale of the Subject Property free and clear of the Charitable Use Restriction does not adversely affect the Debtor's ability to realize the charitable purpose for which it was created nor does it constitute a modification of the Charitable Trust itself. The Subject Property represents less than .2% of the res held in the Charitable Trust. It does not prevent nor impede on the public's existing access to the lake shore nor does it encroach upon any portion of the Park.

42. In light of the foregoing, it is the Debtor's view that the sale of the Subject Property does not constitute a fundamental change to the Debtor's business or a sale of substantially all of its Real Property necessitating application of 15 Pa.C.S. § 5930. Similarly, the Debtor is not requesting a modification or termination of the Charitable Trust itself, only the capacity to dispose of the Subject Property free and clear of the Charitable Use Restriction. Accordingly, selling the Subject Property free and clear of the Charitable Use Restriction complies with applicable nonbankruptcy law.

43. Selling the Subject Property free and clear of the Charitable Use Restriction also is in the best interests of the Debtor's estate. The Debtor does not have presently sufficient funding from ongoing operations to pay its existing prepetition liabilities and finance the needed capital improvements and maintenance that is required for the Park.

44. The remedy to the situation is to sell the Noncore Parcels (as defined in the Plan), including the Subject Property, in a manner that maximizes the purchase price. Based upon the Debtor's research, there appears to be no market for the Noncore Parcels to the extent they remain devoted to the Charitable Use Restriction. Therefore, divesting the Noncore Parcels, including the Subject Property, of its Charitable Use Restriction enables the Debtor to responsibly: (a) sell a portion of its Real Property, (b) retain the viability of the Park; (c) retain the Charitable Use Restriction on the Debtor's remaining assets, and (d) repay creditors over time.

45. Finally, the Attorney General, the office charged with enforcing the Charitable Trust, has signaled its non-objection to sale of the Subject Property free and clear of the Charitable Use Restriction.

### ii.   Sale of the Subject Property Free and Clear of the Disputed Claims is Appropriate under 11 U.S.C. § 363(f)(4)

46.     Pursuant to Section 363(f)(4) of the Bankruptcy Code, the Debtor may sell the Subject Property free and clear of an Interest that is subject to a bona fide dispute. See 11 U.S.C. § 363(f)(4).

47.     In this case, to the extent Mr. Gary Harris asserts a competing claim to title of the Real Property, the Sale can nonetheless be approved over his objection either because it is subject to bona fide dispute, or, as evidenced by the Deeds, the Subject Property is within the Real Property conveyed by Property on the Lake, Inc. to the Debtor and Mr. Harris' claims are, on their face, without merit and capable of being summarily dismissed.

### iii.  Sale of the Subject Property Free and Clear of all Interests is Appropriate under 11 U.S.C. § 363(f)(5)

48.     Sale of the Subject Property free and clear of all Interests is appropriate in this case because all such holders of Interests could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest under applicable nonbankruptcy law.

49.     Here, the Debtor proposes that any bona fide allowed Interests shall attach to the Sale proceeds with the same force, validity, effect, priority and enforceability as such Interests had in the Subject Property prior to the Sale.

50.     Section 363(f)(5) does not require actual payment in satisfaction of the interest; rather, it requires that "the interest in question be subject to final satisfaction on a hypothetical basis …" *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass 1994) (approving sale where lien could be subject to cramdown under Section 1129(b)(2)(A); *see also In re Trans World Airlines, Inc.*, 322 F.3d 283, 290-91 (3d Cir. 2003) (affirming sale under Section 363(f)(5) on the basis that claim holders would receive liquidation value of their claims if the case converted to

Chapter 7); *see also In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009) (approving sale pursuant to 363(f)(5) where monetary satisfaction could be compelled in a receivership or foreclosure proceeding, among others); *see also In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 464 (E.D. Mich. 1995) (stating a sale pursuant to 363(f)(5) can be approved by operation of Sections 1129(b)(2) or 724(b)(2)).

51.     In this case the proposed distribution of the proceeds from the Sale comport with applicable priority scheme in the Bankruptcy Code in either a hypothetical Chapter 7 liquidation or Chapter 11 cramdown.  The balance of the Sale proceeds following payment of costs and expenses of sale, including any authorized fees and expenses chargeable to the Subject Property pursuant to 11 U.S.C. § 506(c), are being remitted to the holder of the highest lien priority and secured claim in the Subject Property, i.e. the Taxing Authorities.  No other holder of an Interest will receive a distribution under the proposed Sale because the Allowed Secured Tax Claim will not have yet been satisfied and paid in full.

52.     Based upon the foregoing, holders of allowed claims can be compelled to accept the proposed Sale because they are receiving what they would have received in a state court liquidation or receivership of the Debtor's Assets.

**C.     The Purchaser Should Be Entitled to the Protections of Section 363(m).**

53.     Pursuant to section 363(m) of the Bankruptcy Code, "a 'good faith purchaser' is generally one who purchases assets for value, in good faith, and without knowledge of adverse claims." *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 F.2d at 147; *In re Youngstown Steel Tank Co.*, 27 B.R. 596, 598 (W.D. Pa 1983).  Judicial inquiry regarding "good faith" in the context of section 363(m) of the Bankruptcy Code focuses on the integrity of the purchaser's conduct during the course of the sale proceedings. *Id*. at 147.

54. Here, the Sale Agreement was negotiated at arms' length, the deposit due under the Sale Agreement has been tendered, and the Sale is subject to higher and better offers at the Sale Hearing. Accordingly, the Order approving the Sale contains a finding that the Purchaser is a "good faith" purchaser within the meaning of 11 U.S.C. § 363(m).

55. Finally, the Debtor requests relief from Bankruptcy Rule 6004(h) such that the Sale Order, when entered, is effective immediately and not stayed for the 14-day period provided in Fed.R.Bankr.P. Rule 6004(h).

WHEREFORE, the Debtor respectfully requests entry of an Order of Court, substantially in the form attached hereto, authorizing the Sale of the Subject Property free and clear of all Interests and the Charitable Use Restriction and granting such other relief as this Court deems just and proper.

Date: March 21, 2016                **STONECIPHER LW FIRM**

*/s/ George Snyder*
George T. Snyder, Esquire
(PA ID No. 53525)
gsnyder@stonecipherlaw.com
Jeanne S. Lofgren, Esquire
(PA ID No. 89078)
jlofgren@stonecipherlaw.com
125 First Avenue
Pittsburgh, PA 15222-1590
Tel: (412) 391-8510

*Counsel to the Debtor-in-Possession*