# EXHIBIT C

## AGREEMENT FOR THE SALE AND PURCHASE OF REAL ESTATE

THIS AGREEMENT is made as of the _22nd_ day of __December, 2015_,

between

the Trustees of Conneaut Lake Park, Inc.

(hereinafter referred to as "Seller")

having an office c/o 789 Bessemer Street, Meadville, PA  16335,

**AND**

_____Drew Russ _____, or trust or entity,

(hereinafter referred to as "Purchaser")

having an address of _____4025 Lawnview Ave  _____

_____Pittsburgh, PA 15227_____:

Whereas, in consideration of the mutual terms, covenants, conditions and agreements

herein, and intending to be legally bound, it is hereby agreed, by and between the parties, as

follows:

### 1.  SALE:

Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller, subject to the
covenants, conditions, and agreements contained herein, those certain lots, tracts, or parcels of
land containing approximately _____.36_____ acres, more or less, together with any
improvements thereon and the privileges and appurtenances thereto appertaining (which land,
buildings and improvements are hereinafter referred to as the "Premises").  The Premises are

1

located in Summit Township, Crawford County, Pennsylvania, and are more particularly shown designated at Lot # ___4_____ on the plan attached hereto and made a part hereof by reference. The permanent Crawford County Index Number(s) and address shall be assigned by the applicable governmental authorities prior to Closing (as hereinafter defined).

The actual area and legal description of the Premises shall be determined by a boundary line and topographic survey to be performed prior to Closing by, and at the expense of, Seller, subject to the reasonable approval of Purchaser.

### 2. PURCHASE PRICE:

The purchase price (hereinafter referred to as the "Purchase Price") which Purchaser agrees to pay to Seller and which Seller agrees to accept for the Premises is the sum of $_____260,000._____, payable as follows:

A.      An initial payment (hereinafter referred to as the "Deposit") of $5,000.00 upon acceptance of this agreement **and an additional $5,000** within three (3) days of the property being unequivocally cleared from bankruptcy court, which Deposit shall be held in escrow in an escrow account by Passport Realty, LLC (hereinafter referred to as "Escrowee"), a real estate broker licensed in Pennsylvania and having offices at 240 West 11th Street, Suite B-050, Erie, PA 16501, until Closing (as hereinafter defined) or the earlier permitted termination of this Agreement; and,

B.      The balance of $___250,000._____ at Closing, in cash or bank cashier's check or wire transfer.

C.      Seller will pay $_____5,000_____ of Purchase Price toward Buyer's cost, as permitted by the mortgage lender, if any.

In the event that Escrowee is joined in any suit or action at law by Seller or Purchaser with regard to return to Purchaser, or forfeiture to Seller, of the Deposit, then Seller and Purchaser hereby jointly and severally agree to indemnify Escrowee from and against any and all claims, damages, costs of suit, costs of defense and attorney's fees arising from any such suit or action at law. Escrowee shall be entitled to interplead the Deposit to the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") in the event that a dispute over ownership of the Deposit arises and is not satisfactorily resolved between Purchaser and Seller within thirty (30) days of the receipt by Purchaser and Seller of written notice from Escrowee of any such dispute.

### 3. CLOSING:

A.      The purchase and sale of the Premises shall be closed (hereinafter referred to as the "Closing") and a special warranty deed for the Premises (together with any necessary

~~located in Summit Township, Crawford County, Pennsylvania, and are more particularly shown~~ designated at Lot # ___4_____ on the plan attached hereto and made a part hereof by reference. The permanent Crawford County Index Number(s) and address shall be assigned by the applicable governmental authorities prior to Closing (as hereinafter defined).

The actual area and legal description of the Premises shall be determined by a boundary line and topographic survey to be performed prior to Closing by, and at the expense of, Seller, subject to the reasonable approval of Purchaser.

