# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) | Bankruptcy Case No. 14-11277-JAD |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | ) | Document No. _____ |
| | ) | |
| Movant, | ) | Hearing Date & Time: |
| | ) | April 19, 2016 at 10:00 a.m. |
| v. | ) | |
| | ) | Responses Due: |
| NO RESPONDENTS, | ) | April 8, 2016 |
| | ) | |
| Respondents. | ) | |

### DEBTOR'S MOTION FOR AUTHORITY TO ENTER INTO
### LEASE OF REAL PROPERTY *NUNC PRO TUNC*

Trustees of Conneaut Lake Park, Inc., the above captioned debtor and debtor-in-possession (the "Debtor") by and through its undersigned counsel, hereby files this *Motion for Authority to Enter into Lease of Real Property Nunc Pro Tunc,* and in support thereof states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A. The Bankruptcy Case**

3. On December 4, 2014 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor is functioning as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor is a Pennsylvania non-profit corporation organized in 1997 and having the corporate purpose, among other things, to preserve and maintain Conneaut Lake Park, a vintage amusement park (the "Park"), for historical, cultural, social and recreational, and civic purposes for the benefit of the community and the general public. Debtor presently owns over 200 acres of real property located in Conneaut Lake, Pennsylvania comprising several parcels, including one where the Hotel Conneaut (the "Hotel") is located.

6. Effective July 31, 2015, the Debtor's exclusive right to file a chapter 11 plan terminated. On October 16, 2015, the Debtor filed its Second Amended Disclosure Statement and Second Amended Chapter 11 Plan of Reorganization Dated October 16, 2015. On the same date, the taxing authorities filed a completing plan of liquidation and a disclosure statement for same.

7. The disclosure statements have not yet been approved and the competing plans have not been sent to creditors. Revised disclosure statements and plans are presently due March 31,

2

2016. In the interim, the parties have been engaged in mediation, the first session of which occurred on January 26, 2016 (the "Mediation Session").

### B. The Hotel Lease

8. Prior to the Petition Date, the Debtor routinely entered into certain transactions involving the lease or management of various operations located on its real property, including, but not limited to, the Hotel and a prior business known as the Beach Club. These prior leases and management agreements have been terminated. The Beach Club is no longer operational and, therefore, does not require a new management agreement. The Hotel, however, remains a viable asset of the estate and as such a new lease for the Hotel (the "Lease") was negotiated and entered into by the Debtor, as lessor, and On the Lake Enterprises, LLC, as lessee (the "Lessee"), effective as of January 1, 2016. The Lease is attached hereto, incorporated herein and labeled Exhibit A.

9. The following paragraphs contain a summary of the Lease provisions. For a complete understanding of the Lease, please see Exhibit A. To the extent there is any conflict between the summary and the Lease, the terms of the Lease govern.

   a. The Lease limits the Lessee's use of the Hotel for general business activities relating to lodging, dining, and entertainment and for hosting and serving banquets and events.

   b. It has an initial term of twelve (12) months (the "Lease Term") that expires on December 31, 2016, with four (4) one-year optional renewal periods thereafter (each a "Renewal Period"). Upon plan confirmation[1], the Lessee has the option to extend the Lease Term through December 31, 2020, rather than exercise the each Renewal Period, one year at a time.

   c. The total rent for the initial Lease Term is the greater of: (a) $20,000 base rent; or (b) 12.5% of all gross revenues (revenues net of sales, use tax, occupancy taxes or other gross receipts taxes or levies). Each Renewal Period increases the floor amount of the base rent by $10,000. Therefore, base rent during the first Renewal Period is the greater of $30,000 or 12.5% of all gross revenues. During the second Renewal Period, the base rent is the greater of $40,000 or 12.5% of all gross revenues, etc. One half of the base rent is due on March 1st of each year.

---

[1] The Lease mistakenly refers to plan confirmation as certification.

3

    d. The Lease is a triple net lease. Lessee is responsible for paying all operating costs for the Hotel, including, but not limited to, real estate taxes, insurance carrying costs, and utilities.

    e. The Lessor is contractually required to maintain all major structural portions, as well as general maintenance of the lawn and snow and ice removal of the Hotel during the Lease Term.

    f. Finally, either party has the right to terminate the Lease by giving the other party written notice at least two (2) months prior to the end of Lease Term or Renewal Period, as applicable.

10. The Debtor believes that the Lease is an ordinary course transaction that does not require Court approval given (a) the Debtor's prior history in leasing the Hotel and (b) because the particular Lease at issue is for an initial term of one (1) year and authorizes either party to terminate the Lease with two (2) months' written notice. During the Mediation Session, however, the creditors requested that the Debtor receive this Court's approval of the Lease. Therefore, the Debtor has filed the instant Motion seeking authorization to enter into the Lease *nunc pro tunc*.

