IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 14-11277 JAD |
| | : | |
| TRUSTEES OF CONNEAUT LAKE | : | CHAPTER 11 |
| PARK, INC., | : | |
| Debtor. | : | JUDGE DELLER |
| _____ | : | |

**FIRST AMENDED DISCLOSURE STATEMENT TO ACCOMPANY FIRST AMENDED PLAN OF (PARTIAL) ORDERLY LIQUIDATION DATED MARCH 31, 2016 FILED BY THE UNOFFICAL (AD HOC) COMMITTEE OF REAL ESTATE TAX CREDITORS OF TRUSTEES OF CONNEAUT LAKE PARK, INC.**

☐  Chapter 11 Small Business (Check only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e)).

The Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc. (the "Ad Hoc Committee") furnishes this disclosure statement to all creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating the Ad Hoc Committee's proposed Amended Chapter 11 Plan of (Partial) Orderly Liquidation (the "Plan"), a copy of which is attached hereto.  Creditors may vote for or against the Plan.  Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time.  The Court will schedule a hearing on the Plan pursuant to 11 U.S.C. § 1129.

Address for return of ballots:

*Lawrence C. Bolla, Esq.*
*Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.*
*2222 West Grandview Boulevard*
*Erie, Pennsylvania 16506*

**I.**   **Background**

1.   Name of Debtor:

*Trustees of Conneaut Lake Park, Inc.*
*12382 Center Street*
*Conneaut Lake, PA  16316*

2.   Type of Debtor (individual, partnership, corporation):

*Pennsylvania Non-Profit Corporation*

#908452

3.    Debtor's Business or Employment:

*The Debtor owns approximately 200 acres of real estate situated in Crawford County, Pennsylvania. A substantial portion of this acreage is leased to various residential cottage/seasonal tenants on long term leases with nominal yearly payments. The remainder of the acreage is vacant or has various structures located thereon, including a water company and an amusement park. The Debtor also operates a motor home park and a substantial portion of its 200 acres is "wetlands".*

4.    Date of chapter 11 Petition:

*December 4, 2014*

5.    Events that Caused the Filing:

*Debtor had unpaid real estate taxes since 1996 in the approximate amount of $950,000.00. An execution sale was scheduled on these tax judgments in December, 2014.*

6.    Anticipated Future of the Company & Source of this Information and Opinion:

*This is a Plan of (partial) orderly liquidation. Pursuant to the Plan, the Ad Hoc Committee as the Plan Proponent proposes to permit the Debtor to retain certain acreage for the continued operation of a public park and to convey, gift, or otherwise liquidate the remainder of the Debtor's assets over a period expected to end in 2017.*

*Immediately following confirmation of this Plan, the Plan Administrator of the Plan will file a declaratory judgment action with the Bankruptcy Court in accordance with the Cy Pres Doctrine seeking the termination of the charitable use restriction on the Debtor's real property ("the Cy Pres Action"). If the Cy Pres Action is unsuccessful then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of no payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.*

*This Plan provides for four separate classifications/subdivisions of the Debtor's current real property:*

i.      *The Leased Property;*
ii.     *The Gifted Property;*
iii.    *The Retained Property;*
iv.     *The Liquidated Property.*

i.     *The Leased Property*

*Any current tenant of the Debtor who is leasing a residential cottage/parcel pursuant to a long-term lease with nominal consideration shall be entitled to a Quit Claim Deed from the Plan Administrator for the parcel they lease.  The tenant will be responsible for paying the Plan Administrator $300.00 within ninety days from the date of Plan Confirmation in order to cover all costs necessary to record the Deed and pay transfer taxes, if any.  The tenant shall have ninety days from Plan Confirmation to make this $300.00 payment to the Plan Administrator.  If said payment is not provided to the Plan Administrator within ninety days, the lease shall be deemed rejected pursuant to 11 U.S.C. §365(h) and the Plan Administrator, at its option, shall be permitted to sell the leased premises pursuant to 11 U.S.C. §363.*

ii.     *The Gifted Property*

*The Gifted Property shall consist of that certain wetlands area situate in Summit and Sadsbury Townships.  The wetland area in Sadsbury Township is identified on the map attached hereto as Exhibit A in light orange.  The wetlands area situate in Summit Township is identified in light green and denoted with the number 4 on the map attached hereto as Exhibit A.  A metes and bounds description of the Gifted Property shall be obtained and recorded by the Plan Administrator as soon as possible after Plan Confirmation.  The Gifted Property shall be gifted to the Commonwealth of Pennsylvania, Dept. of Natural Resources for use as a nature preserve or as the department deems fit.  It is anticipated that any transfer tax on the Gifted Property would be exempt pursuant to the provisions of 11 U.S.C. §1146.*

iii.     *The Retained Property*

*At Plan Confirmation, the Debtor would retain certain parcels of real estate currently used by the Debtor in the operation of its amusement park ("the Retained Property").  The Retained Property would remain subject to the charitable use restrictions contained in the existing Deed into the Debtor.  The Debtor would thereafter continue to maintain and operate the Retained Property as a public park for the use and benefit of the public.  The Retained Property is described on the map attached hereto as Exhibit A and consists of the parcels colored in red, the southern portion of the parcel colored in orange located in Summit Township, and the green parcel identified as (No. 2) (currently a parking lot) situate just west of Route 618.  A more detailed metes and bound description of the Retained Property will be provided to the Debtor as soon as practicable after confirmation.  The Retained Property includes most, if not all, of the Debtor's current amusement park and rides, including, but not limited to, The Blue Streak Rollercoaster.  Additionally, the Retained Property will provide public access to Conneaut Lake from the Parking Lot.*

