UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:                                              :
TRUSTEES OF CONNEAUT LAKE PARK,  : BANKRUPTCY NO.  14-11277 JAD
INC.,                                               :
                 Debtor.              : THE HONORABLE JEFFERY A. DELLER
                                                :
                                                : CHAPTER 11

**AMENDED PLAN OF (PARTIAL) ORDERLY LIQUIDATION DATED MARCH 31, 2016 FILED BY THE UNOFFICIAL (AD HOC) COMMITTEE OF REAL ESTATE TAX CREDITORS OF TRUSTEES OF CONNEAUT LAKE PARK, INC.**

**QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.**
Lawrence C. Bolla, Esquire
Pa. I.D. No. 19679
George Joseph, Esquire
Pa. I.D. No.  36606
Michael P. Kruszewski, Esquire
Pa. I.D. No. 91239
2222 West Grandview Boulevard
Erie, PA 16506-4508
(814) 833-2222

Attorneys for the Unofficial (Ad Hoc)
Committee of Real Estate Tax Creditors of
Trustees of Conneaut Lake Park, Inc.

# TABLE OF CONTENTS
## AMENDED PLAN OF (PARTIAL) ORDERLY LIQUIDATION

Page

**ARTICLE I** DEFINITIONS ................................................................................. 5

    1.0    Definitions ........................................................................... 5

**ARTICLE II** INTERPRETATION: APPLICATION OF DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME ..................................... 14

**ARTICLE III** ADMINISTRATIVE EXPENSE CLAIMS................................................. 15

    3.1    Administrative Expense Claims ................................................ 15
    3.2    Professional Compensation ...................................................... 15
    3.3    Administrative Bar Date ........................................................... 15

**ARTICLE IV** CLASSIFICATION OF CLAIMS: THIS IS A PLAN OF (PARTIAL) ORDERLY LIQUIDATION ............................................................. 15

**ARTICLE V** TREATMENT OF CLAIMS UNDER THE PLAN: THIS IS A PLAN OF (PARTIAL) ORDERLY LIQUIDATION ............................................. 16

    5.1    Class 1: Secured Claims........................................................... 16
    5.2    Class 2: Priority Claims............................................................ 17
    5.3    Class 3: General Unsecured Claims ......................................... 17
    5.3.1  (a)  Definition ............................................................... 17
           (b)  Treatment .............................................................. 17
    5.3.2  Impairment............................................................................. 17

**ARTICLE VI** ACCEPTANCE OR REJECTION OF THE PLAN................................ 18

    6.1    Holders of Claims Entitled to Vote ......................................... 18
    6.2    Acceptance by Impaired Classes............................................. 18
    6.3    Nonconsensual Confirmation.................................................. 18

**ARTICLE VII** MEANS OF IMPLEMENTATION OF THE PLAN ............................ 18

    7.1    Oversight of Plan by Advisory Board ....................................... 18
    7.1.1  Composition of the Advisory Board........................................ 18
    7.1.2  Members of the Advisory Board............................................. 18
    7.1.3  Appointment of Plan Administrator ....................................... 19
    7.1.4  Broker and/or Auctioneer ..................................................... 19
    7.1.5  Sale of Liquidated Property .................................................... 15
    7.1.6  Role and Standing of Advisory Board; No Fiduciary Obligations ........ 21

i

7.1.7  Successors to Advisory Board ............................................................ 21
7.1.8  Indemnification of Advisory Board ................................................. 21
7.2     The Plan Administrator ................................................................... 21
7.2.1  Responsibilities of the Plan Administrator ............................ 21
7.2.2  Compensation of the Plan Administrator .............................. 23
7.2.3  Claims Against the Plan Administrator .................................. 24
7.2.4  Commingling of Estate Property and Liquidating Plan Proceeds ......... 24
7.2.5  Maintenance of Books and Records ..................................... 24
7.2.6  Reliance on Others ............................................................... 25
7.2.7  Reliance by Persons Dealing with the Plan Administrator .................. 25
7.2.8  Liability for Errors and Omissions ......................................... 25
7.2.9  Indemnification of Plan Administrator ................................... 25
7.2.10 Resignation of Plan Administrator ........................................ 26
7.2.11 Removal of Plan Administrator .............................................. 26
7.2.12 Appointment by Court of Successor to Plan Administrator ................. 26
7.2.13 Requirements to be Fulfilled by Successor to Plan Administrator ....... 26
7.3     Permitted Investments of Estate Property and Liquidating
Plan Proceeds ................................................................ 27
7.3.1  Types of Permitted Investments ........................................... 27
7.3.2  Types of Bank Accounts Permitted ....................................... 27
7.3.3  Terms of Permitted Investments ........................................... 27
7.3.4  Valuation and Redemption of Permitted Investments ......................... 28
7.4     Amendment to Plan Prior to Effective Date ......................... 28
7.5     Application of Cy Pres Doctrine ............................................. 28
7.6     Failure of Court to Apply Cy Pres Doctrine .......................... 22
7.7     Risk to Creditors if Cy Pres Doctrine is Not Applied ........... 29

**ARTICLE VIII** DISTRIBUTIONS UNDER THE PLAN ................................................ 29

8.1     Initial Distribution Date ......................................................... 29
8.2     Disputed Reserves ............................................................... 29
8.2.1  Establishment of Disputed Reserves .................................... 29
8.2.2  Maintenance of Disputed Reserves ...................................... 30
8.3     Quarterly Distributions After Initial Distributions .................. 30
8.4     Record Date for Distributions ................................................ 30
8.5     Delivery of Distributions ....................................................... 30
8.5.1  General Provisions; Undeliverable Distributions ................. 30
8.5.2  Minimum Distributions .......................................................... 31
8.5.3  Unclaimed Property .............................................................. 31
8.6     Manner of Cash Payments Under the Plan ......................... 31
8.7     Time Bar to Cash Payments by Check ................................. 31
8.8     Limitations on Funding of Disputed Reserves ...................... 32
8.9     Compliance with Tax Requirements ..................................... 32
8.10  No Payments of Fractional Cents ......................................... 32
8.11  Interest on Claims ................................................................ 32

8.12    No Distribution in Excess of Allowed Amount of Claim ........................ 33
8.13    Setoff and Recoupment ........................................................................ 33

**ARTICLE IX** DISPUTED CLAIMS ................................................................. 33

9.1    Objection Deadline .................................................................................. 33
9.2    Estimation of Claims ............................................................................... 33
9.3    Prosecution of Objections and Requests for Estimation ....................... 34
9.4    No Distributions Pending Allowance ...................................................... 34

**ARTICLE X** EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................... 34

10.1 Acceptance of Executory Contracts and Unexpired Leases .................. 34
10.2 Rejection of Executory Contracts and Unexpired Leases...................... 34
10.2.1 Effect of Rejection ............................................................................... 34
10.2.2 Lease Termination Damages ............................................................... 35

**ARTICLE XI** ABANDONMENT OF PROPERTY ....................................... 35

11.1    Abandonment by Plan Administrator .................................................... 35
11.2    Abandonment Claims............................................................................ 35

**ARTICLE XII** CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
    AND THE EFFECTIVE DATE.......................................................... 35

12.1    Conditions Precedent to the Confirmation of the Plan ........................ 35
12.2    Conditions Precedent to the Effective Date of the Plan ...................... 36
12.3    Waiver of Conditions Precedent .......................................................... 36

**ARTICLE XIII** EFFECTS OF CONFIRMATION ........................................ 36

13.1    Vesting of Assets  ................................................................................ 36
13.2    Release of Assets................................................................................ 36
13.3    Binding Effect...................................................................................... 36
13.4    Term of Injunctions or Stays ............................................................... 37
13.5    Estate Litigation .................................................................................. 37
13.6    Injunction ............................................................................................ 37
13.7    Injunction Against Interference with Plan ............................................ 38
13.8    Retention and Preservation of Claim Objections and Estate Litigation 38

**ARTICLE XIV** RETENTION OF JURISDICTION ...................................... 39

14.1    Retention of Jurisdiction....................................................................... 39

**ARTICLE XV** MODIFICATION OF THE PLAN ........................................................ 41

15.1  Modification before the Effective Date ................................................ 41
15.2  Modification before Substantial Consummation ................................... 41
15.3  Modification after Substantial Consummation ...................................... 41

**ARTICLE XVI** MISCELLANEOUS PROVISION ....................................................... 42

16.1   Payment of Statutory Fees .................................................................. 42
16.2   Exemption from Certain Transfer Taxes .............................................. 42
16.3   Governing Law ..................................................................................... 42
16.4   Notices ................................................................................................. 42
16.5   Further Documents and Actions .......................................................... 43
16.6   Relationship Between the Plan and Disclosure Statement ................. 43
16.7   Reservation of Rights ........................................................................... 43
16.8   Post-Confirmation Date Fees and Expenses ...................................... 43
16.9   Binding Effect ....................................................................................... 44
16.10  Exhibits ................................................................................................ 44

**AMENDED PLAN OF (PARTIAL) ORDERLY LIQUIDATION FILED BY THE UNOFFICIAL (AD HOC) COMMITTEE OF REAL ESTATE TAX CREDITORS OF TRUSTEES OF CONNEAUT LAKE PARK, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc. (hereinafter the "Ad Hoc Committee"[1]) proposes this Amended Plan of (Partial) Orderly Liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code ("the Plan").  Pursuant to this Court's Order of May 11, 2015 at Document No. 121, the Debtor's exclusive period of time to file a Plan of Reorganization was extended to August 1, 2015, and the Debtor's solicitation exclusivity period was extended to September 30, 2015.  On July 31, 2015 the Debtor filed its Plan of Reorganization.  At a hearing held on September 2, 2015, the Bankruptcy Court declined to approve the Debtor's July 31, 2015 Disclosure Statement and issued an Order directing that the Debtor file an Amended Plan and Amended Disclosure Statement.  The Order also provided that a hearing would be held on the Amended Disclosure Statement on October 9, 2015 and that prior to the hearing creditors could file a request to terminate the Debtor's exclusive right to file a Plan of Reorganization. The Debtor filed an Amended Plan and Disclosure Statement on September 16, 2015. On October 9, 2015 the Court issued an Order terminating the Debtor's exclusive right to file a Plan of Reorganization.  The Ad Hoc Committee believes that it is in the best interest of the Bankruptcy Estate to quickly move to a Plan of (Partial) Orderly Liquidation so as to best maximize the recovery of assets and to minimize the liabilities of the Estate for the benefit of all creditors and the Estate.

