IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | : | Bankruptcy No. 14-11277-JAD |
| | : | |
| | : | Chapter 11 |
| Reorganized Debtor. | : | |
| ——————————————— X | | |
| | : | |
| TRUSTEES OF CONNEAUT LAKE PARK, INC., | : | |
| | : | Related to ECF No. 573 |
| | : | |
| Movant, | : | |
| | : | |
| - v - | : | |
| | : | |
| PARK RESTORATION, LLC, | : | |
| | : | |
| Respondent. | : | |
| ——————————————— X | | |

### MEMORANDUM OPINION[1]

The Trustees of Conneaut Lake Park, Inc. ("TCLP") filed a motion styled as a *Motion for Order (A) Enforcing the Discharge Injunction; and (B) Imposing Sanctions for Civil Contempt of the Court's Plan Confirmation Order* (the "Motion to Enforce"). See ECF No. 573.

A general principal of law is that "only the court which issues an injunction has the authority to enforce it." Warren v. Wells Fargo Bank, N.A., 2015 U.S. Dist.

---

[1] On May 14, 2018, the Court conducted a telephonic status conference in this case. During the status conference, the Court attempted to orally set forth its findings and conclusions on the record. The telephonic connection with the parties was periodically interrupted due to technical problems. Because the parties should know and understand the reasons for the Court's determination of this matter, the Court reduced its findings into writing as opposed to scheduling a further hearing on this matter.

00024131

LEXIS 145047 at *13 (W.D. Pa.)(citing In re Beck, 283 B.R. 163, 166 (Bankr. E.D. Pa. 2002).

The Motion to Enforce is a core proceeding over which this Court also has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(O) and 1334.

The primary issue raised by the Motion to Enforce is whether a cause of action filed by Park Restoration, LLC ("Park Restoration") against TCLP in the Court of Common Pleas of Crawford County, Pennsylvania on January 17, 2018 (the "Post Confirmation Lawsuit") constitutes a "claim" in bankruptcy, and is subject to the discharge injunction as provided for in 11 U.S.C. § 1141(d)(1)(A) and the *Amended Plan of Reorganization dated July 28, 2016* at ECF No. 427 (the "Amended Plan"). It is this Amended Plan which was confirmed by this Court's confirmation order dated September 6, 2016 at ECF No. 442 (the "Confirmation Order").

The Court would note that the parties do not dispute that if the Post Confirmation Lawsuit constitutes a "claim" in bankruptcy, the filing and prosecution of it by Park Restoration violates the discharge injunction. See Amended Plan at § 11.05 and 11 U.S.C. § 1141(d)(1)(A).

The parties also do not dispute the fact that the discharge injunction of this

case extends not only to pre-bankruptcy "claims," but also to "any debt[2] that arose before the date of such confirmation" regardless of whether or not (a) a "proof of claim based on such debt is filed or deemed filed," (b) such claim has been "allowed," and (c) the holder of such "claim has accepted the plan." See 11 U.S.C. § 1141(d)(1)(A)(I) through (iii).

The definition of a "claim" in bankruptcy is quite broad. The United States Supreme Court has acknowledged that the term "claim" has the "broadest available definition." See FCC v. Nextwave Commc'ns, Inc., 537 U.S. 293, 302 (2003)(quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); accord JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114, 121 (3d Cir. 2010).

The plain language of the Bankruptcy Code supports a broad interpretation of what constitutes a "claim" in bankruptcy. After all, the Bankruptcy Code defines a claim as including any:

> ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> ... right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

---

[2] The term "debt" is defined in the Bankruptcy Code as being a "liability on a claim." See 11 U.S.C. § 101(12).

11 U.S.C. § 101(5).

Whether a creditor holds a "claim" is important in bankruptcy. Holding a claim is the "ticket" giving a creditor the ability to participate as a party-in-interest in a bankruptcy case. See 11 U.S.C. § 1109(b)(affording creditors the opportunity to appear and be heard on any issue in a bankruptcy case).

If such "claim" is allowed in a chapter 11, it also provides the creditor with the ability to vote its claim and receive a distribution to the extent provided for under the Bankruptcy Code and/or under a confirmed chapter 11 plan. See 11 U.S.C. §§ 1123 (describing the contents of a chapter 11 plan) and 1126(a)(describing who may vote to accept or reject a chapter 11 plan).

Having a "claim" is also important from the debtor's perspective because claims and/or debts are subject to both the automatic stay and discharge in a chapter 11 bankruptcy. See 11 U.S.C. §§ 362, 524 and 1141.

The law in the Third Circuit is that a claim "arises when an individual is exposed . . . to . . . conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." In re Grossman's, 607 F.3d at 125.

Of course, this broad definition of a "claim" is not without limits. Even if a claim accrues prior to confirmation, such claim could survive the chapter 11 discharge if the claimant was deprived of due process (i.e., the claimant did not have notice and/or an opportunity to be heard prior to the claim being discharged). In re Energy Future Holdings Corp., 522 B.R. 520, 527-28 (Bankr.