## 2. PURCHASE PRICE:

The purchase price (hereinafter referred to as the "Purchase Price") which Purchaser agrees to pay to Seller and which Seller agrees to accept for the Premises is the sum of $_____260,000._____, payable as follows:

A. An initial payment (hereinafter referred to as the "Deposit") of **$10,000.00** within three (3) days of the property being unequivocally cleared from bankruptcy court, which Deposit shall be held in escrow in an escrow account by Passport Realty, LLC (hereinafter referred to as "Escrowee"), a real estate broker licensed in Pennsylvania and having offices at 240 West 11th Street, Suite B-050, Erie, PA 16501, until Closing (as hereinafter defined) or the earlier permitted termination of this Agreement; and,

B. The balance of $___250,000._____ at Closing, in cash or bank cashier's check or wire transfer.

C. Seller will pay $_____5,000_____ of Purchase Price toward Buyer's cost, as permitted by the mortgage lender, if any.

In the event that Escrowee is joined in any suit or action at law by Seller or Purchaser with regard to return to Purchaser, or forfeiture to Seller, of the Deposit, then Seller and Purchaser hereby jointly and severally agree to indemnify Escrowee from and against any and all claims, damages, costs of suit, costs of defense and attorney's fees arising from any such suit or action at law. Escrowee shall be entitled to interplead the Deposit to the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") in the event that a dispute over ownership of the Deposit arises and is not satisfactorily resolved between Purchaser and Seller within thirty (30) days of the receipt by Purchaser and Seller of written notice from Escrowee of any such dispute.

## 3. CLOSING:

A. The purchase and sale of the Premises shall be closed (hereinafter referred to as ~~the "Closing") and a special warranty deed for the Premises (together with any necessary~~ affidavits and, where applicable, any necessary corporate resolution) shall be delivered

by Seller and received at the office of Purchaser's attorney thirty (30) days after satisfaction, removal or waiver by Purchaser of the contingencies listed in Section B below, but no later than April 29, 2016 (hereinafter referred to as the "Closing Date" or "Date of Closing").

B.     This Agreement and Seller's and Purchaser's obligation to close on the purchase of the Premises shall be conditioned upon the satisfaction of all of the following, at least 10 days prior to the date set for Closing:

      (1)     Purchaser's receipt of official confirmation from Summit Township that the Premises have been subdivided into a single-family lot having the appropriate zoning;

      (2)     Purchaser's receipt of confirmation that the Premises can be hooked into the municipal or other satisfactory water supply, which shall be brought to the perimeter of the Premises by and at the expense of Seller, and that the water pressure is satisfactory to service a single-family home as of the date of Closing;

      (3)     Purchaser's receipt of confirmation that the Premises can be hooked into the municipal sewer system, which shall be brought to the perimeter of the Premises by and at the expense of Seller, and that the sewer capacity is sufficient to service a single-family home as of the date of Closing;

      (4)     Purchaser's receipt and acceptance, in its reasonable discretion, of any additional documents necessary to be executed by Seller in completion of the transaction which is the subject of this Agreement;

      (5)     Seller's receipt of a final Order of the Court authorizing the sale of the Premises to Purchaser; and

      (6)     Delivery of a HUD-Statement in a form reasonably acceptable to Purchaser and Seller.

In the event that Purchaser is unable to satisfy the conditions set forth in (1)-(4) hereinabove within the times allowed to do so, then Purchaser shall be entitled, but not obligated, to cancel and terminate this Agreement by serving written notice on Seller before the expiration of said allowed time(s), in which event the Deposit shall be promptly returned to Purchaser, along with interest earned thereon, if any, while the Deposit was held in escrow. Purchaser shall not have any other claims for damages due to the termination of this Agreement due to the failure of the conditions set forth in this paragraph 3.

Seller and Purchaser agree and hereby acknowledge that the within sale is subject to approval of the Court (as hereinafter defined), which Court has jurisdiction over the sale of the Premises, and will be subject to the solicitation of higher and better offers at the sale hearing. In the event Purchaser is not the successful bidder at the hearing seeking approval of the Sale, Purchaser shall

3

be entitled to the prompt return of the Deposit, along with interest earned thereon, if any, while the Deposit was in escrow. Purchaser shall not have any other claims for damages due to the termination of this Agreement due to the failure of the conditions set forth in this paragraph 3.

The distribution of Seller's proceeds after Closing will be subject to further Order issued by the Court.