## RELIEF REQUESTED

11. The Debtor requests authority to enter into the Lease, *nunc pro tunc*, effective as of January 1, 2016, pursuant to 11 U.S.C. § 363(b) because the Lease is in the best interests of the estate.

## BASIS RELIEF REQUESTED

12. Bankruptcy Code Section 363(b) provides that a "trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts will defer to the debtor's business judgment when determining whether to authorize the sale, use, or lease of estate property outside the ordinary course of business. *See e.g. In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).

13. The business judgment rule "is a presumption that in making a business decision the directors … acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the corporation." *Brehm v. Eisner*, 746 A.2d 244, 264, n. 66 (Del. 2000) (quoting *Aronson v. Lewis*, 473 A.2d 805, 821 (Del. 1984); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005); *Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp.2d 538, 555 n.111 (D. Del. 2008); *Continuing Creditors' Comm. Of Star Telecomms., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 462 (D. Del. 2004); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

14. Here, there is a sound business justification for the Lease.

15. The Lease benefits the estate in at least two immediate ways. It injects some cash into the estate as of March 1st of each year, a time when the Debtor's seasonal operations result in liquidity challenges for opening the Park for the upcoming season.

16. It also places a reputable lessee in charge of one of the Debtor's largest operating assets. The Lessee is in the business of operating similar enterprises and has a solid reputation for credibility and diligence. The principal of the Lessee is Frank Flanegin, PhD. He is a professor at Robert Morris University and has operated numerous successful businesses over the years, including the Beach Club and the Hotel Conneaut prior to the involvement of Park Restoration, LLC. His background and knowledge of the hotel/banquet business and Conneaut Lake Park make his company an ideal operator of the Hotel Conneaut.

17. From a long-term perspective, the Lessee has the capacity to turn the Hotel into a significant source of revenue that is produced year-round.

18. Without the Lease, the Debtor loses an immediate source of operating income, while an asset that has the potential to become a source of significant year-round revenue lays fallow.

19. Finally, given the short-term nature of the initial Lease Term and each of the subsequent Renewal Periods, together with the capacity to terminate the lease on two months' notice, the Debtor's estate is not exposing itself to significant postpetition liability for administrative claims under the terms of the Lease.

20. Based upon the foregoing, the Debtor respectfully requests authority to enter into the Lease effective as of January 1, 2016.

21. Alternatively, the Debtor requests a finding by the Court that the Lease constitutes an ordinary course transaction for which no prior court approval is necessary.

22. Section 363 is designed to allow a trustee or debtor in possession the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).

23. Because neither the Bankruptcy Code nor the legislative history of section 363 offers guidance as to what constitutes "ordinary course of business," courts interpreting the term have established two tests to assess whether post-petition leases are executed within the ordinary course of business: (1) the horizontal dimension test; and (2) the vertical dimension or creditor's expectation test. *Vision Metals, Inc. v. SMS DEMAG, Inc.*, 325 B.R. 138, 143 (Bankr. D. Del. 2005).

24. The "horizontal dimension test" considers "whether from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *Id.*

*(citing In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992)). The "vertical dimension" test considers the creditor's expectations and whether the economic risk of the transaction is different from those accepted by creditors that extended credit to the debtor pre-petition. *Vision Metals*, 325 B.R. at 145.

25. Prior to filing this chapter 11, the Debtor routinely entered into agreements for the management and operation of the Hotel and other Park property and has consistently relied upon such agreements to operate its business. These prior agreements, unlike the present Lease, were long-term agreements spanning twenty (20) years or longer. This Lease, however, is only for a one (1) year initial term, subject to annual renewal periods of one (1) year, each, and can be terminated by either party on two (2) months' notice prior to the end of an annual lease term.

26. The Debtor, therefore believes the Lease is an ordinary course transaction satisfying the horizontal and vertical tests for such transactions based upon its operating history involving leases and management agreements for its significant assets and because, in this case, the Lease does not represent a substantial long-term commitment that binds the estate to the Lessee absent a default by the Lessee or that exposes the estate to a substantial administrative claim.

WHEREFORE, the Debtor respectfully requests an Order of Court authorizing the Debtor to enter the Lease effective as of January 1, 2016, or alternatively, finding that the Lease is an ordinary course of business transaction that does not require court approval, and such other relief as this Court deems just and proper.

Date: March 22, 2016						**STONECIPHER LAW FIRM**

									By: /s/ Jeanne S. Lofgren
									George T. Snyder, Esquire
									(PA ID No. 53525)
									gsnyder@stonecipherlaw.com
									Jeanne S. Lofgren, Esquire
									(PA ID No. 89078)
									jlofgren@stonecipherlaw.com
									125 First Avenue
									Pittsburgh, PA  15222-1590
									Tel: (412) 391-8510

									*Counsel to the Debtor-in-Possession*