#908452

*Following confirmation of this Plan, it shall be the obligation of the Debtor to file all appropriate requests with Crawford County requesting a determination that ANY OR ALL of the retained property be deemed exempt from future real estate taxes.  Any real estate taxes due on the retained property prior to a granting of such an exemption shall be due and payable in full to The Taxing Bodies. The Taxing Bodies will not object to this request for exemption.*

iv.    *The Liquidated Property*

*The Liquidated Property shall consist of all remaining property of the Debtor, including, but not limited to, the RV Park (Camper Land) identified in dark green on Exhibit A; the hotel property identified on the Map in purple on Exhibit A; the Flynn property, identified on Exhibit A in green; the northern portion of the property identified in orange; all remaining property identified in green north of Reed Avenue; the property identified in light orange south of Utley Avenue; and the southern portion of the property identified in orange that is situate in Sadsbury Township. A metes and bounds description of The Liquidated Property shall be obtained and recorded by the Plan Administrator as soon as possible after Plan Confirmation.*

*Following confirmation of the Plan, the Plan Administrator will retain Passport Realty, Inc. as the Plan Administrator's broker to sell the real property to be liquidated in the most economical manner possible.*

*The Plan for the sale of the property to be liquidated is as follows:*

a)    *Preliminary Engineering Services.*

*The services of engineer Ashley Porter from Porter Consulting would be retained for purposes of providing the legal descriptions set forth above.*

b)    *Camper Land.*

*The greatest value to be generated from Camper Land is through a going concern sale of the Camper Land business and the real estate situate thereon to an established campground operator (for example KOA). Camper Land has a historically good stabilized income.  It is believed that the going concern value of Camper Land can be set at eight times its annual net earnings.  In addition, the real estate situate thereon has a value of approximately $150,000.00.  Under the Plan proposed by The Taxing Bodies, Camper Land renters/occupants would have access to Conneaut Lake Park through Route 618 and The Property to be Retained.*

c)    *Water System.*

*The water system is currently owned by the Debtor and would be marketed as soon as possible following Plan confirmation.  A sale to a local water authority (possibly Aqua) is the most likely possibility.  It is unknown at this time what value the water system has but under the proposed Plan it is to be sold as soon*

*as possible so that the current water customers of the Debtor have appropriate and continuing water service.*

d)    *The Flynn Property.*

*A proposed subdivision map has already been submitted to Summit Township. That subdivision map subdivides the Flynn property and a portion of the property immediately south of the Flynn property into a number of lots that front the lake and lots which would have access to the lake. These would be sold first for the best price to be obtained. Any sale would be subject to a Bankruptcy Court auction for higher and better offers. As of the date of the filing this Disclosure Statement, an offer has been received for the sale of both Lot 4 and Lot 5 of the proposed subdivision. It is anticipated that the net proceeds of these sales would be approximately $450,000.00, all of which would be applied to the secured debt owed to the Taxing Bodies.*

e)    *Hotel Conneaut.*

*No effort would be made to sell the hotel as a going concern because it is believed that the hotel is not structurally sound and worthy of rehabilitation. It would be liquidated in two phases: i) an auctioneer would sell off all personal property inside the facility including light fixtures, toilets, etc. and would thereafter be demolished; ii) the real estate on the hotel parcel, outlined in purple on Exhibit A, would be subdivided into appropriate amounts of land with no more than 100 feet of beach frontage and would be sold off at such point in time as it was deemed to be economically feasible (probably following the sale of all of the Flynn Property lots).*

f)    *Lakeview Development Parcel.*

*This would be a portion of the property outlined in orange on Exhibit A and north of The Property to be Retained. It has an excellent view of the Lake. Once a legal description is obtained, this property could be properly subdivided and sold after the sale of the Flynn Property and the Hotel Property.*

g)    *Compensation of Passport Realty.*

*Depending upon Court Approval, Passport Realty would earn a commission of 7% of all of the above-referenced sales.*

*It is anticipated that the sale of the all of the Debtor's Liquidated Property will take place prior to the end of the year 2017. It is anticipated that the broker's fees for selling the Liquidated Property would be approximately $200,000.00.*

*It is anticipated that the Plan Administrator's fees would be approximately $150,000.00 and would have to be approved by the Advisory Board to be created under the Plan. The fees of the Plan Administrator would be incurred for (at least) the following: (a) preparation of Deeds for the leased property; (b) fees related to the objection to the Harris Claim; (c) fees necessary to assist the broker and the engineer in subdividing*

*and selling the Liquidated Property; (d) fees necessary to pursue the Cy Pres Action; (e) fees necessary to pursue the recovery of the insurance proceeds; and (f) fees related to the filing and pursuit of Chapter 5 actions.*

*Following confirmation of the Plan, the Plan Administrator would immediately seek to sell the Debtor's water company to a local water company with the appropriate permits, which would thereafter service the current users of the Debtor's water system. Until that sale could be accomplished and Sale Order entered by the Bankruptcy Court, the Plan Administrator would continue operation of the water company on an interim basis.*

7. Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan:

*This Plan proposes to classify/subdivide and convey, gift, or otherwise sell certain of the Debtor's 200 existing acres. The Plan further provides that the Debtor shall retain certain of its real estate for the purposes of maintaining a public park. The Plan provides for four separate classifications/ subdivisions of the Debtor's current real property:*

i. *The Leased Property;*
ii. *The Gifted Property;*
iii. *The Retained Property;*
iv. *The Liquidated Property.*

*The Liquidated Property will be sold by the Plan Administrator through its broker. The proceeds of the sale of the Liquidated Property will be used to pay the creditors in the following order of priority:*

*Class 1 Secured Claims shall be paid in full in the order of their lien priority in accordance with applicable non-bankruptcy law and to the extent that funds are available from the liquidation of their collateral.*

*Class 2 consists of all Priority Claims. These claims will be paid in full to the extent funds are available after the payment of Class 1 Claims and approved Chapter 11 Administrative Claims and from the sale of the Liquidated Property and from the liquidation of the Debtor's assets that are not subject to the security interest of the secured creditors.*

*Class 3 consists of the Unsecured Creditors. The Unsecured Creditors will be paid in full to the extent that cash is available after the payment in full of Class 1 Claims, the approved Chapter 11 Administrative Claims, and Class 2 Claims.*

*Any liens that the secured creditors have on the Leased Property or the Gifted Property would be divested upon confirmation of this Plan. Those liens would remain on the Property to be Retained and the Liquidated Property.*