Pursuant to the Plan, the Ad Hoc Committee proposes that the Debtor's real estate be classified/subdivided as follows: (i) The Leased Property; (ii) The Gifted Property; (iii) The Retained Property; (iv)The Property to be Liquidated.

      i.      The Leased Property

            Any current tenant of the Debtor who is leasing a residential cottage/parcel pursuant to a long-term lease with nominal consideration shall be entitled to a Quit Claim Deed from the Plan Administrator for the parcel they lease.  The tenant will be responsible for paying the Plan Administrator $300.00 within ninety days from the date of Plan Confirmation in order to cover all costs necessary to record the Deed and pay transfer taxes, if any.  The tenant shall have ninety days from Plan Confirmation to make this $300.00 payment to the Plan Administrator.  If said payment is not provided to the Plan Administrator within ninety days, the lease shall be deemed rejected pursuant to 11 U.S.C. §365(h) and the Plan Administrator, at its option, shall be permitted to sell the leased premises pursuant to 11 U.S.C. §363.

---

[1] The Ad Hoc Committee consists of Crawford County, Pennsylvania; Sadsbury Township, Crawford County, Pennsylvania; Summit Township, Crawford County, Pennsylvania; and Conneaut School District, Crawford County, Pennsylvania.

#916477

ii.     The Gifted Property

The Gifted Property shall consist of that certain wetlands area situate in Summit and Sadsbury Townships.  The wetland area in Sadsbury Township is identified on the map attached hereto as Exhibit A in light orange.  The wetlands area situate in Summit Township is identified in light green and denoted with the number 4 on the map attached hereto as Exhibit A.  A metes and bounds description of the Gifted Property shall be obtained and recorded by the Plan Administrator as soon as possible after Plan Confirmation.  The Gifted Property shall be gifted to the Commonwealth of Pennsylvania, Dept. of Natural Resources for use as a nature preserve or as the department deems fit.  It is anticipated that any transfer tax on the Gifted Property would be exempt pursuant to the provisions of 11 U.S.C. §1146.

iii.    The Retained Property

At Plan Confirmation, the Debtor would retain certain parcels of real estate currently used by the Debtor in the operation of its amusement park ("the Retained Property").  The Retained Property would remain subject to the charitable use restrictions contained in the existing Deed into the Debtor.  The Debtor would thereafter continue to maintain and operate the Retained Property as a public park for the use and benefit of the public.  The Retained Property is described on the map attached hereto as Exhibit A and consists of the parcels colored in red, the southern portion of the parcel colored in orange located in Summit Township, and the green parcel identified as (No. 2) (currently a parking lot) situate just west of Route 618.  A more detailed metes and bound description of the Retained Property will be provided to the Debtor as soon as practicable after confirmation.  The Retained Property includes most, if not all, of the Debtor's current amusement park and rides, including, but not limited to, The Blue Streak Rollercoaster.  Additionally, the Retained Property will provide public access to Conneaut Lake from Route 618 and from the Parking Lot.

Following confirmation of this Plan, it shall be the obligation of the Debtor to file all appropriate requests with Crawford County requesting a determination that some or all of the Retained Property be deemed exempt from future real estate taxes.  Any real estate taxes due on the retained property prior to a granting of such an exemption shall be due and payable in full.

2

iv.    The Liquidated Property

The Liquidated Property shall consist of all remaining property of the Debtor, including, but not limited to, the RV Park (Camper Land) identified in dark green on Exhibit A; the hotel property identified on the Map in purple on Exhibit A; the Flynn property, identified on Exhibit A in green; the northern portion of the property identified in orange; all remaining property identified in green north of Reed Avenue; the property identified in light orange south of Utley Avenue; and the southern portion of the property identified in orange that is situate in Sadsbury Township.  As soon as possible after the Plan is confirmed, the Plan Administrator will obtain a metes and bounds description of the Liquidated Property.

The Ad Hoc Committee believes that higher value can be obtained for the Estate through the sale of the Liquidated Property as compared to a forced liquidation which would occur if the case was converted to a Chapter 7 proceeding, primarily due to the nature and character of the assets and liabilities of the Estate.

The Plan seeks to transfer control of the Liquidated Property to the Ad Hoc Committee and/or a Plan Administrator of the Ad Hoc Committee's choosing.  The Ad Hoc Committee intends to retain Lawrence C. Bolla, Esquire to function as the Plan Administrator and oversee the partial liquidation process.  The partial liquidation process will result in the distribution of all of the Estate's assets to its creditors with the exception of the Leased Property, the Gifted Property, and the Retained Property.  The Debtor shall continue to operate and maintain the Retained Property as a public park for the use of the public.

As of the date of the filing of this Plan, the assets of the Estate include, but are not limited to (1) approximately 200 acres of real estate situate in Crawford County, Pennsylvania, all of which the Plan proposes to re-classify and subdivide as set forth above; (2) various personal property, including, but not limited to, the amusement park rides; (3) the going concern value of Camper Land; (4) Chapter 5 Actions that the Plan Administrator contemplates filing; (5) litigation removed to this Court at Adversary Proceeding No. 15-1010 and currently on Appeal to the United States District Court for the Western District of Pennsylvania involving fire insurance proceeds of approximately $611,000.00; and (6) various assets including bank accounts and accounts receivable listed on the Debtor's Schedules and Monthly Operating Reports.

It is anticipated that the liabilities of the Estate can be kept to lower amounts if this Plan is timely pursued. The current liabilities of the Estate include, but are not limited to (1) unpaid real estate taxes; (2) secured claims; and (3) general, unsecured claims.  It is believed that if contested by the Estate certain of these claims can be settled at amounts believed to be less that currently claimed.

#916477

On December 4, 2014, the Debtor, The Trustees of Conneaut Lake Park, Inc., instituted this case seeking relief under Chapter 11 of the Bankruptcy Code.  Prior to the filing of the case, Crawford County, Pennsylvania; Sadsbury Township, Crawford County, Pennsylvania; Summit Township, Crawford County, Pennsylvania; and Conneaut School District, Crawford County, Pennsylvania and each a taxing district  (hereinafter "Taxing Districts") filed a Praecipe for Writ of Execution with the Crawford County, Pennsylvania Prothonotary and Sheriff's Office seeking to Sheriff's Sale all of the Debtor's real estate and to foreclose on various Judgments that each taxing body had obtained pursuant to 53 P.S. §7106(a)(2).  The Taxing Districts sought to foreclose on Judgments which the Taxing Districts obtained pursuant to 53 P.S. §7601(a)(1) and (a)(2) for unpaid real estate taxes totaling $927,812.95 for the years 1996 through and including 2013.

Pursuant to this Court's Order of October 9, 2015, the Debtor's exclusive period of time to file a Plan of Reorganization was terminated.  Accordingly, pursuant to the provisions of 11 U.S.C. §1121(c)(2), the Taxing Districts, through the Ad Hoc Committee, are authorized to file this Amended Plan of (Partial) Orderly Liquidation.

On or about October 15, 2015, the Ad Hoc Committee filed the following:  (a) Plan of Orderly Liquidation (Document No. 255); (b) The Disclosure Statement in Support of Plan of Orderly Liquidation (Document No. 254); (c) Summary of Plan of Orderly Liquidation (Document No. 256).

A Hearing on the approval of the Ad Hoc Committee's Disclosure Statement was held on November 30, 2015.  Following that hearing, the Bankruptcy Court issued various Orders directing that the Ad Hoc Committee file an Amended Plan and Amended Disclosure Statement on or before February 29, 2016 and subsequently extended to March 31, 2016, which the Ad Hoc Committee has now filed.[2]

As of the date of the filing of this Plan, the Debtor's operations have resulted in significant operating losses up through and including February 29, 2016 in the amount of $1,045,621.14.  The Debtor has filed a Motion to retain a Broker to sell certain "non-core" real property[3].  The Debtor has filed a subdivision request with Summit Township to subdivide the "Flynn Property" and a small portion of the Property to be Retained.  It is anticipated that the subdivision request will be approved on or after April 5, 2016. The Debtor has also filed two Motions pursuant to Section 363 to sell lots four and five of the Flynn Subdivision.  The anticipated net proceeds from these sales in the approximate amount of $450,000.00 should be distributed to the Taxing Authorities on account of their first secured claim.  Other than certain carve-outs for the Debtor's professionals, no other creditors will receive a distribution from the proceeds of these sales.

---

[2] The Court also directed that the Debtor, the Ad Hoc Committee, Conneaut Sewer Authority, and the Attorney General's Office participate in a mandatory mediation in an attempt to provide a consensual Plan.  A Mediation between the parties took place on January 25, 2016.  As of the date of the filing of this Plan, the parties have been unable to arrive at an agreement to provide the Court with a consensual Plan. The parties were unable to arrive at an agreement to provide the Court with a consensual Plan. On March 30, 2016, the Parties agreed to an extension of the Mediation Process through April 30, 2016.
[3] This Court approved retention of Passport Realty, LLC by Order dated July 31, 2015 at Document No.174.