D. Del. 2015).

This due process concern, however, is not present in the case *sub judice*. The Court reaches this conclusion because the undisputed record reflects the following:

- TCLP's chapter 11 case was filed on December 4, 2014 and the Confirmation Order was entered on September 6, 2016.

- The bar date for non-governmental creditors to assert claims in this bankruptcy case was set for June 4, 2015.

- On April 7, 2015, TCLP prepared a separate notice of the claims' bar date and served it upon Park Restoration.

- Park Restoration, and/or its legal counsel, was listed on the mailing matrix in this case and received electronic case filing ("ECF") notifications of the relevant plan(s) of reorganization in this case, and had an opportunity to appear and be heard with respect to the same.

- Park Restoration neither filed a claim in the case; nor did it contest confirmation of the chapter 11 plan. As a result, the Confirmation Order was entered on September 6, 2016. No appeal was taken and the Confirmation Order is now final.

Turning to the ultimate issue presented by the Motion to Enforce, this Court concludes that the "conduct" to which Park Restoration was "exposed," which in-turn gives rise to the "injury" supporting its Post Confirmation Lawsuit, occurred prior to confirmation of the Amended Plan. The undisputed record supports this conclusion.

The Post Confirmation Lawsuit is essentially a lawsuit by which Park Restoration asserts causes of action sounding in unjust enrichment and indemnity. The gist of the action is that Park Restoration paid for an insurance

00024131                                -5-

policy on a piece of real estate known as the "Beach Club." The Beach Club was managed by Park Restoration and owned by TCLP. When Park Restoration entered into the management agreement for the Beach Club, TCLP was severely delinquent in its local tax obligations. Not only were these obligations secured by the underlying realty, the law of the Commonwealth of Pennsylvania provided that should the property burn down, fire insurance proceeds were first payable to delinquent tax obligations on the realty and then any remaining proceeds were to be paid to the insured or the loss payee under the applicable policy. See 40 P.S. § 638.

In August of 2013 the Beach Club burnt down, and Erie Insurance was prepared to tender the proceeds pursuant to applicable law. But, in September of 2013, Park Restoration commenced a declaratory judgment action (the "Declaratory Judgment Action") in state court asserting a claim to all of the insurance proceeds. In connection with the state court proceedings, Erie Insurance interpleaded the fire insurance proceeds with the state court.

Thereafter, on December 4, 2014, TCLP filed the instant bankruptcy case, and the Declaratory Judgment Action was removed to this Court on February 3, 2015 (and the funds subject to the interpleader were also removed to registry of the Clerk of the Bankruptcy Court).

On December 22, 2015, this Court made its ruling in the Declaratory Judgment Action, holding that the taxing bodies were entitled to approximately

$478,000 of the insurance proceeds pursuant to 40 P.S. § 438. See Park Restoration, LLC v. Erie Insurance Exchange, et al. (In re Trustees of Conneaut Lake Park, Inc.), 543 B.R. 193 (Bankr. W.D. Pa. 2015). An appeal was then taken by Park Restoration to the District Court, which reversed this Court's opinion. Another appeal was pursued by the taxing bodies to the Third Circuit Court of Appeals, which reversed the District Court and reinstated this Court's judgment. See Park Restoration, LLC v. Erie Insurance Exchange et al. (In re Trustees of Conneaut Lake Park, Inc.), 855 F.3d 519 (3d Cir. 2017). No further appeals were lodged. Because all appeals were exhausted, in 2017, this Court entered an order authorizing the remaining insurance proceeds to be released from the Court's registry to the taxing bodies.

With the Confirmation Order having been entered on July 28, 2016, it is clear that Park Restoration's civil claims, as set forth in the Post Confirmation Lawsuit, arose well before plan confirmation.[3]

Support for this conclusion is that all of the pertinent facts supporting Park Restoration's well pleaded complaint occurred prior to the date of the Confirmation Order. In fact, the majority of these events occurred prior to the commencement of TCLP's case. These events are:

1. Park Restoration purchased fire insurance, and this event occurred prior to the petition date;

---

[3] For purposes of clarity, in a chapter 11, 11 U.S.C. §1141 provides for the discharge of debts that arose before plan confirmation.

2. TCLP had unpaid tax obligations, and this event occurred prior to the petition date;
3. TCLP failed to purchase any fire insurance, and its failure occurred prior to the petition date;
4. TCLP's Beach Club burned down, and this event occurred prior to the petition date;
5. As a result of the fire, the taxing bodies (and TCLP) asserted claims to the insurance proceeds, and this event occurred prior to the petition date;
6. Erie Insurance was prepared to tender the insurance proceeds to the taxing bodies, but Park Restoration commenced the Declaratory Judgment Action in advance of the remittance of the proceeds, and this action occurred prior to the petition date;
7. After the commencement of the Declaratory Judgment Action, Erie Insurance interpleaded the insurance proceeds, and this event occurred prior to the petition date; and
8. This Court found that approximately $478,000 of the insurance proceeds should be remitted to the taxing bodies, and this event occurred prior to the entry of the Confirmation Order.