### 4. DEED:

Subject to approval of the within sale and purchase by the Court, Seller, at Closing, shall execute and deliver to Purchaser a special warranty deed conveying good and marketable fee title to the Premises free from any and all liens or encumbrances, charitable use restrictions, except for : (a) matters visible upon an inspection of the Premises; (b) governmental laws, ordinances, rules and restriction; (c) utility easements of record; (d) any approved subdivision plan and related rules and regulations and, (e) matters to which Purchaser's title insurance company shall agree. Title shall be insurable at standard rates by any reputable title insurance company selected by Purchaser.

### 5. ENTRY ON PROPERTY:

Purchaser, its agents, employees, servants, or nominees, shall be granted the right to enter on all or any portion of the Premises for the purpose of undertaking or performing any engineering, geological, ecological, environmental, soil, surveying, or other work as may be reasonably necessary or appropriate for the preparation of any plans, surveys, reports, applications, and maps for the subdivision or development thereof. Purchaser's entry onto the Premises shall be made: (i) pursuant to at least 48 hours prior notice to Seller; (ii) in such a manner and at such times as to minimize any disturbance to, or disruption of, Seller's business (if any); and, (iii) with the express agreement that Purchaser shall repair any damage to the Premises and shall indemnify and hold harmless Seller from and against any and all claims or damages whatsoever given rise to as a result of said entry by Purchaser.

### 6. CONDITION OF PREMISES AT CLOSING:

Seller shall deliver the Premises, as of the date of Closing, to Purchaser free and clear of all personal property, fixtures or equipment, and in substantially the same condition as the Premises is in as of the date hereof.

### 7. NOTICES:

Any notice or other communication given by either party hereto to the other relating to this Agreement shall be sent by certified or registered mail, return receipt requested, or by recognized

4

national overnight courier (such as Federal Express), proof of delivery requested, addressed to such other party at the respective addresses set forth above.

### 8. ASSESSMENTS:

If, at Closing, the Premises or any part thereof shall be or shall have been affected by an assessment or assessments which are or may become payable in annual installments of which the first installment is then due or has been paid, then, for the purposes of this Agreement, all the unpaid installments of any such assessment for the period prior to Closing, including those which are to become due and payable after Closing, shall be deemed to be due and payable and to be liens upon the Premises, and shall be paid and discharged by Seller at or before Closing.

### 9. BROKER:

Passport Realty, LLC ("Broker") will be paid a real estate commission on the within sale pursuant to a separate agreement between Seller and Broker, subject to final approval by the Court. The term "Broker," as used herein, includes Broker's agents, employees, and sub-agents (jointly and severally, in the case of indemnification as described hereinafter). Each party represents to the other that they dealt with no other brokers, except for Coldwell Banker Bainbridge Kaufman Real Estate ("Co-Broker"), who is a Buyer's (i.e., Purchaser's) Agent and shall receive a share of the commission to be paid to Broker in an amount equal to three percent (3%) of the Purchase Price. Seller and Purchaser hereby specifically consent, warrant, allow, agree, understand and acknowledge that:

A.      Broker has, prior to the date hereof and prior to the negotiations conducted between the parties relating to this Agreement, disclosed that Broker is acting in the transaction contemplated under this Agreement as a Seller's Agent; and Co-Broker has, prior to the date hereof and prior to the negotiations conducted between the parties relating to this Agreement, disclosed that Broker is acting in the transaction contemplated under this Agreement as a Buyer's (i.e., Purchaser's) Agent. Seller and Purchaser hereby acknowledge receipt of advice as to the effect of Brokers' agency, and Seller and Purchaser hereby confirm that they have each read and understand the Consumer Notice published by the Pennsylvania Association of REALTORS®, incorporated herein by reference and attached hereto as Exhibit "B".

B.      Except in the case of fraud, willful wrongdoing, or willful negligence, Seller and Purchaser, jointly and severally, hereby indemnify Brokers, their agents and employees, jointly and severally, from and against any and all costs, damages, charges, costs of defense, or claims (of any nature whatsoever) caused by, related to or arising from this Agreement, and/or the transaction contemplated under this Agreement.

C.      Brokers, their agents and employees, shall NOT be held responsible for the

5

performance or non-performance of the respective obligations of Seller and Purchaser hereunder. Seller and Purchaser have entered into this Agreement of their own will and have not relied on any verbal statement of Brokers, their agents or employees, with relation hereto. Brokers are hereby authorized by Seller and Purchaser to enforce the provisions of this Article as they relate to Brokers' rights hereunder.

D.    Purchaser has inspected the Premises personally and is familiar with its visible site characteristics, and is not relying on any statement of Brokers in entering into this Agreement.

E.    Purchaser is not a licensed real estate salesperson or broker in the Commonwealth of Pennsylvania.

F.    In the event of a default by Purchaser hereunder or in the event that Purchaser does not close hereunder for any other reason, and pursuant to which Seller receives a settlement, liquidated damages, or all or part of the Deposit, Seller agrees that Seller's Broker shall be entitled to collect from Seller the lesser of: (i) 50% of such settlement, liquidated damages or portion of the Deposit; or, (ii) the amount which Seller's Broker would have, absent a default by Purchaser, otherwise been entitled to receive as its commission hereunder.

## 10.  ASSIGNMENT:

This Agreement may be assigned by Purchaser, in whole or in part, without Seller's consent to any family trust or similar entity, provided that Purchaser shall remain primarily liable hereunder until Closing to the extent authorized by the Court. Any additional taxes that may arise from such assignment shall be paid by Buyer.

## 11.  BINDING EFFECT:

This Agreement shall be binding upon Seller and Purchaser and shall inure to the benefit of the heirs, successors, and assigns of the respective parties hereto.

## 12.  CLOSING COSTS:

Seller and Purchaser agree that this Agreement is and shall be subject to the following terms and conditions:

A.    Transfer taxes shall be apportioned as set forth below.

B.    Current assessments, real estate taxes, utility charges (if any), and sewer and water rents (if any) shall be pro-rated between the parties on a fiscal year basis. The

6

unpaid assessments, real estate taxes, utility charges and sewer and water rents pre-dating the Seller's bankruptcy will remain the sole obligation of the Seller.

C.    Purchaser hereby acknowledges that, in commercial real estate transactions, some closing costs are difficult to ascertain, and Purchaser should therefore retain an accountant and/or attorney to accurately determine same.    Purchaser further acknowledges that it shall be responsible for certain costs, including, but not limited to, the following:

- 1% of the Purchase Price for transfer taxes;
- 0% of the Purchase Price for real estate commissions;
- Appraisal and credit application fees relating to Purchaser's mortgage, if applied for;
- Loan origination fees ("points"), if any;
- Title insurance, title report, if ordered by Purchaser;
- Survey fees, if any;
- Environmental studies, if any;
- Real estate tax pro-rations for the current year and/or escrows for the next year; and
- Attorney's fees for representation at Closing and document review/preparation.

D.    Seller hereby acknowledges that, in commercial real estate transactions, some closing costs are difficult to ascertain, and Seller should therefore retain an accountant and/or attorney to accurately determine same.  Seller further acknowledges that it shall be responsible for certain costs, including, but not limited to, the following:

- real estate commissions per Article 9 hereof;
- 1% of the Purchase Price for transfer taxes;
- Pro-rations for unpaid real estate taxes, utilities and assessments; and,
- Attorney's fees for representation at Closing and document review/preparation.

## 13. DEFAULT:

A.    If Purchaser defaults hereunder, Seller shall retain the Deposit as full liquidated damages and Seller shall have no other recourse thereafter.

B.    If Seller defaults hereunder, Purchaser shall be limited to recovering its Deposit.

## 14. ZONING:

The Premises are currently zoned for recreational use, but Seller shall have the Premises re-

zoned for single-family residential purposes prior to Closing.

## 15.  HIGHWAY ACCESS/DRIVEWAYS:

Curb cuts and driveway entrances onto public streets adjacent to the Premises may require a Highway Occupancy Permit from the Pennsylvania Department of Transportation and/or Summit Township.

## 16.  DEPOSIT AND RECOVERY FUND:

Escrowee/Broker may hold any deposit check uncashed pending acceptance or rejection of this Agreement by both Seller and Purchaser.  Thereafter, any deposit shall be held in an insured, interest-bearing escrow account until Closing or the earlier termination or expiration hereof.  A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgement against a Pennsylvania real estate licensee owing to fraud, misrepresentation or deceit in a real estate transaction and who have been unable to collect the judgement after exhausting all legal and equitable remedies.  For complete details about the Fund, call (717) 783-3658.

## 17.  GOVERNING LAW and MISCELLANEOUS CONDITIONS:

A.     This Agreement shall be governed under and construed under the laws of the Commonwealth of Pennsylvania and the laws applicable to the Court.

B.     Time shall be of the essence with regard to the performance of the respective rights and obligations of Seller and Purchaser hereunder.

C.     Failure of either party hereto to enforce any particular provision of this Agreement shall not create a waiver of that party's right(s) to enforce any other provision hereof.

D.     If any section, term or provision of this Agreement is legally unable to be satisfied or performed, then each and every other section, term or provision hereof shall remain in full force and effect.

E.     This Agreement shall not be considered to have been drafted by either of the parties hereto, but, rather shall be considered to have been negotiated and drafted by both of the parties hereto equally, fairly, fully and at arm's length.

F.     Formal tender of Deed and Purchase Price is hereby waived.

G.     All negotiations had between the parties hereto prior to the mutual execution hereof are merged into this Agreement.  Notwithstanding that either or both parties may

8

expend substantial efforts and sums in anticipation of entering into this Agreement, the parties acknowledge that in no event will this Agreement, until and unless it is mutually fully executed and delivered, be construed as an enforceable contract to sell or purchase or lease the Premises, and each party hereby accepts the risk that no such contract will be created. Until and unless this Agreement is mutually fully executed and delivered, either party hereto reserves the right to terminate negotiations with the other. Unless and until this Agreement is mutually fully executed and delivered, neither party hereto shall be bound to further negotiate in good faith or otherwise.

H.      The use of one gender hereunder shall include the other. The use of the singular shall include the plural, and the use of the plural shall include the singular.

I.      Seller shall not enter into any new lease(s), additional lease(s) or lease extension(s) for the Premises or any part thereof during the term of this Agreement without the specific prior written consent of Purchaser.

J.      In the event that either party hereto institutes legal proceedings with respect to any failure on the part of the other party to perform hereunder, then the party that prevails in such proceedings shall have its actual and reasonable legal fees paid by the non-prevailing party. In the event that the proceedings result in any split award or partial award, then the predominantly-prevailing party's legal fees shall be reimbursed by the non-prevailing party on a proportionate and equitable basis. The parties hereto agree to submit any dispute under hereunder to the Court.

K.      This Agreement may be executed in several counter-parts and each such counter-part executed by one party hereto, when combined with a counter-part executed by the other party hereto, shall be considered one mutually-executed integral document.

## 18. NOTICE BEFORE SIGNING:

When signed by both parties hereto, this is a legal contract. Purchaser and Seller hereby acknowledge that Broker(s) have advised them to consult and retain experts concerning the legal and tax effects of this Agreement and the completion of the sale, as well as the condition and/or legality of the Premises, including but not limited to, the Premises' improvements, equipment, soil, tenancies, title and environmental aspects. Return by facsimile transmission (fax) of this Agreement, bearing the signatures of the parties hereto, constitutes acceptance of this Agreement by said parties.

## 19. CONDITIONS BY PURCHASER:

The following conditions have been added by Purchaser:

9

A.      The purchase of the Premises includes dock rights (subject to any governmental permitting requirement) to the water side of the Property.

B.      Before purchase of the Premises, Seller will clear all debris from the Premises, including all cement block buildings/piles.

C.      Docks currently used as "leased" dockage with Bill's Midway Marina are to be removed or relocated so that Purchaser has an unabated and unrestricted waterway to and from his/her dock no later than 6-1-16.

[SIGNATURES ON NEXT PAGE]

10

**IN WITNESS WHEREOF,** and intending to be bound under the Pennsylvania Uniform Written Obligations Act, the parties hereto have executed this Agreement on the day and year below written.

WITNESS

_Deana Burge_
SIGNATURE OF WITNESS

_Deana Burge_
PRINT NAME OF WITNESS

_12/30/2015_
DATE OF SIGNATURE

SELLER:

The Trustees of Conneaut Lake Park

By: _____
SIGNATURE

_MARK E. TURNER_
PRINT NAME AS IT IS SIGNED ABOVE

_12/30/2015_
DATE OF SIGNATURE

WITNESS

_____
SIGNATURE OF WITNESS

_TYLER LUTKO_
PRINT NAME OF WITNESS

_12/22/15_
DATE OF SIGNATURE

BUYER:

_____
SIGNATURE OF BUYER (Drew Russ)

_Drew Russ_
PRINT NAME OF BUYER

_12.22.15_
DATE OF SIGNATURE

WITNESS

_____
SIGNATURE OF WITNESS

_____
PRINT NAME OF WITNESS

_____
DATE OF SIGNATURE

BUYER:

_____
SIGNATURE OF BUYER

_____
PRINT NAME OF BUYER

_____
DATE OF SIGNATURE

11

Exhibit "A"



**(THE FOLLOWING FOUR PAGES FORM EXHIBIT "B"
TO THE ATTACHED AGREEMENT)**

# CONSUMER NOTICE
### THIS IS NOT A CONTRACT

Pennsylvania Law requires real estate brokers and salespersons (licensees) to advise consumers of the business relationships permitted by the Real Estate Licensing and Registration Act. **This notice must be provided to the consumer at the first contact where a substantive discussion about real estate occurs.**

**Before you disclose any information to a licensee, be advised that unless you select an agency relationship by signing a written agreement providing for such a relationship, the licensee is NOT REPRESENTING YOU. A business relationship of any kind will NOT be presumed but must be established between the consumer and the licensee.**

Any licensee who provides you with real estate services owes you the following duties:

- Exercise reasonable professional skill and care which meets the practice standards required by the Act.
- Deal honestly and in good faith.
- Present, in a timely manner, all offers, counteroffers, notices, and communications to and from the parties in writing. The duty to present written offers and counteroffers may be waived if the waiver is in writing.
- Comply with Real Estate Seller Disclosure Act.
- Account for escrow and deposit funds.
- Disclose all conflicts of interest in a timely manner.
- Provide assistance with document preparation and advise the consumer regarding compliance with laws pertaining to real estate transactions.
- Advise the consumer to seek expert advice on matters about the transaction that are beyond the licensee's expertise.
- Keep the consumer informed about the transaction and the tasks to be completed.
- Disclose financial interest in a service, such as financial, title transfer and preparation services, insurance, construction, repair or inspection, as the time service is recommended or the first time the licensee learns that the service will be used.

A licensee may have the following business relationships with the consumer:

**Seller Agency:**

Seller agency is a relationship where the licensee, upon entering into a written agreement, works only for seller/landlord.
Seller's agents owe the additional duties of:
- *Loyalty* to the seller/landlord by acting in the seller's/landlord's best interest.
- *Confidentiality*, except that a licensee has a duty to reveal known material defects about the property.

13

    ✍    Making a *continuous and good faith effort* to find a buyer for the property, except while the property is subject to an existing agreement.

    ✍    Disclosure to other parties in the transaction that the licensee has been engaged as a seller's agent.

A seller's agent may compensate other brokers as *subagents* if the seller/landlord agrees in writing. Subagents have the same duties and obligations as the seller's agent. Seller's agents may also compensate buyer's agents and transaction licensees who do not have the same duties and obligations as seller's agents.

If you enter into a written agreement, the licensees in the real estate company owe you the additional duties identified above under seller agency. The exception is designated agency. See the designated agency section in this notice for more information.

**Buyer Agency:**

Buyer agency is a relationship where the licensee, upon entering into a written agreement, works only for the buyer/tenant.

Buyer's agents owe the additional duties of:

    ✍    *Loyalty* to the buyer/tenant by acting in the buyer's/tenant's best interest.

    ✍    *Confidentiality*, except that a licensee is required to disclose known material defects about the property.

    ✍    Making a *continuous and good faith effort* to find a property for the buyer/tenant, except while the buyer/tenant is subject to an existing contract.

    ✍    Disclosure to other parties in the transaction that the licensee has been engaged as a buyer's agent.

Buyer's agent may be paid fees, which may include a percentage of the purchase price, and, even if paid by the seller/landlord, will represent the interests of the buyer/tenant.

If you enter into a written agreement, the licensees in the real estate company owe you the additional duties identified above under buyer agency. The exception is designated agency. See the designated agency section in this notice for more information.

**Dual Agency:**

Dual agency is a relationship where the licensee acts as the agent for both the seller/landlord and the buyer/tenant in the same transaction with the written consent of all parties. Dual agents owe the additional duties of:

    ✍    Taking no action that is *adverse or detrimental* to either party's interest in the transaction.

    ✍    Making a *continuous and good faith effort* to find a buyer for the property and a property for the buyer, unless either are subject to an existing contract.

    ✍    *Confidentiality*, except that a licensee is required to disclose known material defects about the property.

**Designated Agency:**

In a designated agency, the employing broker may, with your consent, designate one or more licensees from the real estate company to represent you. Other licensees in the company may

represent another party and shall not be provided with any confidential information. The designated agent(s) shall have the duties as listed above under seller agency and buyer agency. In designated agency, the employing broker will be a dual agent and have the additional duties of:

- Taking reasonable care to protect any confidential information disclosed to the licensee.
- Taking responsibility to direct and supervise the business activities of the licensees who represent the seller and buyer while taking no action that is adverse or detrimental to either party's interest in the transaction.

The designation may take place at the time that the parties enter into a written agreement, but may occur at a later time. Regardless of when the designation takes place, the employing broker is responsible for ensuring that confidential information is not disclosed.

**Transaction Licensee:**

A transaction licensee is a broker or salesperson who provides communication or document preparation services or performs other acts for which a license is required **WITHOUT being the agent or advocate** for either the seller/landlord or the buyer/tenant. Upon signing a written agreement or disclosure statement, a transaction licensee has the additional duty of limited confidentiality in that the following information may not be disclosed:

- The seller/landlord will accept a price less than the asking/listing price.
- The buyer/tenant will pay a price greater than the price submitted in a written offer.
- The seller/landlord or buyer/tenant will agree to financing terms other than those offered.

Other information deemed confidential by the consumer shall not be provided to the transaction licensee.

## OTHER INFORMATION ABOUT REAL ESTATE TRANSACTIONS

The following are negotiable and shall be addressed in an agreement/disclosure statement with the licensee:

- The duration of the employment, listing agreement or contract.
- The fees or commissions.
- The scope of the activities or practices.
- The broker's cooperation with other brokers, including the sharing of fees.

Any sales agreement must contain the zoning classification of a property except in cases where the property is zoned solely or primarily to permit single family dwellings.

A Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

---

### ACKNOWLEDGEMENT

I acknowledge that I have received this disclosure.

Date: _12·22·15_      _R#RR_____      _____
　　　　　　　　　　**(Buyer)**　　　　　　　　　　**(Buyer)**
　　　　　　　　　_Drew Russ_

15

I certify that I have provided this document to the above consumer as required by law.

Date: _____          SS://  *Gregory J. Rubino*_____

*Adopted by the State Real Estate Commission at 49 Pa. Code §35.336.*

16

## ADDENDUM TO AGREEMENT FOR THE SALE AND
## PURCHASE OF REAL ESTATE

This Agreement is made this _____ day of March, 2016, by and between:

**THE TRUSTEES OF CONNEAUT LAKE PARK, INC.** (hereinafter the "Seller")

AND

**DREW RUSS**, or his assigns (hereinafter the "Purchaser")

**NOW THEREFORE**, for and in consideration of the mutual covenants contained hereto and intending to be legally bound hereto, the parties agree as follows:

The Seller and Purchaser executed an Agreement for the Sale and Purchase of Real Estate dated December 22, 2015 (the "Agreement"). Paragraph 1 of the Agreement identifies the property as "Lot No. 4" on the Subdivision Plan attached thereto and made a part thereof by reference. Due to exigent circumstances, the specific parameters of Lot No. 4, as set forth in the Subdivision attached to the Agreement, have been altered. The parties herein now agree to replace the attachment to the original Agreement with the Subdivision Plan (being identified as Drawing C1.1 by Porter Consulting Engineers, P.C., dated January 15, 2016 and titled TRUSTEES OF CONNEAUT LAKE PARK, SUMMIT TOWNSHIP, LAKEFRONT SUBDIVISION No. 1) attached to this Addendum.

All other terms and conditions set forth in the Agreement are hereby restated and reinforced.

Trustees of Conneaut Lake Park, Inc.

_____, Seller

_____
Drew Russ, Buyer