6

*Immediately following confirmation of this Plan, the Plan Administrator of the Plan will file a declaratory judgment action with the Bankruptcy Court in accordance with the Cy Pres Doctrine seeking the termination of the charitable use restriction on the Debtor's real property to be Gifted; transferred to current lease holders; or otherwise liquidated ("the Cy Pres Action").  If the Cy Pres Action is unsuccessful then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of non-payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.*

*At such time as the Property to be Liquidated is sold, it would be intended to be a sale free and clear of all liens and claims pursuant to 11 U.S.C. §363.  The liens of the secured creditors would be transferred to proceeds and the proceeds of the sale of the Liquidated Property would be paid to secured creditors in their order of priority in accordance with applicable non-bankruptcy law.  To the extent that a secured creditor was not paid from the proceeds of the sale from a particular parcel, they would retain their secured claim on the Debtor's remaining real property to be liquidated.  To the extent that all of the Debtor's real property to be liquidated is sold and a particular secured claim is not paid from said proceeds, that claim would become an unsecured claim under this Plan.*

*The Plan provides for a new Board of Trustees to be formed to operate the Retained Property.  The Board would consist of the following Trustees:*

> a) *A Trustee  appointed by Sadsbury Township;*
> b) *A Trustee appointed by Conneaut School District;*
> c) *A Trustee appointed by Summit Township;*
> d) *A Trustee appointed by Crawford County; and*
> e) *A Trustee appointed by The Attorney General's Office.*

8.    Are All Monthly Operating Statements current and on File With The Clerk of Court?

☒ Yes        ☐ No

9.    Does the plan provide for releases of nondebtor parties?    *No.*

10.    Identify all executory contracts that are to be assumed or assumed and assigned.

*The Plan proposes to reject the Management Agreement with EPACC, any leases/agreements with Park Restoration, LLC, and its Lease with Bill's Midway Marina, each of which is further identified in Exhibit "B" attached hereto.*

*With regard to the long-term residential cottage/seasonal leases, the Plan Administrator would provide a Quit Claim Deed to the tenants thereof provided that the tenant makes a payment of $300.00 to the Plan Administrator within ninety days of Plan Confirmation in order to cover all costs and transfer taxes, if any, associated with these transfer.  If a tenant fails to make this payment, its lease will be deemed rejected pursuant to 11 U.S.C. §365(h).*

7

11.     Has a bar date been set?  (If not, a motion to set the bar date has been filed
        simultaneously with the filing of this disclosure statement.)

            ☒ Yes          ☐ No

12.     Has an election under 11 U.S.C. § 1121(e) been filed with the Court to be treated as a
        small business?

            ☐ Yes          ☒ No

13.     Specify property that will be transferred subject to 11 U.S.C. § 1146(c).

        ***All real estate and personal property owned by the Debtor that is not retained property.***

## II.     <u>Creditors</u>

## A.  SECURED CLAIMS[1]

| Creditor | Total Amount Claimed | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|
| Crawford County Tax Claim Bureau (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 14)* | $239,403.14 in addition to interest, penalties, and allowed fees pursuant to 53 P.S. § 7106 | 1A; Lien on Real Estate pursuant to 53 P.S. § 7106 | | N |
| Conneaut Lake School District (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 13)* | $713,690.74, in addition to interest, penalties, and allowed fees pursuant to 53 P.S. § 7106 | 1B; Lien on Real Estate pursuant to 53 P.S. § 7106 | | N |
| Summit Township (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 16)* | $44,826.22, in addition to interest, penalties, and allowed fees pursuant to 53 P.S. § 7106 | 1C; Lien on Real Estate pursuant to 53 P.S. § 7106 | | N |

---

[1] The Plan Administrator reserves, and shall have the right, to object to any and all secured claims, regardless of whether the Debtor has listed said claims as disputed, contingent, or unliquidated.

#908452

| Creditor | Total Amount Claimed | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|
| Sadsbury Township (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998) *(Proof of Claim No. 15)* | $12,384.35, in addition to interest, penalties, and allowed fees pursuant to 53 P.S. § 7106 | 1D; Lien on Real Estate pursuant to 53 P.S. § 7106 | | N |
| First Capital Finance, Inc./Summit Township (Judgment entered at Case No. 1998-31232; Revived to 2003-31469; Revived to 2008-31506; Revived to 2013-30750) | $189,521.90 | 2; Lien on Real Estate | | N |
| Berkheimer Associates, agent for Conneaut School District (Judgment entered 3/17/1999 at Case No. 1999-30112) | $40,329.95 | 3; Lien on Real Estate | | N |
| United States of America, Internal Revenue Service (Judgment entered 7/6/1999 at Case No. 1999-248) *(The Internal Revenue Service filed Amended Proof of Claim No. 5 that reflects a balance due of $0.00.  It is unclear as to whether the lien filed in the Crawford County Prothonotary's Office has been satisfied.)* | $2,026.49 | 4; Lien on Real Estate | D | N |
| Summit Township (Judgment entered 6/7/2000 at Case No. 2000-70210) | $2,794.66 | 5; Lien on Real Estate | | N |
| Dept. of Labor & Industry (Judgment – Unknown – Listed on Schedule D) | $2,432.66 | 6; Lien on Real Estate | D | N |
| Joseph J. and Isabel J. Prischak (Judgment entered 3/26/2002 at Case No. 2002-60166; Revived to 2007-30209; Revived to 2012-30238)*(Proof of Claim No. 19)* | $382,156.29 | 7; Lien on Real Estate | | N |
| Conneaut Lake Joint Municipal Authority (Mortgage: Record Book 632, page 207) | $339,550.44 | 8; Lien on Real Estate | | N |
| Mercer County State Bank (Mortgage: Record Book 712, page 232) *(Proof of Claim No. 8)* | $74,837.14 | 9; Lien on Real Estate | | N |

#908452

| Creditor | Total Amount Claimed | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|
| Conneaut Lake Joint Municipal Authority (Judgment entered on 8/27/2004 at Case No. 2004-70224) | $131,845.56 | 10; Lien on Real Estate | | N |
| Conneaut Lake Joint Municipal Authority (Judgment entered on 12/30/2004 at Case No. 2005-70001) | $19,270.35 | 11; Lien on Real Estate | | N |
| First National Bank of Pennsylvania, now by assignment Joseph J. Prischak (Judgment entered on 6/1/2006 at Case No. 2006-60450; Revived to 2011-30740 and Case No. 2006-60451; Revived to 2011-30739; Per Counsel for Joseph J. and Isabel J. Prischak the Judgments entered at 2006-450 and 2006-451 evidence the same obligation.) *(Proof of Claim No. 20)* | $388,741.94 | 12A; Lien on Real Estate | | N |
| Joseph J. Prischak and Isabell J. Prischak (Judgment entered on 6/1/2006 at Case No. 2006-60451; Revived to 2011-30739;  Per Counsel for Joseph J. and Isabel J. Prischak the Judgments entered at 2006-450 and 2006-451 evidence the same obligation.) *(Proof of Claim No. 20)* | $0.00 | 12B; Lien on Real Estate | D | N |
| Commonwealth of Pennsylvania, Dept. of Revenue (Judgment entered 7/26/2006 at Case No. 2006-60671) | $500.01 | 13; Lien on Real Estate | D | N |
| Commonwealth of Pennsylvania, Dept. of Revenue  (Judgment entered 11/21/2006 at Case No. 2006-61032) | $641.32 | 14; Lien on Real Estate | D | N |
| Conneaut Lake Joint Municipal Authority (Judgment entered 2/8/2007 at Case No. 2007-70019) | $47,798.70 | 15; Lien on Real Estate | | N |
| Donald G. Kaltenbaugh (Judgment entered 2/13/2007 at Case No. 2006-31858; Revived to 2012-30111) | $65,523.45 | 16; Lien on Real Estate | | N |

10

| Creditor | Total Amount Claimed | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|
| U.S. Food Service, Inc.  (Judgment entered 1/17/2008 at Case No. 2008-60033; Revived to 2011-30963) (*Proof of Claim No. 9*) | $29,488.47 | 17; Lien on Real Estate | | N |
| Conneaut Lake Joint Municipal Authority (Judgment entered 1/8/2009 at Case No. 2009-70002) | $44,370.93 | 18; Lien on Real Estate | | N |
| Conneaut Lake Joint Municipal Authority  (Judgment entered 10/2/2014 at Case No. 2014-70253) | $23,238.86 | 19; Lien on Real Estate | | N |
| Economic Progress Alliance for Crawford County (EPACC) (Post-Petition Loan approved at Document No. 139 and paru passu with Northwest Regional Planning and Development Commission.) | $150,000.00 | Lien on Real Estate subordinate to above listed liens on real property and lien on personal property pursuant to Court Order | | N |
| Northwest Pennsylvania Regional Planning and Development Commission (Post-Petition Loan approved at Document No. 139 and paru passu with EPACC.) | $150,000.00 | Lien on Real Estate subordinate to above listed liens on real property and lien on personal property pursuant to Court Order | | N |

11

#908452

| Creditor | Total Amount Claimed | Type of Collateral Priority of Lien (1, 2, 3) | (D) (L) (U)* | Will Liens be Retained Under the Plan (Y)or(N) |
|---|---|---|---|---|
| **TOTAL** | **$3,095,373.57, plus additional amounts due to Crawford County, Conneaut Lake School District, Summit Township, and Sadsbury Township for principal, interest, and allowed fees as provided for pursuant to 53 P.S. § 7106** | | | |

\* Disputed (D), Liquidated(L), Unliquidated (U)

## B.  PRIORITY CLAIMS[2]

| Creditor | Total Amount Claimed | (D) (L) (U)* |
|---|---|---|
| Pennsylvania Dept. of Revenue (*Proof of Claim No. 12*) | $40.84 | |
| Crawford County (*Proof of Claim No. 14*) | $540.00, in addition to interest, penalties, and all taxes assessed 2014 for 2015 | |
| Conneaut School District (*Proof of Claim No. 13*) | $20,003.27, in addition to interest, penalties, and all taxes assessed for 2014 and 2015 | |

---

[2] The Plan Administrator reserves, and shall have, the right to object to any and all priority claims, regardless of whether the Debtor has listed said claims as disputed, contingent or unliquidated.

12

| Creditor | Total Amount Claimed | (D) (L) (U)* |
|---|---|---|
| Sadsbury Township | Unknown (This figure will represents all taxes assessed for the year 2014 and 2015.) | |
| Summit Township | Unknown. (This figure will represent all taxes assessed for the year 2014 and 2015.) | |
| **TOTAL** | **$20,584.11, in addition to interest, penalties, and all taxes assessed for the year 2014 and 2015.** | |

\* Disputed (D), Liquidated (L), Unliquidated (U)

C.      UNSECURED CLAIMS[3]

*The Plan classifies all general unsecured claims as Class 3 claims.  The Class 3 General Unsecured Claims have been estimated in the approximate amount of $2,746,454.16.[4]  At the current time, the dividend to the unsecured creditors cannot be known.  The Plan proposes to pay the Class 3 claims from the liquidation of the Liquidated Property and from the sale of assets not subject to secured claims, to the extent that cash is available and to the extent that the Class 1, Class 2, and Administrative Claims have been paid in full.*

---

[3] The Plan Administrator reserves, and shall have, the right to object to any and all unsecured claims, regardless of whether the Debtor has listed said claims as disputed, contingent, or unliquidated.

[4] On or about July 13, 2015 Gary Harris filed a Proof of Claim indicating that the Claimant was "Gary Harris and Alter Ego for MM-E, 16401, Concore, Richman, Resort, Asset Mgmt. Trust, et al. and 3740 Corp. d/b/a The Water Company".  For the purposes of this Disclosure Statement and the Plan, this claim will be treated as an unsecured claim in the amount of $1,430,000.30 ("the Harris Claim").

The Harris Claim will be designated pursuant to 11 U.S.C. Section 1126(e ) for purposes of voting on the Plan; and, in all likelihood, the Bankruptcy Court will issue an Order prohibiting a vote to accept or reject the Plan by the Harris Claim.

The Plan provides that the Plan Administrator has the sole right to object to unsecured claims.  The Plan Administrator will object to the Harris Claim for the following reason:

1)      The Harris Claim alleges essentially the same claim or cause of action already decided by the Crawford County Court of Common Pleas.  The Court of Common Pleas of Crawford County denied the Harris Claim.  Accordingly, pursuant to the Rooker-Feldman Doctrine; principals of res judicata; the Issue Preclusion Doctrine; and other defenses, the Harris Claim cannot now be reasserted in this Bankruptcy Case.  It anticipated that the Bankruptcy Court would disallow the Harris Claim in full.

Assuming that the Harris Claim is disallowed in full, the remaining allowed Class 3 Unsecured Claims would total $1,316,453.86.

#908452

**III.**   **Assets**

# ASSETS

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Real Property | $2,955,000.00 | Debtor's Estimate | See Secured Claims set forth in Section II.A above/ $3,095,373.57, plus additional amounts due to Crawford County, Conneaut School District, Summit Township, and Sadsbury Township for principal, interest, allowed fees as provided for pursuant to 53 P.S. §7106 | ($140,373.57) |

14

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Proceeds from Fire Insurance Litigation involving Park Restoration LLC deposited in Court's Registry Fund | $478,260.75. Pursuant to the Bankruptcy Court's Order of December 22, 2015, the Taxing Authorities are entitled to the payment of $478,260.75, which will reduce the Taxing Authorities' claims accordingly. The balance of the amounts deposited in the Court's Registry is to be paid to Park Restoration, LLC and accordingly are not the property of the Debtor's Estate. | Deposited in Court's Registry Account and Court Order of December 22, 2015. | Ultimately, the sum of $478,260.75 will be paid to Summit Township; Crawford County; and Conneaut School District and the amount of their secured claims will be reduced by this amount. The reduction of the secured claim of the aforementioned Taxing Authorities will result in an increase of equity in the Debtor's real estate of $478,260.75. | $478,260.75 |
| Personal Property, including but not limited to amusement rides and cash on hand | $3,253,422.00, less unidentified depreciation | Debtor's Monthly Operating Reports | EPACC and Northwest Planning pursuant to post-petition financing Order for $300,000.00. These debts are also secured by the Debtor's real estate. | $3,253,422.00, less unidentified depreciation |

15

| Assets | Value | Basis for Value Priority of Lien | Name of Lien Holder (if any) (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| **Value of Camper Land sold as a going concern to a new campground operator** | **$300,000.00** | Broker's Estimate | None | **$300,000.00** |
| **TOTAL** | **$6,986,682.75, less unidentified depreciation** | | | **$3,891,309.18, less unidentified depreciation** |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?  *No.*

2. Are any assets listed above claimed as exempt?   *No.*

   If so attach a copy of Schedule C and any amendments.

**IV.**   **Summary of Plan**

1. Effective Date of Plan:

   *The Effective Date of the Plan is defined in Article XII of the Plan.  The Effective Date means a date, as determined by the Ad Hoc Committee, that is a Business Day on which (a) all conditions precedent set forth in Article XII of the Plan have been satisfied or waived as provided in Article XII of the Plan and (b) no stay of the Confirmation Order is in effect.*

2. Will cramdown be sought?  __**X**__  Yes  _  No  If yes, state bar date:  The Plan reserves the right to use cramdown to gain approval, if necessary.

16

3.    Treatment of Secured **Non-Tax** Claims

## SECURED **NON-TAX** CLAIMS

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Joseph J. and Isabel J. Prischak (Judgment entered 3/26/2002 at Case No. 2002-60166; Revived to 2007-30209; Revived to 2012-30238) *(Proof of Claim No. 19)* | 1 | $382,156.29 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut Lake Joint Municipal Authority (Mortgage dated and recorded on March 7, 2003 in Record Book 632, page 207) | 1 | $339,550.44 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Mercer County State Bank (Mortgage dated May 21, 2004 and recorded May 27, 2004 in Record Book 712, page 232) *(Proof of Claim No. 8)* | 1 | $74,837.14 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut Lake Joint Municipal Authority (Judgment entered on 8/27/2004 at Case No. 2004-70224) | 1 | $131,845.56 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut Lake Joint Municipal Authority (Judgment entered on 12/30/2004 at Case No. 2005-70001) | 1 | $19,270.35 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| First National Bank of Pennsylvania, now by assignment Joseph J. Prischak (Judgment entered on 6/1/2006 at Case No. 2006-60450; Revived to 2011-30740); Per Counsel for Joseph J. and Isabel J. Prischak the Judgments entered at 2006-450 and 2006-451 evidence the same obligation. *(Proof of Claim No. 20)* | 1 | $388,741.94 | To be paid in full from the sale of the Debtor's real to the extent that cash is available. |
| Joseph J. Prischak and Isabell J. Prischak (Judgment entered on 6/1/2006 at Case No. 2006-60451; Revived to 2011-30739);  Per Counsel for Joseph J. and Isabel J. Prischak the Judgments entered at 2006-450 and 2006-451 evidence the same obligation.  *(Proof of Claim No. 20)* | 1 | $0.00 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |

#908452

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Conneaut Lake Joint Municipal Authority (Judgment entered 2/8/2007 at Case No. 2007-70019) | 1 | $47,798.70 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Donald G. Kaltenbaugh (Judgment entered 2/13/2007 at Case No. 2006-31858; Revived to 2012-30111) | 1 | $65,523.45 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| U.S. Food Service, Inc.  (Judgment entered 1/17/2008 at Case No. 2008-60033; Revived to 2011-30963) *(Proof of Claim No. 9)* | 1 | $29,488.47 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut Lake Joint Municipal Authority (Judgment entered 1/8/2009 at Case No. 2009-70002) | 1 | $44,370.93 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut Lake Joint Municipal Authority  (Judgment entered 10/2/2014 at Case No. 2014-70253) | 1 | $23,238.86 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Economic Progress Alliance for Crawford County (EPACC) (Post-Petition Loan approved at Document No. 139 and paru passu with Northwest Regional Planning and Development Commission.) | 1 | $150,000.00 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available and potentially to be paid from the sale of the Debtor's personal property subject to the EPACC DIP Lien. |
| Northwest Pennsylvania Regional Planning and Development Commission (Post-Petition Loan approved at Document No. 139 and paru passu with EPACC.) | 1 | $150,000.00 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available and potentially to be paid from the sale of the Debtor's personal property subject to the EPACC DIP Lien. |
| **TOTAL** | | **$1,846,822.13** | |

#908452

4.      Treatment of Secured **Tax** Claims

**SECURED TAX CLAIMS**

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Crawford County Tax Claim Bureau (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 14)* | 1 | $239,403.14 in addition to interest, penalties, and allowed fees pursuant to 53 P.S. §7106 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Conneaut School District (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 13)* | 1 | $713,690.74 in addition to interest, penalties, and allowed fees pursuant to 53 P.S. §7106 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Summit Township (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 13)* | 1 | $44,826.22, in addition to interest, penalties, and allowed fees pursuant to 53 P.S. §7106 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Sadsbury Township (Judgments for unpaid Real Estate Taxes beginning on January 1, 1998 to the Present.) *(Proof of Claim No. 15)* | 1 | $12,384.35, in addition to interest, penalties, and allowed fees pursuant to 53 P.S. §7106 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| First Capital Finance, Inc./Summit Township (Judgment entered at Case No. 1998-31232; Revived to 2003-31469; Revived to 2008-31506; Revived to 2013-30750) | 1 | $189,521.90 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Berkheimer Associates, agent for Conneaut School District (Judgment entered 3/17/1999 at Case No. 1999-30112) | 1 | $40,329.95 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |

#908452

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| United States of America, Internal Revenue Service (Judgment entered 7/6/1999 at Case No. 1999-248) (*The Internal Revenue Service filed Amended Proof of Claim No. 5 that reflects a balance due of $0.00. It is unclear as to whether the lien filed in the Crawford County Prothonotary's Office has been satisfied.*) | 1 | $2,026.49 | To be paid in full from the sale of the Debtor's assets to the extent that cash is available. |
| Summit Township (Judgment entered 6/7/2000 at Case No. 2000-70210) | 1 | $2,794.66 | To be paid in full from the sale of the Debtor's real estate to the extent that cash is available. |
| Dept. of Labor & Industry (Judgment – Unknown – Listed on Schedule D) | 1 | $2,432.66 | To be paid in full from the sale of the Debtor's assets to the extent that cash is available. |
| Commonwealth of Pennsylvania, Dept. of Revenue (Judgment entered 7/26/2006 at Case No. 2006-60671) | 1 | $500.01 | To be paid in full from the sale of the Debtor's assets to the extent that cash is available. |
| Commonwealth of Pennsylvania, Dept. of Revenue (Judgment entered 11/21/2006 at Case No. 2006-61032) | 1 | $641.32 | To be paid in full from the sale of the Debtor's assets to the extent that cash is available. |
| **TOTAL** | | **$1,248,551.44** | |

5.      Treatment of Administrative **Non-Tax** Claims

### ADMINISTRATIVE **NON-TAX** CLAIMS

| Name of Creditor* | Amount Claimed** | Type of Debt*** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Stonecipher Law Firm | Approx. $150,000.00e | P | To be paid in full from the sale of the Liquidated Property and from the liquidation of any assets that are not subject to security interests and to the extent cash is available following the payment of secured claims with priority over the secured claims of the Economic Progress Alliance of Crawford County and Northwest Regional Planning and Development Commission. The Order entered at Document No. 139 provides that this claim can be paid ahead of any distribution to EPACC and Northwest Planning Commission prior to any distribution to EPACC and the Northwest Planning Commission on account of their secured claims. |

#908452

| Name of Creditor* | Amount Claimed** | Type of Debt*** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Economic Progress Alliance for Crawford County (EPACC) | $132,000.00 | P | To be paid in full from the sale of the Liquidated Property and from the liquidation of any assets that are not subject to security interests and to the extent cash is available following the payment of secured claims to extent the claim is allowed and after payment in full to secured claims, priority claims, unsecured claims, and the Stonecipher Law Firm.  The Plan Administrator reserves the right to object to this claim. |
| **TOTAL** | **$282,000.00e** | | |

* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
** Fee petitions for any unpaid fees will be filed within 45 days of confirmation of the Plan
*** Type of Debt (P = Professional, TD = Trade, TX = Taxes)

6.     Treatment of Administrative **Tax** Claims

ADMINISTRATIVE TAX CLAIMS

| Name of Creditor* | Amount Claimed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| **None.** | | | |
| | | | |
| **TOTAL** | **0** | | |

* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
** Type of Debt (P = Professional, TD = Trade, TX = Taxes)

7.   Treatment of Priority **Non-Tax** Claims

PRIORITY NON-TAX CLAIMS[5]

---

[5] The Plan Administrator reserves, and shall have, the right to object to any and all priority claims, regardless of whether the Debtor has listed said claims as disputed, contingent or unliquidated.

21

#908452

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| | | | To be paid in full after the payment of Class 1 secured claims and administrative claims. |
| **None.** | | | |
| | | | |
| **TOTAL** | | **0** | |

8.    Treatment of Priority **Tax** Claims

## PRIORITY TAX CLAIMS[6]

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Pennsylvania Dept. of Revenue (*Proof of Claim No. 12*) | 2 | $40.84 | To be paid in full after the payment of Class 1 secured claims and administrative claims. |
| Crawford County (*Proof of Claim No. 14*) | 2 | $540.00, in addition to interest, penalties, and all taxes assessed for 2014 and 2015 | To be paid in full after the payment of Class 1 secured claims and administrative claims |
| Conneaut School District (*Proof of Claim No. 13*) | 2 | $20,003.27, in addition to interest, penalties, and all taxes assessed for 2014 and 2015 | To be paid in full after the payment of Class 1 secured claims and administrative claims |
| Sadsbury Township | 2 | Unknown (This figure will represent all taxes assessed for the year 2014 and 2015.) | |

---

[6] The Plan Administrator reserves, and shall have, the right to object to any and all priority claims, regardless of whether the Debtor has listed said claims as disputed, contingent or unliquidated.

#908452

| Name of Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Summit Township | 2 | Unknown (This figure will represent all taxes assessed for the year 2014 and 2015.) | |
| **TOTAL** | | **$20,584.11, in addition to all taxes assessed for 2014 and 2015** | |

9.    Treatment of General Unsecured **Non-Tax** Claims

## GENERAL UNSECURED NON-TAX CLAIMS[7]

| Name of Creditor | Class | Total Amount Claimed |
|---|---|---|
| See Summary of Unsecured Claims attached as Exhibit C to be paid in full, in cash, to the extent funds are available following payment of Class 1 Claims, Administrative Claims, and Class 2 Claims | 3 | $2,746,452.93 (See Footnote No. 4 regarding the Harris Claim) |
| **TOTAL** | | **$2,746,452.93** |

10.    Treatment of General Unsecured **Tax** Claims

## GENERAL UNSECURED TAX CLAIMS

| Name of Creditor | Class | Total Amount Claimed | Percent of Dividend |
|---|---|---|---|
| Pennsylvania Dept. of Revenue (*Proof of Claim No. 12*) | 3 | $1.23 | 100% |
| **TOTAL** | | **$1.23** | |

11.    Treatment of Equity Interests and Claims

## EQUITY INTERESTS AND CLAIMS

---

[7] The Plan Administrator reserves, and shall have, the right to object to any and all general, unsecured claims, regardless of whether the Debtor has listed said claims as disputed, contingent or unliquidated.

#908452

| Name of Interest Owner or Claimant | Class | Total Amount Claimed | Percent of Dividend |
|---|---|---|---|
| The Debtor, The Trustees of Conneaut Lake Park, Inc., is a Pennsylvania non-profit corporation and no membership interests have ever been issued. The Plan proposes that the current Board of Trustees of the Trustees of Conneaut Lake Park, Inc. be disbanded and a new Board of Trustees be created consisting of the following members: a) Trustee to be nominated by Sadsbury Township; b) Trustee to be nominated by Conneaut School District; c) Trustee to be nominated by Summit Township; d) Trustee to be nominated by Crawford County; e) Trustee to be nominated by The Attorney General's Office. The new Board of Trustees will continue to own and operate the retained property. | | | 0% |
| **TOTAL** | | **0** | |

12.      Will Periodic Payments be made to unsecured creditors?

     ☒ Yes    ☐ No

***The Plan proposes to gift, transfer, or sell various assets of the Debtor and to permit the Debtor to retain the Retained Assets. Any cash received from the sale of the Liquidated Property shall be distributed in cash to the various classes of creditors to the extent that cash is available.***

***Pursuant to the Plan, the Ad Hoc Committee proposes to sell the Liquidated Property over a period of time expected to end in 2017. The Ad Hoc Committee intends to retain Lawrence C. Bolla, Esquire to function as the Plan Administrator under the Plan. The completion of the sale of the Liquidated Property will allow the Plan Administrator to pursue claims on behalf of the Estate, minimize claims against the Estate, and maximize the value of the Estate to distribute funds to creditors in accordance with the terms of the Plan.***

State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements:

***The Class 1 Secured Claims, the Class 2 Priority Claims, the Class 3 General Unsecured Claims, and the Administrative Claims shall be paid to the extent funds are available from the following:***

     *(a)      The proceeds of approximately $478,260.75 from the fire insurance litigation.*

     *(b)      The sale of the Liquidated Property to the highest bidders through sales pursuant to 11 U.S.C. Section 363 and/or Court-approved auctions. This property would include both real estate and property not subject to secured claims, including, but not limited to the going concern value of Camper Land.*

24

(c)      *The recovery of claims and causes of action to be filed by the Plan Administrator on behalf of the Estate.*

*Other significant features of the Plan:*

I.      *The 200 acres of real estate owned by the Debtor shall be separated into the following classifications:*

i.      *The Leased Property;*
ii.     *The Gifted Property;*
iii.    *The Retained Property;*
iv.     *The Liquidated Property.*

*As soon as practical after the effective date of the Plan, the Plan Administrator will obtain a metes and bounds description of the property to be gifted, the property to be liquidated, and the property to be retained.*

II.     *As soon as practical after the effective date of the Plan, the Plan Administrator will file the appropriate pleading with the Bankruptcy Court for the application of the Cy Pres Doctrine, which will seek an Order terminating or substantially altering the charitable use restriction on the Debtor's real property (the Cy Pres action). If the Cy Pres action is unsuccessful, then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of non-payment to the creditors who accept this Plan if the Cy Pres action is not decided in favor of the Plan Administrator.*

*To the extent funds are available after the payment of Class 1, 2, and 3 Claims and Administrative Claims (the "remaining funds") those remaining funds shall be transferred to the Debtor and its newly appointed Board of Trustees.*

Include any other information necessary to explain this plan:  *N/A*

## V.      <u>Comparison of Plan with Chapter 7 Liquidation</u>

*If the proposed Plan is not confirmed, the potential alternatives would include a proposal of a different Plan, dismissal of the case, or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate <u>all</u> of the Debtor's assets and will be entitled to a significant statutory fee, which would be paid in full before any distribution is made to other claimants.*

*Pursuant to the terms of the Plan, the Plan Administrator will conduct a partial liquidation of the Liquidated Property over a period expected to end in 2017. The Ad Hoc Committee intends to retain Lawrence C. Bolla, Esquire, to function as the Plan Administrator. Attorney Bolla has very substantial experience in this area and will be able to maximize recovery to the estate.*

*In the event of conversion of the case to Chapter 7, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured creditors.*

#908452

Calculation of funds available if case converted to Chapter 7.

| | |
|---|---|
| Total Value of Chapter 7 Estate (See Section III) (Comprised of Real Property, Proceeds of Fire Insurance Litigation, and Personal Property, including, but not limited to, Amusement Park Rides and Cash on Hand) | *$6,986,682.75\*,* *Less unidentified depreciation, plus any recoveries from avoidance actions (amounts are unknown at this time* |
| 1. Less Secured Claims (See IV-3) | *$3,095,373.57,* *Plus additional amounts due to Crawford County, Conneaut School District, Summit Township, and Sadsbury Township for principal, interest, allowed fees* |
| 2. Less Administrative Expenses (See IV-5) and include approximate Chapter 7 Expenses | *$509,832.66e* |
| 3. Less other Priority Claims (See IV-4) | *$20,584.11,* *plus assessed taxes for 2014 and 2015* |
| Total Amount Available for Distribution to Unsecured Creditors | *$3,360,892.41\** |
| Amount to be divided by total allowable unsecured claims (See Section II C) | *$2,746,454.16* |
| Percentage of Dividend to Unsecured Creditors | *100%\** |

Will the creditors fare better under the Plan than they would in a Chapter 7 liquidation?

☒ Yes      No

Explain:      \* These amounts assume a valuation of the Liquidated Property at $2,955,000.00 and the going concern value of Camper Land of $300,000.00. Said valuation is contingent upon having the charitable use restriction removed upon application to this Court. It is believed that, in the event of a conversion to Chapter 7, the trustee appointed may not have the means to undertake the filing of such litigation. Such circumstances would represent a significant devaluation of the Chapter 7 Estate, and thereby a lesser, if any, dividend to unsecured creditors.

## VI.    Feasibility

*Immediately following confirmation of this Plan, the Plan Administrator of the Plan will file a declaratory judgment action with the Bankruptcy Court seeking the termination of the charitable use restriction on the Debtor's real property ("the Cy Pres Action"). If the Cy Pres Action is unsuccessful then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of non-payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.*

#908452

Estimated amount to be paid on effective date of Plan, including administrative expenses

### $ - 0.00 -

Show how this amount was calculated.

| | |
|---|---|
| *$0.00* | *Administrative Class* |
| *0.00* | *Taxes* |
| *0.00* | *Unsecured Creditors* |
| *0.00* | *UST Fees for Quarter* |
| *$0.00* | *TOTAL* |

What assumptions are made to justify the increase in cash available for the funding of the Plan?

> *Immediately following confirmation of this Plan, the Plan Administrator of the Plan will file a declaratory judgment action with the Bankruptcy Court seeking the termination of the charitable use restriction on the Debtor's real property ("the Cy Pres Action"). If the Cy Pres Action is unsuccessful then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk on non-payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.*

Will funds be available in the full amount for administrative expenses on the effective date of the Plan? *No*     From what source?

If not available, why not and when will payments be made?

*Administrative expenses will be paid in full under the Plan following the payment in full of all secured claims from the sale of the Liquidated Property and the sale of assets not subject to secured claims, including, but not limited to the going concern value of Camper Land.*

If this amount is less than the amount necessary at confirmation, how will Debtor make up the shortfall?

*Recovery of funds from pursuit of tax refunds and/or Chapter 5 claims.*

**VII.    Identify the Effect on Plan Payments and Specify Each of the Following:**

1.    What, if any, Litigation is pending?

> *On December 22, 2015 this Court entered an Order in the case of Park Restoration, LLC vs. Erie Insurance Exchange; Summit Township, a municipal corporation; The Trustees of Conneaut Lake Park, a charitable trust; and Crawford County, a political subdivision; The Tax Claim Bureau of Crawford County; and The Conneaut School District (the "Order"). The Order granted The Taxing Bodies' Summary Judgment Motion and awarded The Taxing Bodies $478,260.75. The Order also found that the balance of funds on hand in the Court's Registry of approximately $135,000.00 should be awarded to Park Restoration, LLC. On January 5, 2016 Park Restoration LLC filed a timely appeal of this Order. The Plan Administrator will participate in the Appeal process.*

#908452

27

2.      What, if any, Litigation is Proposed or Contemplated?

*The Plan Administrator intends to investigate and prosecute any and all of the Debtor's Estate litigation, which includes without limitation:*

*1) Recovery of the insurance proceeds, which action is currently on Appeal to the United States District Court for the Western District of Pennsylvania from this Court's decision of December 22, 2015.*

*2) Immediately following confirmation of this Plan, the Plan Administrator of the Plan will file a declaratory judgment action with the Bankruptcy Court seeking the termination of the charitable use restriction on the Debtor's real property ("the Cy Pres Action"). If the Cy Pres Action is unsuccessful then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of non-payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.*

*3) Preference actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the petition date.[8]*

*4)  Fraudulent Conveyance Claims under Section 548 of the Bankruptcy Code against those parties receiving distributions without consideration within two years prior to the date of the filing of the Plan.*

*5)  Any and all claims and causes of actions including, but not limited to claims for unpaid accounts receivable, breach of contract, contribution, indemnification, fraudulent transfers, and/or re-characterization/equitable subordination, among other claims currently unknown to the Plan Administrator that the Debtor may have against any individuals and/or entities.*

*6)  All claims and causes of action disclosed in the Debtor's Schedules and Statement of Financial Affairs which are incorporated herein by reference.*

*7)  Any and all claims or causes of action that the Debtor holds pre-confirmation, including but not limited to claims for unpaid accounts receivable, breach of contract, contribution, indemnification, and fraudulent transfer which will vest or re-vest in the reorganized Debtor except as otherwise provided in this Plan.*

*8) It is anticipated that an action will be filed against Gary Harris and his various Trusts and Corporate Entities to determine, inter alia, the ownership of the Flynn Property, the Water Company, and various rides situate on the Debtor's real estate.*

---

[8] The Debtor's initial Monthly Operating Report disclosed a payment of approximately $85,000.00 to EPACC immediately prior to the filing of the case on account of its unpaid invoices.

#908452

## VIII.   <u>Certification</u>

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

Dated:  March 31, 2016

                            Respectfully submitted,

                            QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.

                          By:    */s/Lawrence C. Bolla*
                                      Lawrence C. Bolla, Esq.
                                      Pa. I.D. No. 19679
                                      Michael P. Kruszewski, Esq.
                                      Pa. I.D. No. 91239
                                      2222 West Grandview Boulevard
                                      Erie, PA  16506-4508
                                      (814) 833-2222
                                      Attorneys for Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc.

#908452