#916477

It is anticipated that during the wind-down stage of the Plan and the sale of the Liquidated Property, the Plan Administrator will be able to manage the Debtor's Estate in an efficient and cost-effective manner through the sale of the Debtor's various assets and through the use of the cash on hand as reported by the Debtor's Schedules and Monthly Operating Reports.

The Plan provides for the Debtor to retain certain of its real property upon which is currently situated the Debtor's amusement park (the "Retained Property") for the continued purpose of maintaining a public park.  As indicated above, the property leased by the Debtor to seasonal cottage tenants shall be conveyed by a Quit Claim Deed from the Plan Administrator.  Additionally, the Gifted Property as identified above shall be transferred to the Pennsylvania Dept. of Natural Resources.  Any assets of the Debtor other than the retained property, the leased property, or the gifted property shall be transferred to the Plan Administrator at Plan Confirmation, including, but not limited to, estate litigation and any cash on hand.

The Plan Administrator will retain an experienced commercial real estate broker to liquidate the "Liquidated Property" and to conduct the sales in this Court pursuant to 11 U.S.C. §363.[4]

Pursuant to the Plan, the Plan Administrator will provide Quit Claim Deeds to any of the tenants currently leasing property from the Debtor pursuant to long-term leases with nominal consideration.

The Plan Administrator will aggressively attempt to collect any and all outstanding claims and accounts receivable rightfully due to the Estate including but not limited to Chapter 5 Claims.  Once the funds have been collected, they will be utilized to make distributions to the creditors.

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0    Definitions**

    **1.01    "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Article 3.3 of the Plan.

---

[4] It is anticipated that the Plan Administrator will retain the Broker employed by the Debtor.

#916477

**1.02 "Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Reorganization Case under sections 503(b) and 507(a)(l) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; and (d) any fees or charges assessed against and payable by the Debtor under section 1930 of title 28 of the United States Code.

**1.03 "Allowed"** means with reference to any Claim: any Claim (a) a proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or other party in interest have not Filed an objection on or before the expiration of the time period set forth for the objection to such claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder; (b) listed on the Schedules as other than disputed, contingent or unliquidated; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); and (d) expressly allowed under or pursuant to the terms of the Plan.

**1.04 "Assets"** means all the assets of the Trustees of Conneaut Lake Park, Inc., whether or not reflected in the financial records of the Trustees of Conneaut Lake Park, Inc.

**1.05 "Assumed Contracts"** means all executory contracts and unexpired leases assumed by the Debtor or Plan Administrator as stated in Article 10.1 in either this Plan of Partial Liquidation or pursuant to 11 U.S.C. §365.

**1.06 "Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

**1.07 "Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.08 "Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) a "legal holiday" as such term is defined in Bankruptcy Rule 9006 (a).

**1.09 "Cash"** means legal tender of the United States of America.

**1.10 "Cash Investment Yield"** means the net yield earned by the Debtor from the investment of Cash held pending Distribution in accordance with the provisions of the Plan.

#916477

**1.11** **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Reorganization Case, including through the Effective Date.

**1.12** **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code, including all Administrative Expense Claims.

**1.13** **"Claim Holder"** means holders of Claims in Classes 1, 2, and 3 entitled to receive Distributions under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.14** **"Class"** means each of the groups of holders of Claims described in Articles IV and V of the Plan.

**1.15** **"Collateral**" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim up to the amount of such Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

**1.16** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Court.

**1.17** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.18** **"Confirmation Order"** means the order of the Court confirming the Plan under section 1129 of the Bankruptcy Code.

**1.19** **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

**1.20** **"Cy Pres Doctrine"** shall mean the procedure set forth at 20 Pa.C.S. § 7740.3 concerning the termination of a charitable trust that has become unlawful, impracticable or wasteful.

**1.21** **"Creditor Liquidation Fund**" means the fund for distribution to creditors pursuant to Article VIII of the Plan.

**1.22** **"Debtor"** means the Trustees of Conneaut Lake Park, Inc.

**1.23** **"Deeds"** means (a) that Deed dated August 31, 1997 and recorded in Crawford County Record Book 03550911 between Property on the Lake, Inc. as Grantor and Trustees of Conneaut Lake Park, Inc. as Grantee and (b) that certain Deed dated September 15, 1997 and recorded in Crawford County Record Book 0357 at Page 0769 between Trustees of Conneaut Lake Park, Inc. as Grantor and Trustees of Conneaut Lake Park, Inc. as Grantee

**1.24** **"Disclosure Statement"** means the Amended Disclosure Statement Dated  March 31, 2016 to accompany Amended Plan of (Partial) Orderly Liquidation dated  March 31, 2016, including the exhibits, appendices, and schedules thereto, as the same may be amended, modified, or supplemented from time to time and as may be approved by the Court pursuant to order.

**1.25** **"Disputed Claim"** means a Claim or any portion thereof, (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtor, the Plan Administrator or any other party in interest has Filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding claim listed in the Schedules by the Debtor; (d) no corresponding Claim has been listed in the Schedules by the Debtor or (e) is otherwise disputed by the Debtor, the Plan Administrator or any other party in interest in accordance with applicable law, which dispute has not been withdrawn or determined by a Final Order.

**1.26** **"Disputed Reserve"** means a reserve established for the relevant Class for, among other things, the payment or other satisfaction of Disputed Claims that are Allowed after the effective Date, which shall be held in the Estate by the Plan Administrator.

**1.27** **"Distributions"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

**1.28** **"Effective Date"** means a date, as determined by the Ad Hoc Committee, that is a Business Day on which (a) all conditions precedent set forth in Article 12.2 of the Plan have been satisfied or waived as provided in Article 12.3 of the Plan and (b) no stay of the Confirmation Order is in effect.

**1.29** **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.30** **"Estate"** means the estate of the Debtor in its Reorganization Case created by section 541 of the Bankruptcy Code upon the commencement of its Reorganization Case.

#916477

**1.31** **"Estate Litigation"** means all claims, Causes of Action and Recovery Actions of the Estate against third parties, including but not limited to, any litigation or claims instituted or asserted by the Debtor prior to the Effective Date or which may be brought by the Plan Administrator to recover preferences, fraudulent conveyances, claims, causes of action or avoidance actions of any kind whatsoever, including the claim for fire insurance proceeds, removed to this Court.  No party other than the Plan Administrator shall have any right to commence or pursue any Estate Litigation after the Effective Date.[5]

**1.32** **"File" or "Filed"** means, with respect to any pleading, entered on the docket of the Reorganization Case and properly served in accordance with the Bankruptcy Rules.

**1.33** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.34** **"General Unsecured Claim"** means an unsecured claim against the Debtor as provided for under Section 5.3 herein.

**1.35** **"Impaired"** means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable, or contractual rights to which such Claim entitles its holder.

**1.36** **"Initial Distribution Date"** means the date on which the Estate shall make its initial Distribution, which shall be a date selected by the Plan Administrator.

**1.37** **"Leases"** shall mean the Leases identified on Schedule G of the Debtor's bankruptcy petition, as amended.

**1.38** **"Liabilities"** means all the liabilities of the Estate of Trustees of Conneaut Lake Park, Inc., whether or not reflected in the financial records of Trustees of Conneaut Lake Park, Inc.

**1.39** **"Lien"** has the meaning ascribed to that term in section 101(37) of the Bankruptcy Code.

---

[5] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof.

#916477

**1.40** **"New Board of Directors"** shall mean a Board of Directors to be created for the Trustees of Conneaut Lake Park, Inc. immediately following confirmation and to consist of the following member:  (a) member appointed by Sadsbury Township; (b) member appointed by Coneaut School District; (c) member appointed by Summit Township; (d) member appointed by the Attorney General's Office; and (e) member appointed by Crawford County.

**1.41** **"Proceeds of Partial Liquidation"** means the proceeds from the collection, sale or other disposition of the Liquidated Property, net of the sum of: (i) customary closing costs, fees and commissions, including but not limited to, legal and accounting fees and disbursements, fees of brokers, fees of auctioneers, finders and investment bankers, and all federal, state and local taxes and transfer fees; (ii) all valid liens, encumbrances or other claims, and (iii) reasonable expenses incurred on behalf of the Estate or the Plan Administrator.

**1.42** **"Permitted Investments"** means those investments of Estate Property or Liquidating Plan Proceeds by the Plan Administrator as described in Article 7.3.

**1.43** **"Petition Date"** means December 4, 2014, the date on which the Debtor filed its Chapter 11 petition and commenced the Reorganization Case.

**1.44** **"Plan"** means this Amended Plan of (Partial) Orderly Liquidation filed by the Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc. under Chapter 11 of the Bankruptcy Code dated March 31, 2016, (including any Plan Supplement and all schedules and exhibits hereto or thereto), as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.45** **"Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a)(3), (4), (5), (6), (7), (8) or (9) of the Bankruptcy Code.

**1.46** **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.47** **"Property of the Debtor".** The property of the Debtor shall be classified as follows:

**a)**      **"The Leased Property"**

Any current tenant of the Debtor who is leasing a residential cottage/parcel pursuant to a long-term lease with nominal consideration shall be entitled to a Quit Claim Deed from the Plan Administrator for the parcel they lease.  The tenant will be responsible for paying the Plan Administrator $300.00

10

within ninety days from the date of Plan Confirmation in order to all costs necessary to record the Deed and pay transfer taxes, if any.  The tenant shall have ninety days from Plan Confirmation to make this $300.00 payment to the Plan Administrator.  If said payment is not provided to the Plan Administrator within ninety days, the lease shall be deemed rejected pursuant to 11 U.S.C. §365(h) and the Plan Administrator, at its option, shall be permitted to sell the leased premises pursuant to 11 U.S.C. §363.

b)      **"The Gifted Property"**

The Gifted Property shall consist of that certain wetlands area situate in Summit and Sadsbury Townships.  The wetland area in Sadsabury Township is identified on the map attached hereto as Exhibit A in light orange.  The wetlands area situate in Summit Township is identified in light green and denoted with the number 4 on the map attached hereto as Exhibit A.  A metes and bounds description of the Gifted Property shall be obtained and recorded by the Plan Administrator as soon as possible after Plan Confirmation.  The Gifted Property shall be gifted to the Commonwealth of Pennsylvania, Dept. of Natural Resources for use as a nature preserve or as the department deems fit.  It is anticipated that any transfer tax on the Gifted Property would be exempt pursuant to the provisions of 11 U.S.C. §1146.

c)      **"The Retained Property"**

At Plan Confirmation, the Debtor would retain certain parcels of real estate currently used by the Debtor in the operation of its amusement park ("the Retained Property").  The Retained Property would remain subject to the charitable use restrictions contained in the existing Deeds into the Debtor.  The Debtor would thereafter continue to maintain and operate the Retained Property as a public park for the use and benefit of the public.  The Retained Property is described on the map attached hereto as Exhibit A and consists of the parcels colored in red, the southern portion of the parcel colored in orange located in Summit Township, and the green parcel identified as (No. 2) (currently a parking lot) situate just west of Route 618.  A more detailed metes and bound description of the Retained Property will be provided to the Debtor as soon as practicable after confirmation.  The Retained Property includes most, if not all, of the Debtor's current amusement park and rides, including, but not limited to, The Blue Streak Rollercoaster.

11

Additionally, the Retained Property will provide public access to Conneaut Lake from Route 618 and the Parking Lot.

Following confirmation of this Plan of Partial Liquidation, it shall be the obligation of the Debtor to file all appropriate requests with Crawford County requesting a determination that the retained property be deemed exempt from future real estate taxes.  Any real estate taxes due on the retained property prior to a granting of such an exemption shall be due and payable in full.

d)   **"The Liquidated Property"**

The Liquidated Property shall consist of all remaining property of the Debtor, including, but not limited to, the RV Park (Camper Land) identified in dark green on Exhibit A; the hotel property identified on the Map in purple on Exhibit A; the Flynn property, identified on Exhibit A in green; the northern portion of the property identified in orange; all remaining property identified in green north of Reed Avenue; the property identified in light orange south of Utley Avenue; and the southern portion of the property identified in orange that is situate in Sadsbury Township.

**1.48** **"Quarterly Distribution Review Date"** means the last day of each quarterly calendar period (i.e., December 31, March 31, June 30, and September 30 of each calendar year) as of which the Plan Administrator will perform a review of the cash and financial position of the Estate (including, but not limited to, considering cash on hand and the balances of Disputed Reserves, the Secured Fund and the Unsecured Fund) to determine if, and to what extent, distributions can be made.

**1.49** "**Quit Claim Deed**" shall mean a Quit Claim Deed to by conveyed by the Plan Administrator any current tenant of the Debtor who is leasing a residential cottage/parcel pursuant to a long-term lease with nominal consideration shall be entitled to a Quit Claim Deed from the Plan Administrator for the parcel they lease.  The tenant will be responsible for paying the Plan Administrator $300.00 within ninety days from the date of Plan Confirmation in order to cover all costs necessary to record the Deed and pay transfer taxes, if any.  The tenant shall have ninety days from Plan Confirmation to make this $300.00 payment to the Plan Administrator.  If said payment is not provided to the Plan Administrator within ninety days, the lease shall be deemed rejected pursuant to 11 U.S.C. §365(h) and the Plan Administrator, at its option, shall be permitted to sell the leased premises pursuant to 11 U.S.C. §363.

**1.50** **"Ratable Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

**1.51** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the date the Disclosure Statement Approval Order is entered.

**1.52** **"Recovery Actions"** means, collectively and individually, without limitation, (a) preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law; (b) Claims and Causes of Action based on unjust enrichment; (c) Claims or Causes of Action for breach of fiduciary duty, breach of duty of loyalty, negligence, waste, mismanagement, malfeasance, and similar Causes of Action, or, to the extent it is a Claim or Cause of Action of any of the Debtor, fraud; (d) Claims or Causes of Action for breach of contract, contribution, indemnification or reimbursement; (e) Claims or Causes of Action to recover property of the Estate, including recovery of fire insurance proceeds in the action removed to this Court [6]; and  (f) any other Claim or Cause of Action the Debtor has against any person or entity that is not barred by the applicable statute of limitations or other such reason.

**1.53** **"Reorganization Case"** means the case commenced by the Debtor under Chapter 11 of the Bankruptcy Code before the Court, as referenced by Case Number 14-11277-JAD.

**1.54** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor on or about January 30, 2015, pursuant to section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented or amended from time to time.

**1.55** **"Secured Claim"** means a Claim that is secured by a Lien on the property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to a setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

**1.56** **"Trustees of Conneaut Lake Park, Inc. Advisory Board"** means the members of the Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustee of Conneaut Lake Park, Inc. and as further described in Article 7.1 of the Plan.

**1.57** **"Trustees of Conneaut Lake Park, Inc. Plan Administrator"** means the person appointed in accordance with the Plan to administer the orderly liquidation of the Debtor.

**1.58** **"Unimpaired"** means a Claim that is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code.

---

[6] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof.

#916477

**1.59** **"United States Trustee"** means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Western District of Pennsylvania.

**1.60** **"Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc."** means Crawford County, Pennsylvania; Sadsbury Township, Crawford County, Pennsylvania; Summit Township, Crawford County, Pennsylvania; and Conneaut School District, Crawford County, Pennsylvania, as that Ad Hoc Committee may be constituted from time to time.

**1.61** **"Use Restriction"** means the Use Restrictions contained in the Deeds identified in Section 1.23.

**ARTICLE II**

**INTERPRETATION: APPLICATION OF DEFINITIONS,
RULES OF CONSTRUCTION, AND COMPUTATION OF TIME**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.   For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.   A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

14

# ARTICLE III

## ADMINISTRATIVE EXPENSE CLAIMS

### 3.1 Administrative Expense Claims

Each Allowed Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are dealt with in Article 3.2) shall be paid by the Estate in Cash, in full, on the later of the Initial Distribution Date or the first Quarterly Distribution Date to the extent that secured claims have been paid in full or otherwise resolved and funds are available.

### 3.2 Professional Compensation

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, the Plan Administrator, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than ninety (90) days after the Confirmation Date. Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Plan Administrator, and any requesting Entity by the later of (a) thirty (30) days after the Effective Date (b) seventeen (17) days after the Filing of the relevant application, or (c) otherwise by any deadline set by the Court upon the Filing of the relevant application.

### 3.3 Administrative Bar Date

Any request for the payment of an Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are dealt with in Article 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of any of the foregoing, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Plan Administrator within thirty (30) days after the Confirmation Date.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

15

#916477

The classification of Claims and Interests of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Secured Claims | Impaired – entitled to vote |
| Class 2 | Priority Claims | Impaired - entitled to vote |
| Class 3 | General Unsecured Claims | Impaired - entitled to vote |

The treatment of claims against the Debtor is more fully set forth in Article V.

**ARTICLE V**

**TREATMENT OF CLAIMS UNDER THE PLAN**

The following treatment set forth in this Article V shall be accorded to Claims against the Debtor.

## 5.1 Class 1: Secured Claims

Class 1 consists of all Secured Claims, including the tax liens and Judgments of the taxing districts for unpaid real estate taxes. The Plan Administrator intends to sell the Liquidated Property. If any asset of the Debtor is sold or otherwise converted to cash by the Plan Administrator free and clear of the Secured Claim holder's Liens, such holder shall receive, as promptly as practicable following the closing of such sale, to the extent cash is available and in accordance with Article VIII of the Plan, after the payment of any compensation provided for under Section 7.2.2 herein, if any; and reasonable costs and expenses of sale in the amount of the value of such holder's interest in such Asset.

It is unknown at this time what, if anything, the Secured Creditors will receive from the sale of the Liquidated Property. It is conceivable that the Plan Administrator may have difficulty in selling the Debtor's real estate as a result of the "use restriction". Further, the value of the Debtor's real estate subject to the Secured Creditors' Mortgages and Judgments may be insufficient to pay such claims in full.

To the extent that such Secured Claim is not satisfied in full, the claimant shall be entitled to a Class 3 unsecured claim.

The Plan Administrator reserves the right to object to any claims filed or listed as secured claims and to the value of the collateral securing such claims.

Class 1 is impaired and the holders of Class 1 claims are entitled to vote to accept or reject the Plan.

16

## 5.2 Class 2: Priority Claims

Class 2 consists of all Priority Claims.  Class 2 includes the Priority Claims identified on the Debtor's Schedule and such other Priority Claims for which Proofs of Claim have been filed. Unless the Plan Administrator and the holder of such Claim agree to a different treatment, each holder of an Allowed Priority Claim shall be paid, in Cash by the Estate on the later of (a) the Initial Distribution Date or (b) the Quarterly Distribution Review Date next following the date on which such Claim is Allowed to the extent that sufficient cash, as determined by the Plan Administrator in its sole discretion, (including, but not limited to, considering cash on hand and the balances of Disputed Reserves), is available in the Estate to make such distribution at that Quarterly  Distribution Review Date.

It is unknown at this time whether funds will be available following the sale of the Liquidated Property and the payment of Class 1 Claims and Administrative Claims to make distribution to Class 2 Claims.  To the extent that the Class 2 claims are not paid in full from the sale of the Liquidated Property, the Class 2 creditors would retain their claims against the reorganized Debtor.

Class 2 is impaired, and the holders of Class 2 claims are entitled to vote to accept or reject the Plan.

## 5.3 Class 3: General Unsecured Claims

**5.3.1  (a)    Definition**:  Class 3 consists of all allowed general unsecured claims.

**(b)    Treatment**:  It is unknown at this time whether sufficient funds will be available after the sale of the Liquidated Property and the payment of Class 1 Claims, Administrative Claims, and Class 2 Claims to make any distribution to General Unsecured Claims. Any payments to the Class 3 claimants will be made at such time as the Plan Administrator has determined that funds are available to make said distributions.

To the extent that the Class 3 claims are not paid in full from the sale of the Liquidated Property, the Class 3 creditors shall retain their claims against the reorganized Debtor.

Class 3 is impaired and the holders of Class 3 claims are entitled to vote to accept or reject the plan.

### 5.3.2  Impairment

Class 1, 2, 3 are impaired, and the holders of Class 1, 2, and 3 claims are entitled to vote to accept or reject the Plan.

17

To the extent that funds are available from the sale of the property to be liquidated and the payment of Class 1 Claims, Administrative Claims, Class 2 Claims, and Class 3 Claims in full, said funds shall be distributed to the reorganized Debtor.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1 Holders of Claims Entitled to Vote

Classes 1, 2, and 3 are Impaired under the Plan.  Each holder of an Allowed Claim (and each holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a)) in Class 1, 2, and 3 shall be entitled to vote to accept or reject the Plan.

### 6.2 Acceptance by Impaired Classes

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### 6.3 Nonconsensual Confirmation

Accordingly, the Plan Proponent will or may request that the Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE VII

## MEANS OF IMPLEMENTATION OF THE PLAN

### 7.1 Oversight of Plan by Advisory Board

#### 7.1.1 Composition of the Advisory Board

In order to properly administer this Plan, an advisory board will be formed (the Trustees of Conneaut Lake Park, Inc. Advisory Board) (hereinafter the "Advisory Board").

#### 7.1.2 Members of the Advisory Board

The initial Advisory Board members shall consist of Crawford County, Sadsbury Township, Summit Township and the Conneaut School District.  Each Advisory Board member shall designate an individual representative to act on its behalf.

18

### 7.1.3 Appointment of Plan Administrator

The Advisory Board shall appoint Lawrence C. Bolla as the Plan Administrator to administer the Plan in accordance with Section 7.2.1 of the Plan.

### 7.1.4 Broker and/or Auctioneer

The Advisory Board and the Plan Administrator shall use due diligence in selecting a broker and/or auctioneer to liquidate the assets of the Debtor.

### 7.1.5 Sale of Liquidated Property

Following confirmation of the Plan, the Plan Administrator proposes to retain Passport Realty, Inc. as the Plan Administrator's broker to sell the real property to be liquidated in the in the most economical manner possible.

The plan for the sale of the property to be liquidated is as follows:

a)      Preliminary Engineering Services.

The services of engineer Ashley Porter from Porter Consulting would be retained for purposes of providing the legal descriptions set forth above.

b)      Camper Land.

The greatest value to be generated from Camper Land is through a going concern sale of the Camper Land business and the real estate situate thereon to an established campground operator (for example KOA). Camper Land has a historically good stabilized income.  It is believed that the going concern value of Camper Land can be set at eight times its annual net earnings.  In addition, the real estate situate thereon has a value of approximately $150,000.00.  Under the Plan proposed by The Taxing Bodies, Camper Land renters/occupants would have access to Conneaut Lake Park through Route 618 and The Property to be Retained.

c)      Water System.

The water system is currently owned by the Debtor and would be marketed as soon as possible following Plan confirmation.  A sale to a local water authority (possibly Aqua) is the most likely possibility.  It is unknown at this time what value the water system has but under the proposed Plan it is to be sold as soon as possible so that the current water customers of the Debtor have appropriate and continuing water service.

#916477

d)      The Flynn Property.

A proposed subdivision map has already been submitted to Summit Township. That subdivision map subdivides the Flynn property and a portion of the property immediately south of the Flynn property into a number of lots that front the lake and lots which would have access to the lake.  These would be sold first for the best price to be obtained.  Any sale would be subject to a Bankruptcy Court auction for higher and better offers.  As of the date of the filing this Disclosure Statement, an offer has been received for the sale of both Lot 4 and Lot 5 of the proposed subdivision.  It is anticipated that the net proceeds of these sales would be approximately $450,000.00, all of which would be applied to the secured debt owed to the Taxing Bodies.

e)      Hotel Conneaut.

No effort would be made to sell the hotel as a going concern because it is believed that the hotel is not structurally sound and worthy of rehabilitation.  It would be liquidated in two phases: i) an auctioneer would sell off all personal property inside the facility including light fixtures, toilets, etc. and would thereafter be demolished; ii) the real estate on the hotel parcel, outlined in purple on Exhibit A, would be subdivided into appropriate amounts of land with no more than 100 feet of beach frontage and would be sold off at such point in time as it was deemed to be economically feasible (probably following the sale of all of the Flynn Property lots).

f)      Lakeview Development Parcel.

This would be a portion of the property outlined in orange on Exhibit A and north of The Property to be Retained.  It has an excellent view of the Lake.  Once a legal description is obtained, this property could be properly subdivided and sold after the sale of the Flynn Property and the Hotel Property.

g)      Compensation of Passport Realty.

Depending upon Court Approval, Passport Realty would earn a commission of 7% of all of the above-referenced sales.

It is anticipated that the sale of the all of the Debtor's Liquidated Property will take place prior to the end of the year 2017.  It is anticipated that the broker's fees for selling the Liquidated Property would be approximately $200,000.00.

### 7.1.6 Role and Standing of Advisory Board; No Fiduciary Obligations

The Advisory Board shall act as advisors to the Plan Administrator.  Any advice given or recommendations made individually or collectively by the Advisory Board shall be made in their respective capacities as individual creditors of the Debtor, and except as otherwise expressly provided in this Plan, shall not be binding upon any other creditor or class, or the Plan Administrator.  The Plan Administrator shall provide regular reports on such basis as may reasonably be requested by the Advisory Board.  The Advisory Board shall have standing to file motions or seek other forms of relief, and to appear and be heard on any matter relating to the Estate or any activities of the Plan Administrator as may be appropriate under the circumstances, including but not limited to pursuing recovery of the insurance proceeds. The Advisory Board shall in no event be deemed to be fiduciaries of the Estate or to have any fiduciary or other obligations to any other creditor or party in interest in their respective roles as Advisory Board; and shall in no event be liable or otherwise responsible to any other person, firm or corporation by reason of any action or failure to act in their respective capacities as Advisory Board, except for conduct constituting gross negligence or willful misconduct for which they would otherwise be liable in the absence of this Article.

### 7.1.7 Successors to Advisory Board

In the event an Advisory Board member no longer desires to serve on the Advisory Board, he/she shall give written notice of the effective date thereof to the remaining Advisory Board members who shall thereupon elect a successor. Any successor so elected must have no conflict of interest in fulfilling their responsibilities.

### 7.1.8 Indemnification of Advisory Board

Each Advisory Board member  shall be indemnified  and receive reimbursement from the Estate Property against and from any and all loss, liability, cost, damage or expense which he, she or it may incur or sustain in the exercise and performance of any of his, her or its duties and responsibilities as such Advisory Board member under this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as the result of the Advisory Board member's gross negligence or willful misconduct.

## 7.2 The Plan Administrator

### 7.2.1 Responsibilities of the Plan Administrator

The Plan Administrator will have those responsibilities created by this Plan upon the terms and conditions summarized herein and will, for the benefit of the claimants and interest owners exercise the rights and powers vested in it by this Plan in the same manner, and use the same degree of care and skill in their

21

exercise, as a prudent person would exercise and use under the circumstances in the conduct of its own affairs, and further agrees to receive and disburse all of the Plan Proceeds in accordance with the terms hereof.  More specifically, the Plan Administrator is empowered to:

(a)     perform all of the obligations and agreements of the Plan provided for herein;

(b)     keep and maintain bank accounts in the name of the Estate for the benefit of the Beneficiaries into which the Plan Administrator shall deposit all proceeds (unless such proceeds shall theretofore have been invested in Permitted Investments pursuant to Article 7.3 of the Plan) resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the Liquidated Property.  The Plan Administrator shall not permit any person other than a designated representative of the Plan Administrator to have authority to make withdrawals from, or to issue drafts against, any accounts maintained with any bank, unless such bank has been furnished a copy of this Plan;

(c)     commence or continue Estate Litigation or Recovery Actions for the benefit of the beneficiaries hereunder for the purpose of liquidating the Estate Property or maximizing the value of the Estate;

(d)     to object to any claims (disputed or otherwise), and to compromise or settle any claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and/or to seek Court approval, on a quarterly basis, for any claims settlements made within such quarterly period or otherwise;

(e)     market, negotiate and enter into and perform agreements for the sale or other disposition of the Assets as may be required by the Plan or the United States Bankruptcy Court; as may be required by the Plan;

(f)     to seek a determination of tax liability under Section 505 of the Bankruptcy Code  and to pay taxes, if any, related to the Debtor, Estate or the sale of Assets of the Debtor or Estate;

(g)     collect, receive and give receipt for all sums of money or other property due to the Debtor or Estate and, if necessary, foreclose upon any security agreement or the like securing any liability or obligation owed to the Debtor or the Estate or liquidate any securities held by the Plan Administrator as a pledge and/or take any other actions necessary to the collection, receipt or disposition of any Estate Property;

22

(h)     compromise or settle disputes with respect to debt obligations owed to the Debtor or the Estate;

(i)     execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(j)     enter into financing agreements to the extent necessary to supplement the cash flow of the Estate so as to allow the Plan Administrator to maximize the liquidation value of the Assets, maximize the amounts collected pursuant to Estate Litigation or Recovery Actions and minimize amounts paid to settle Liabilities, including but not limited to disputes;

(k)     engage and compensate professionals, including attorneys, accountants, investment advisors and others, to assist the Plan Administrator in carrying out its duties hereunder which professionals include, without limitation, those retained to assist the Plan Administrator in any litigation related to the liquidation of the Assets as well as Estate Litigation  or the settlement of the Liabilities.   All professionals employed by the Plan Administrator shall be compensated by the Estate.

(l)     The Plan Administrator shall file or caused to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate property.

(m)     retain and compensate, upon terms acceptable to the Plan Administrator, former employees of the Debtor to assist in the collection, liquidation and distribution of the Assets, to assist in the maintenance, operation, and security of the infrastructure of the Debtor's real property including, but not limited to, roads and water systems, to assist in the review and objection to claims, to assist in the pursuit of the Debtor's claims and Causes of Action including, but not limited to, its chapter 5 claims and causes of action, and in such other matters as the Plan Administrator deems necessary and appropriate.

## 7.2.2 Compensation of the Plan Administrator

In lieu of any commission or fees which may be fixed by applicable law for trustees or fiduciaries (and which are hereby waived by the Plan Administrator), the Plan Administrator and his agents, accountants, professionals and any other persons retained by him (collectively, "Retained Professionals") shall be compensated from proceeds generated from the sale of the Liquidated Property based on his standard hourly rate then in effect (and the standard hourly rates of others in his office then in effect, as applicable, which are based upon professionals' level of experience), plus reimbursement of reasonable and necessary expenses shall also be compensated.  The Plan Administrator shall be entitled to reimbursement from the proceeds generated from the sale of the Liquidated Property of all out-of-pocket expenses, and costs and expenses of

23

distributing to the Beneficiaries the Plan Proceeds.  The Plan Administrator shall exercise its own business judgment to assure that the duties of the Plan Administrator are performed on the most economical basis to the Estate.

The Plan Administrator shall submit to the Plan Advisory Board all invoices for fees and expenses and request payment thereon.  The standard hourly rates charged by the Plan Administrator and his Retained Professionals range from $115.00 to $275.00 per hour and from $65.00 to $95.00 for paraprofessionals. The Plan Administrator and his Retained Professionals customarily review their professional and paraprofessional hourly rates on an annual basis.  Any revisions to the above-referenced rates will be brought to the attention of the Court by supplemental disclosure or by such other means as the Court directs within thirty (30) days of the effective date of the adjustment.

If the Plan Advisory Board disputes the reasonableness of any such invoice, they shall authorize the Plan Administrator to pay the undisputed portion of such invoice and submit the dispute regarding the balance of such invoice to the Court for determination of its reasonableness.  If no such dispute notice is submitted to the Plan Administrator within ten (10) days of submitting its invoice, the Plan Administrator shall be authorized to pay the invoice in full.

### 7.2.3 Claims Against the Plan Administrator

In accepting this assignment, the Plan Administrator acts solely as Advisor hereunder, and all persons having any claim against the Plan Administrator in connection with its performance of its rights, powers and duties as such Plan Administrator shall only look to the Estate Property and the Liquidating Plan Proceeds for payment or satisfaction thereof.

### 7.2.4 Commingling of Estate Property and Liquidating Plan Proceeds

The Plan Administrator shall not commingle any of the Estate Property and Liquidating Plan Proceeds with its own property or the property of any other person.

### 7.2.5 Maintenance of Books and Records

The Plan Administrator shall maintain records and books of account relating to the Estate Property.  The Plan Administrator shall prepare, as soon as practicable after the end of each calendar year and each calendar quarter, a financial statement. In addition, at least annually, the Plan Administrator will furnish a report showing all sales or other dispositions of Assets, proceeds received from settlements or judgment and payment thereon of Assets or proceeds received relating to Estate Litigation or Recovery Actions, settlement of Liabilities and expenses relating to the operation of the Estate) consummated during the reporting period.  The Plan Administrator shall file or cause to be filed

24

all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate Property.

### 7.2.6 Reliance on Others

The Plan Administrator may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the Plan Administrator shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

### 7.2.7 Reliance by persons dealing with the Plan Administrator

In the absence of actual knowledge to the contrary, any person dealing with the Debtor and the Estate shall be entitled to reply on the authority of the Plan Administrator to act on behalf of the Estate and the Debtor and shall have no obligation to inquire into the existence of such authority.

### 7.2.8 Liability for Errors and Omissions

The Plan Administrator and its agents shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it in its capacity as Plan Administrator, unless it shall be proved that the Plan Administrator or its agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of its rights, powers or duties according to this Plan.  In the event such liability is proven, the beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorney's fees. The Plan Administrator makes no representations as to: (i) the value or condition of the Estate Property or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Estate Litigation or Recovery Actions, (iii) the amount at which Liabilities may be settled, and (iv) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the Plan Administrator shall incur no liability or responsibility in respect of such matters.

### 7.2.9 Indemnification of Plan Administrator

The Plan Administrator shall be indemnified by and receive reimbursement from the Estate Property (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of his its powers and duties as the Plan Administrator pursuant to this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of the Plan Administrator's gross negligence or willful misconduct.  Other than claims by the Plan Administrator for indemnification or reimbursement resulting from its own

25

gross negligence or willful misconduct, all claims of the Plan Administrator for indemnification or reimbursement under this Article 7.1.8 shall be first offset by the Plan Administrator against any portion of the Estate Property or, at the Plan Administrator's discretion, against any payment or distribution made or to be made in accordance with Article VIII of this Plan.

### 7.2.10 Resignation of Plan Administrator

The Plan Administrator may resign the Administration of the Estate at any time by giving at least thirty (30) days prior written notice to Michael P. Kruszewski, Esquire, such resignation to be effective at least thirty (30) days after the date of such notice.

### 7.2.11 Removal of Plan Administrator

The Advisory Board upon petition to the Court may (a) remove the Plan Administrator for cause, at any time, upon the Plan Administrator's violation of any provision of this Plan, and (b) upon the removal of the Plan Administrator for cause or upon its resignation, select a successor to the Plan Administrator and execute a supplement to this Plan appointing the successor Plan Administrator, which supplement shall be binding upon all Beneficiaries then holding beneficial interests in the Estate Property and Liquidating Plan Proceeds.   The indemnification afforded to the Plan Administrator as set forth in Section 7.2.9 above as well as the provisions of sections 7.2.3, 7.2.6 and 7.2.8 shall indefinitely survive the removal of the Plan Administrator.  Further, the Plan Administrator shall be entitled to reasonable compensation for fees and expenses incurred as a result of such removal as provided for under section 7.2.2.

### 7.2.12 Appointment by Court of Successor to Plan Administrator

Following the resignation or removal of the Plan Administrator Michael P. Kruszewski, Esq. shall petition the Court to appoint a successor as Plan Administrator.   The Order appointing the successor Plan Administrator shall provide, inter alia, that such successor Plan Administrator shall act in all respects in accordance with the terms and conditions of the Plan of Liquidation.

### 7.2.13 Requirements to be Fulfilled by Successor to Plan Administrator

Any successor Plan Administrator shall execute and deliver to the beneficiaries of the plan and to the predecessor Plan Administrator an instrument accepting such appointment, the terms and conditions of which shall be the same as those contained in this Plan, and thereupon such Plan Administrator, without further act, shall be vested with all the estates, properties, rights, powers, duties and trusts of the predecessor Plan Administrator in the Estate and the Debtor with like effect as if originally named as Plan Administrator herein; but nevertheless, upon the written request of such Plan Administrator, the predecessor Plan Administrator shall (i) execute, acknowledge and deliver such instruments of

#916477

conveyance and further assurances and do such other things as may reasonably be required for more fully and certainly vesting and confirming unto said Plan Administrator all the right, title and interest of the predecessor Plan Administrator in and to the Estate Property; (ii) duly assign, transfer, deliver, account for and pay over to such Plan Administrator any property or money then held by such predecessor Plan Administrator; and (iii) deliver to such Plan Administrator any and all records, or copies thereof in respect of the Estate which the predecessor Plan Administrator  may have.

## 7.3 Permitted Investments of Estate Property and Liquidating Plan Proceeds

### 7.3.1 Types of Permitted Investments

Monies constituting part of the Estate Property shall, to the extent permitted by applicable law, be invested by the Plan Administrator: (a) in debt securities issued by the United States of America or by any agency or instrumentality thereof with a maturity of six (6) months or less, or (b) in certificates of deposit issued with a maturity of six (6) months or less by banks which are members of the Federal Reserve System having a capital stock and surplus aggregating at least $100,000,000 or (c) commercial paper rated no less than A-1, P-1 or F-1, money market accounts such as Vanguard or Fidelity provided however, that (i) each Permitted Investment shall be held solely in the name of the Plan Administrator as Plan Administrator for the Estate, (ii) to the extent practicable, the Plan Administrator shall take physical possession of all such securities and secure them in a safe deposit box registered solely in the name of the Plan Administrator as Plan Administrator for the Debtor, and (iii) no Permitted Investment may be made unless the Plan Administrator shall furnish the bank through which such Permitted Investment is made or in whose certificates of deposit such Permitted Investment is made with a copy of this Plan and such bank shall have acknowledged to the Plan Administrator in writing that upon the maturity of such Permitted Investment the proceeds thereof; if not reinvested in a Permitted Investment in accordance with the instructions of the Plan Administrator, shall be deposited solely in a bank account of the Estate.

### 7.3.2 Types of Bank Accounts Permitted

The Plan Administrator may, in order to implement the distribution provisions of the Plan or because an anticipated distribution date or other cash commitment does not make a Permitted Investment practical, deposit Cash in FDIC or FSLIC insured demand deposit accounts at any bank or trust company, which has a capital stock and surplus aggregating at least $100,000,000.

### 7.3.3 Terms of Permitted Investments

All Permitted Investments shall be on terms which will allow distributions to be made consistent with the distribution requirements of Article VIII of this Plan and shall mature in such amounts and at such times as may be necessary to provide

27

funds when needed to make payments, as required by the Plan Administrator on behalf of the Estate as the case may be.

### 7.3.4 Valuation and Redemption of Permitted Investments

Any of the foregoing investments purchased with any of the Estate Property or Liquidating Plan Proceeds shall be deemed a part of the Estate Property and, for the purposes of determining the value of the Liquidating Plan Proceeds, the securities shall be valued at their market value. Any earned interest from Permitted Investments shall accrue ratably for the benefit of the Beneficiaries and shall be included in the Estate Property. At such time as it shall be necessary that some or all of the Permitted Investments be redeemed or sold in order to raise monies to comply with the provisions of the Plan, the Plan Administrator shall effect such redemption or sale, in such manner and at such time as the Plan Administrator, in its discretion, deems reasonable.

## 7.4 Amendment to Plan Prior to Effective Date

Subject to further order of this Court, the Ad Hoc Committee as Plan proponent retains the right to amend the Plan and solicit acceptances thereof until the Effective Date.

## 7.5 Application of Cy Pres Doctrine

As soon as practicable after the Effective Date of the Plan, the Plan Administrator would file a Declaratory Judgment Action pursuant to FRCP 57 seeking an Order terminating or substantially altering the "use restriction" contained in the 1997 Deeds into the Debtor (the "Declaratory Judgment Action").  The Declaratory Judgment Action would request that the Doctrine of Cy Pres be applied to the extent that the Liquidated Property, the Leased Property, and the Gifted Property may be sold or transferred free and clear of any use restrictions contained in said Deeds. The Declaratory Judgment Action would further seek authority from the Court to (1) disburse any cash available from the sale of said assets to pay in full the Class 1 Claims, the Administrative Claims, Class 2 Claims, and Class 3 Claims; and (2) provide that the Plan Administrator may distribute any excess proceeds following the payment of these Claims to the reorganized Debtor.

## 7.6 Failure of Court to Apply Cy Pres Doctrine

In the event that the motion for the application of the Cy Pres Doctrine filed by the Plan Administrator is denied, then:  (a) any party having a Secured Claim shall be entitled to immediate relief from stay without further order of this Court and shall be entitled to liquidate their claim in accordance with applicable State law; and (b) any party having a Priority or Unsecured Claim shall be entitled to immediate relief from stay without further order from this Court and be entitled to pursue all applicable claims and remedies under Pennsylvania State Law.

#916477

**7.7 Risk to Creditors if Cy Pres Doctrine is Not Applied.**

In the event that the action for the application of the Cy Pres Doctrine filed by the Plan Administrator is denied, then in all likelihood the value of the Debtor's real estate would be minimal and there would be a risk of no payment to the creditors who accept this Plan if the Cy Pres Action is not decided in favor of the Plan Administrator.

## ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN

**8.1 Initial Distribution Date**

On or before the Initial Distribution Date, the Plan Administrator shall, as far as practicable, transfer all the proceeds of the sale of the Liquidated Property to the Creditor Liquidation Fund.  The Initial Distribution Date will be determined by the Plan Administrator based on a review and evaluation of the projected cash needs of the estate in comparison to the cash balances portion of the Estate Property as well as considering the balances and status of the Creditor Liquidation Fund and the Disputed Reserves.  In determining the amount of any distribution, the Plan Administrator is not required to fund, in cash, amounts for Disputed Claims as set forth in Article 8.2 of the Plan as adequate book only reserves have been established.   As soon as the Initial Distribution Date has been determined, the Plan Administrator shall make, after reserves provided for in Section 8.2 below, the distributions required to be made under the Plan

**8.2 Disputed Reserves**

The Plan Administrator shall establish reserves for distributions in respect of Disputed Claims, as follows:

**8.2.1 Establishment of Disputed Reserves**

On the Initial Distribution Date, and each subsequent date as to which Distributions are to be made in accordance with the Plan, and after making all Distributions required to be made on such date under the Plan, the Plan Administrator shall establish, in the records maintained for the Estate a separate Disputed Reserve record for each of the Disputed Claims, each of which Disputed Reserves shall be administered by the Plan Administrator. It is not necessary to create separate bank accounts for each Disputed Reserve established for each Disputed Claim as the records developed and maintained by the Plan Administrator are adequate and sufficient. Pending final termination of such Disputed Claim, the Plan Administrator shall establish such reserves for Distribution on account of each Disputed Claim in amounts equal to the amount the holder of such claim or claims otherwise would have been entitled to receive as of such date had such Disputed Claim been an allowed claim in the full amount of the Claim asserted.

29

### 8.2.2 Maintenance of Disputed Reserves

Each Disputed Reserve shall be closed and extinguished by the Plan Administrator when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.

## 8.3 Quarterly Distributions after Initial Distribution

As of each Quarterly Distribution Review Date after the Initial Distribution Date, the Plan Administrator will determine, based on a review and evaluation of the projected cash needs of the Estate in comparison to the cash balances portion of the Estate Property whether an additional distribution can be made and if it is determined that a distribution is to be made shall make such distribution as soon as reasonably practicable following such quarterly Distribution Review Date.  In determining the amount of any Distribution made at any time, consideration will be made reserving amounts for Disputed Claims as set forth in Article 8.2 of the Plan.   Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be included by the Plan Administrator in the Disputed Reserve pursuant to Article 8.2 and Distributed on the first date on which a Distribution is made after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution paid in accordance with this section.

## 8.4 Record Date for Distributions

The Plan Administrator shall have no obligation to recognize any Claim occurring after the Record Date.   In making any Distribution with respect to any Claim, the Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Plan Administrator as of the Record Date.

## 8.5 Delivery of Distributions

### 8.5.1 General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Plan Administrator at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Plan Administrator have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Plan Administrator may, in its discretion, make such efforts to determine the current address of the holder of

30

the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any holder shall be made unless and until the Plan Administrator has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the Plan Administrator shall be returned to, and held in trust by, the Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in this Section.  The Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### 8.5.2 Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions (other than the final Distribution Date) would be $100 or less in the aggregate, no such Distribution will be made to that holder.

### 8.5.3 Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve or because it represents a minimum Distribution under section 8.5.2 above, Distributions that are not cashed by the claimant by the expiration of six (6) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Estate, and the Claims with respect to which those Distributions are made shall be automatically canceled.  After the expiration of that six month period, the claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.  All funds or other property that vests or revests in the Estate pursuant to this Section shall be distributed by the Plan Administrator to the other holders of Allowed Claims in the Class of which the creditor to whom the Distribution was originally made is a member in accordance with the provisions of the Plan.

## 8.6 Manner of Cash Payments under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator.

## 8.7 Time Bar to Cash Payments by Check

Checks issued by the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof.  Requests

#916477

for the reissuance of any check prior to becoming null and void pursuant to this Article 8.9 shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom the check was originally issued.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Plan Administrator as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

## 8.8 Limitations on Funding of Disputed Reserves

Except as expressly set forth in the Plan, the Plan Administrator shall have no duty to fund the Disputed Reserves.

## 8.9 Compliance with Tax Requirements

In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Plan Administrator to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Article 8.5.1.

## 8.10 No Payments of Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

## 8.11 Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

## 8.12 No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

## 8.13 Setoff and Recoupment

The Plan Administrator may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtor, the Estate, or the Plan Administrator may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, or the Plan Administrator of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE IX

## DISPUTED CLAIMS

## 9.1 Objection Deadline

All objections to Disputed Claims, included but not limited to the Harris Claim, shall be Filed and served upon the holders of each such Claim not later than 120 days after the Effective Date, unless otherwise ordered by the Court after notice and a hearing.

## 9.2 Estimation of Claims

At any time, the Plan Administrator may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Plan Administrator have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the Plan Administrator, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

#916477

## 9.3 Prosecution of Objections and Requests for Estimation

Except as otherwise ordered by the Court, responsibility for the Filing, litigation, settlement, or withdrawal of all objections to Disputed Claims or requests for estimation thereof, including objections and estimation requests pending on the Effective Date, shall be the responsibility of the Plan Administrator, and the costs of such litigation, settlement, or withdrawal shall be borne by the Estate.  The Plan Administrator, as applicable, shall serve a copy of each objection upon the holder of the Disputed Claim to which the objection is being made as soon as practicable, but in no event later than 120 days after the Effective Date unless such date is extended by order of the Court. From and after the Confirmation Date, all objections shall be litigated to a Final Order, except to the extent the Plan Administrator elects to withdraw any such objection or the Plan Administrator and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Court.

## 9.4 No Distributions Pending Allowance

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## 10.1  Acceptance of Executory Contract and Unexpired Leases

a)      On the effective date, all executory contracts and unsecured leases identified on Exhibit 10.1A attached hereto and made a part hereof shall be deemed accepted as of the Effective Date pursuant to 11 U.S.C. §365.

b)      To the extent that a tenant on any of the Leased Parcels fails to make a payment of $300.00 to the Plan Administrator within 90 days of the effective date of the Plan, its lease shall be deemed rejected.

## 10.2 Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases identified on Exhibit 10.2A, attached hereto and made a part hereof, shall be deemed rejected as of the Effective Date pursuant to 11 U.S.C. §365(h).

### 10.2.1 Effect of Rejection

Pursuant to the provisions of 11 U.S.C. §365(h)(1)(A)(i), the lease rejection referred to in Section 10.2 above constitutes a termination of the lease.

#916477

### 10.2.2 Lease Termination Damages

Any claims for damages for termination of the leases identified in Section 10.1(b) or 10.2 and Exhibit 10.2A shall be forever barred and shall not be enforceable against the Debtor, the Estate, the Plan Administrator, or their property, successors, or assigns unless a Proof of Claim is filed and served on Counsel for the Plan Administrator on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an Order authorizing the rejection and termination of said lease.

## ARTICLE XI

## ABANDONMENT OF PROPERTY

### 11.1 Abandonment by Plan Administrator

The Plan Administrator shall have the right to abandon in any commercially reasonable manner (including abandonment or donation to a charitable organization of the Plan Administrator's choice) any property that the Plan Administrator reasonably concludes is of no benefit to the Class 1, 2 or 3 beneficiaries or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to Distribute. Such abandonment shall be (a) affected by a separate order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

### 11.2 Abandonment Claims

If the abandonment of any asset pursuant to the Plan (including those abandoned pursuant to Section 11.1) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate, the Plan Administrator, or their properties, successors, and assigns, unless a proof of claim is Filed and served upon counsel for the Plan Administrator on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

### 12.1 Conditions Precedent to the Confirmation of the Plan

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order, in form and substance acceptable to the (Ad Hoc) Committee, shall have been entered by the Court.

#916477

**12.2 Conditions Precedent to the Effective Date of the Plan**

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Article 12.3:

(a)    Confirmation Order. The Confirmation Order shall be a Final Order.

(b)    Plan. After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification.

**12.3 Waiver of Conditions Precedent**

Each of the conditions precedent in Article 12.2 may be waived or modified, in whole or in part, by the Ad Hoc Committee.  Any such waiver or modification of a condition precedent in Article 12.2 may be affected at any time, without notice (other than to the Debtor), without leave or order of the Court, and without any other formal action.

**ARTICLE XIII**

**<u>EFFECTS OF CONFIRMATION</u>**

**13.1 Vesting of Assets**

(a)    As of the Effective Date, title to the Liquidated Property shall vest and/or re-vest in the Estate, subject to the Plan Administrator's obligation to administer, liquidate and distribute the Liquidated Property in accordance with the terms of this Plan.

(b)    As of the Effective Date, the Leased Property and the Gifted Property shall be free and clear of all liens, claims, and encumbrances, including the Use Restriction identified in Article I, Section 1.61 above, except as provided for in the Plan or the Confirmation Order.

**13.2  Release of Assets**

Until the Effective Date, the Court shall retain jurisdiction of the Debtor and its assets and properties.  Thereafter, jurisdiction of the Court shall be limited to the subject matter set forth in Article XVI hereof.

**13.3  Binding Effect**

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtors and their  successors and assigns, whether or not the Claim of such

36

holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## 13.4  Terms of Injunctions or Stays

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Chapter 11 case.

## 13.5  Estate Litigation

Except as otherwise provided in the Plan, on and after the Effective Date, the Plan Administrator, on account of the Estate, shall have the exclusive right to enforce any and all Estate Litigation against any person.  The Plan Administrator, on account of the Estate, may pursue, abandon, or release any Estate Litigation as it deems appropriate, without the need to obtain approval or any other further relief from the Court.  The Plan Administrator, on account of the Estate, in its sole discretion, may offset any such claim held against a person, against any payment due such person under the Plan.

## 13.6 Injunction

Except as otherwise provided in the Plan, the Confirmation Order or a separate Order of the Court, as of the Effective Date, all entities that have held or currently hold or may hold directly, derivatively or otherwise, a claim or other right that is terminated or otherwise subject to treatment pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of any such claim or equity interest:

(a)     Commencing or continuing in any manner, any action or other proceeding against the Debtor or the estate or its properties or interest in properties;

(b)     Attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Estate or its properties or interests in properties;

(c)     Creating, perfecting or enforcing any lien or other encumbrance against the Debtor or the Estate or its properties and interest in properties;

(d)     Asserting a setoff, right of subrogation, or recoupment of any kind against the Debtor or the Estate, or its properties or interests in properties; and

(e)     Commencing or continuing any action in any manner or in any place, with respect to Estate property that otherwise does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

37

**13.7 Injunction against Interference with Plan**

Upon the entry of the Confirmation Order, all holders of claims and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.8  Retention and Preservation of Claim Objections and Estate Litigation**

Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Plan Administrator shall have and retain the exclusive right to object to all claims and interests asserted against the Debtor.   Upon entry of the Confirmation Order, the Plan Administrator shall also have the exclusive right to prosecute any and all of the Debtor's Estate Litigation, which includes, without limitation: (1) Preference actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtors within ninety (90) days or one year prior to the Petition Date[7]; (2)  Fraudulent Conveyance Claims under Section 548 of the Bankruptcy Code against those parties receiving distributions without consideration within two years prior to the date of the filing of the Plan; (3) Prosecution of the action to recover insurance proceeds, which has been removed to this Court at Adversary Proceeding No. 15-1010-JAD; (4) Any and all Claims or Causes of Action including, but not limited to, claims for unpaid accounts receivable, breach of contract, contribution, indemnification, fraudulent transfers, and/or recharacterization/equitable subordination, among other claims currently unknown to the Plan Administrator, that the Debtor has or may have against any individuals and/or entities in any way affiliated with the Debtor; (5) All Claims and Causes of Action disclosed in the Debtor's schedules and stated in the Financial Affairs which are incorporated herein by reference; including but not limited to any action against the Debtor's former officers, directors and/or shareholders for breaches of their fiduciary duties and/or other wrongful conduct; and (6)  Any and all Claims and Causes of Actions that the Debtor holds preconfirmation including, but not limited to, claims for unpaid accounts receivable, breach of contract, contribution, indemnification and fraudulent transfer, which shall vest or revest in the reorganized Estate, except as otherwise provided in this Plan.

Unless a Claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Plan Administrator expressly reserves such claim or cause of action for later adjudication by the Plan Administrator  (including without limitation, claims and causes of action not specifically identified or which the Plan Administrator may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Administrator at this time or facts or circumstances which may change or be different from those which the Plan Administrator now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial,

---

[7] The Debtor's first Monthly Operating Report filed in this case identified a payment of approximately $85,000.00 made to EPACC on account of its past due unpaid invoices, which was made shortly before the Bankruptcy case was filed.

#916477

equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or causes of action have been released in the Plan or any other Final Order.

## ARTICLE XIV

## RETENTION OF JURISDICTION

### 14.1 Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Reorganization Case, the Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b)     To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c)     To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d)     To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority of secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f)     To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g)     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

(h)     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be

necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i)     To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k)     To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l)     To enforce remedies upon any default under the Plan;

(m)     To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n)     To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith, including the regulation of discovery disputes related to Estate Litigation and the enforcement of compliance with depositions requested by the Plan Administrator pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(o)     To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Administrator, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p)     To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q)     To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r)     To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s)     To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan;

(t)     To recover all Assets of the Debtor and the Estate wherever located; and

#916477

(u)    To enter a final decree closing the Reorganization Case.

## ARTICLE XV

## MODIFICATION OF THE PLAN

### 15.1 Modification before the Effective Date.

The Ad Hoc Committee as the Plan proponent may alter, amend or modify the Plan or any provision or portion thereof under Section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; provided, however, that there shall be no material modification to the Plan.  The Ad Hoc Committee shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

### 15.2 Modification before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Plan Administrator may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 15.3 Modification after Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Plan Administrator may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders.

41

#916477

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

### 16.1 Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter.

### 16.2 Exemption from Certain Transfer Taxes

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments, or documents; (b) the creation of any Lien, mortgage, deed of trust, or other security interest; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or reinvesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in, the Plan; and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument is to be recorded hereunder shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, mortgage recording tax, sales, use, or similar tax.

### 16.3 Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

### 16.4 Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the

#916477

case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Plan Administrator:**

Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.
Lawrence C. Bolla, Esquire
2222 West Grandview Boulevard
Erie, PA 16506-4508

## 16.5 Further Documents and Actions

The Estate and/or the Plan Administrator shall execute, and are authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan. The Estate and/or the Plan Administrator and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

## 16.6 Relationship between the Plan and Disclosure Statement

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

## 16.7 Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Reorganization Case, including the Debtor, are and will be reserved in full. Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

## 16.8 Post-Confirmation Date Fees and Expenses

After the Confirmation Date, the Plan Administrator shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Plan Administrator in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Plan Administrator and the Advisory Board.  If the Plan Administrator or the Advisory Board disputes the

#916477

reasonableness of any such invoice, they shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

## 16.9 Binding Effect

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or Equity Interests, any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

## 16.10 Exhibits

All Exhibits and Schedules to this Plan are incorporated into and are part of this Plan as if set in full herein.

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Respectfully submitted,

QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.

By:    */s/Lawrence C. Bolla*
Lawrence C. Bolla, Esquire
Pa. I.D. No. 19679
George Joseph, Esquire
Pa. I.D. No.  36606
Michael P. Kruszewski, Esquire
Pa. I.D. No. 91239
2222 West Grandview Boulevard
Erie, PA  16506-4508
(814) 833-2222

Attorneys for the Unofficial (Ad Hoc) Committee of Real Estate Tax Creditors of Trustees of Conneaut Lake Park, Inc.