The Court recognizes that Park Restoration complains that the funds at issue were not actually released to the taxing bodies until after the date of the Confirmation Order. The Court, however, finds this point to be a red herring.

The fact remains that the proceeds at issue were interpleaded with the Court long before the entry of the Confirmation Order and the reason why they were interpleaded was that the proceeds were always subject to the claims of the taxing bodies. Indeed, but for the litigation and/or appeals pursued by Park Restoration, those funds would have been released to the taxing bodies prior to the Confirmation Order.

The Court also notes that the pleadings filed by Park Restoration appear to acknowledge the existence of such claims prior to the date of the Confirmation

Order. For example, Park Restoration's complaint in the Declaratory Judgment Action avers that payment of the insurance proceeds to the tax creditors is "unjust and inequitable." See AP 15-1010-JAD at ECF No.1 at para. 19. The complaint also avers that TCLP would receive a "windfall" if the proceeds were paid to TCLP's tax creditors. Id. at para. 21. In other related litigation, Park Restoration also admitted that "Park Restoration was harmed by [TCLP's] failure to purchase such insurance" because Park Restoration's insurance proceeds were going to be paid to the taxing bodies. See AP 16-1029-JAD, ECF No.46 at p. 11; see also ECF No. 23.

In fact, prior to the date of the Confirmation Order, Park Restoration sought leave of this Court to pursue such claims by way of counterclaim. See Id. at ECF No.22, p.2. Ultimately, leave was granted but Park Restoration withdrew its counterclaim and the same was dismissed by this Court "with prejudice." Id. at ECF No.73.

The red herring component of Park Restoration's argument is further evident by the fact that "claims" in bankruptcy include "contingent" debts and liabilities that are "unmatured." See 11 U.S.C. § 101(5). Park Restoration argues that its claim did not mature until the funds were actually released by this Court. If the release date is the date when the claim actually matured, then at all times relevant hereto Park Restoration owned an "unmatured" or "contingent" claim, which is exactly included in the Bankruptcy Code definition of a "claim." See, e.g.

In re Huffy Corp., 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010)(a right to payment that at the time a bankruptcy filing is not yet enforceable under non-bankruptcy law may nonetheless constitute a claim that is dischargeable in a bankruptcy case); See also In re R.H. Macy & Co., 236 B.R. 583, 589 (Bankr. S.D.N.Y. 1999); cf. In re Rainbows United, Inc., 547 B.R. 430, 436-37 (Bankr. D. Kansas 2016).

The Court also recognizes that in the Declaratory Judgment Action, the Third Circuit Court of Appeals wrote: "nothing in this opinion should be construed to preclude [Park Restoration] from seeking an accounting or any other equitable relief in the future." Park Restoration, LLC v. Erie Ins. Exch. (In re Trustees of Conneaut Lake Park, Inc.), 855 F.3d 519, 525 (3d Cir. 2017).

Contrary to the protestations of Park Restoration, this statement does not provide Park Restoration with the ability to circumvent the terms and conditions of the Confirmation Order and the Amended Plan. The Court reaches this conclusion based on the plain language of the Third Circuit's statement, which itself does not mandate the outcome of any claim for equitable relief sought by Park Restoration. Moreover, even though Park Restoration's Post Confirmation Lawsuit seeks equitable relief, the law is clear that the equitable powers of this Court must only be exercised within the confines of the Bankruptcy Code. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988). That is, it is subject to 11 U.S.C. § 1141, the Amended Plan, and the Confirmation Order. In re Mariner

Post-Acute Network, Inc., 303 B.R. 42, 47 (Bankr. D. Del. 2003).[4]

Finally, Park Restoration attempts to circumvent the Confirmation Order by asserting non-claim status by citing to the fact that TCLP did not schedule Park Restoration in the debtor's schedules of creditors. This objection, however, does not carry the day. The record reflects that Park Restoration was identified as a party-in-interest in TCLP's statement of financial affairs, and TCLP served Park Restoration with a very specific notice of the claims bar date. Viewing these facts most favorable to Park Restoration, these facts reflect that TCLP believed that it owed nothing to Park Restoration and invited Park Restoration to file its proof of claim, set forth the basis of the claim, and participate in the bankruptcy if it believed TCLP was liable to it. Park Restoration, for reasons unknown to the Court, declined to do so.

*[Remainder of Page Intentionally Left Blank]*

---

[4] The Court notes that Park Restoration recently filed an adversary proceeding seeking to step into the shoes of the taxing creditors and assert claims by operation of the doctrine of subrogation. Nothing contained in this Memorandum Opinion should be construed, either positively or negatively, as a ruling upon Park Restoration's alleged right of subrogation.

For all of these reasons, the Court shall enter an order which grants the Motion to Enforce. Such order shall afford Park Restoration with an opportunity to withdraw the Post Confirmation Lawsuit. Failure to do so within the time period provided shall result in a finding of contempt and possible sanctions.

May 15, 2018

_____
The Honorable Jeffery A. Deller
Chief U.S. Bankruptcy Judge

cc:   John Mizner, Esq.
      George Snyder, Esq.

FILED
5/15/18 1:58 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA